Richard J. Simmons (admitted *pro hac vice*)
Brian D. Murphy
SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
30 Rockefeller Plaza
New York, New York 10112
Telephone:  (212) 653-8700
Facsimile:  (212) 653-8701

Bruce A. Montoya (admitted *pro hac vice*)
John Karl Shunk (admitted *pro hac vice*)
Lou Grossman (admitted *pro hac vice*)
MESSNER & REEVES LLC
1430 Wynkoop St. No. 300
Denver, CO 80202
Telephone:  (303) 623-1800
Facsimile:  (303) 623-0552

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- x

EMANUEL GARCIA, *on behalf of himself, FLSA*
*Collective Plaintiffs and the Class*

                              Plaintiffs,

              -against-

CHIPOTLE MEXICAN GRILL, INC.,

                              Defendant.

------------------------------------------------------------- x

Case No. 16-CV-0601


**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................... 1

RELEVANT BACKGROUND ........................................................................................... 3

    A.    The Parties ............................................................................................ 3

          1.    Chipotle Mexican Grill, Inc. .................................................... 3

          2.    Plaintiff Emanuel Garcia ........................................................ 3

    B.    Chipotle's Timekeeping Policies And Procedures ................................... 4

          1.    Chipotle's Timekeeping Policy ................................................ 4

          2.    Chipotle's Timekeeping System – Aloha .................................. 4

          3.    Chipotle's Time Punch Policy ................................................. 6

          4.    Violations Of The Timekeeping And Time Punch Policies Are Strictly Prohibited .............................................................. 7

    C.    Plaintiff's Allegations Concerning His Experiences Stand In Contrast To The Testimony Of Numerous Other Hourly Employees Who Worked In The Same Restaurants ................................................................................ 8

          1.    Plaintiff's Allegations ............................................................ 8

          2.    The Testimony Of Other Hourly Employees Who Worked In New York City ........................................................................... 11

    D.    Chipotle's Arbitration Policy ............................................................... 12

ARGUMENT ................................................................................................................ 12

I.    THE STANDARD FOR CONDITIONAL CERTIFICATION ........................................... 12

II.    PLAINTIFF HAS NOT MET HIS BURDEN TO DEMONSTRATE THAT HE IS "SIMILARLY SITUATED" TO OTHER EMPLOYEES WITH RESPECT TO THE VIOLATIONS ALLEGED ....................................................................................... 13

    A.    Plaintiff's Declaration Is Insufficient To Support Conditional Certification Of All Hourly Workers At All New York City Restaurants ......................... 13

    B.    Plaintiff Has Not Demonstrated That He And Putative Collective Members Were "Victims Of A Common Policy Or Plan That Violated The Law" ................ 16

      C.      Plaintiff Is Not "Similarly Situated" To Employees Who Were Hired After August 2014 And Executed Arbitration Agreements...............................................19

III.     IN THE ALTERNATIVE, THE COURT SHOULD LIMIT ANY COLLECTIVE TO EMPLOYEES WHO WORKED IN THE SAME TWO RESTAURANTS AS PLAINTIFF..................................................................................................................20

IV.     IF ANY COLLECTIVE IS CERTIFIED, NOTICE SHOULD ONLY BE DISTRIBUTED TO HOURLY EMPLOYEES EMPLOYED IN PLAINTIFF'S TWO STORES WITHIN THREE YEARS PRECEDING THE FILING OF THE COMPLAINT............................................................................................................21

V.      IF ANY COLLECTIVE IS CERTIFIED, PLAINTIFF'S PROPOSED NOTICE SHOULD BE REJECTED AND THE PARTIES SHOULD BE DIRECTED TO MEET AND CONFER OVER THE FORM AND CONTENT OF A SUITABLE NOTICE .................................................................................................................23

VI.    IF ANY COLLECTIVE IS CERTIFIED, THE CLAIMS OF POTENTIAL OPT-IN PLAINTIFFS SHOULD NOT BE TOLLED....................................................................24

CONCLUSION .........................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

Adami v. Cardo Windows, Inc.
    299 F.R.D. 68 (D.N.J. 2014) ................................................................................. 20

Amponin v. Olayan America Corp.
    No. 14-CIV-2008 (TPG), 2015 WL 1190080 (S.D.N.Y. Mar. 16, 2015) .................................. 15

Apolinar v. R.J. 49 Rest., LLC
    No. 15-CV-8655 (KBF), 2016 WL 2903278 (S.D.N.Y. May 18, 2016)............................. 20, 24

Becerra v. IM LLC-I
    No. 14-CV-2671 (ADS) (ARL), 2015 WL 1954478 (E.D.N.Y. Apr. 29, 2015) ....................... 20

Calderon v. King Umberto, Inc.
    892 F. Supp. 2d 456 (E.D.N.Y. Sept. 25, 2012)......................................................................... 23

Camilotes v. Resurrection Health Care Corp.
    286 F.R.D. 339 (N.D. Ill. 2012) ................................................................................................. 17

Carbonell v. Acrish
    154 F. Supp. 2d 552 (S.D.N.Y. 2001) ........................................................................................ 25

Cherif v. Sameday Delivery Corp.
    No. 13-CV-1341 (RJD) (MDG), 2015 WL 5772012 (E.D.N.Y. Sept. 30, 2015)....................... 22

DeJesus v. HF Mgmt. Svcs, LLC
    726 F.3d 85 (2d Cir. 2013)......................................................................................................... 15

Diaz v. S&H Bondi's Dept. Store
    No. 10-CIV-7676 (PGG), 2012 WL 137460 (S.D.N.Y. Jan. 18, 2012) ..................................... 23

Enriquez v. Cherry Hill Market Corp.
    No. 10-CV-5616 (FB)(ALC), 2012 WL 440691 (E.D.N.Y. Feb. 10, 2012) .............................. 24

Feng v. Soy Sauce LLC
    No. 15-CV-3058, 2016 WL 1070813 (E.D.N.Y. Mar. 14, 2016) ............................................... 20

Fu v. Mee May Corp.
    No. 15-CIV-4549 (KPF), 2016 WL 1588132 (S.D.N.Y. Apr. 20, 2016)................................... 13

Glatt v. Fox Searchlight Pictures, Inc.
    No. 11-CIV-6784, 2013 WL 4834428, at *2 (S.D.N.Y. Aug. 26, 2013) ................................... 25

Guo v. Tommy's Sushi, Inc.
    No. 14-CIV 3946 (PAE), 2014 WL 5314822 (S.D.N.Y. Oct. 16, 2014)................................... 14

Hamadou v. Hess Corp.
  No. 12-CIV-0250 (CM) (JLC), 2013 WL 164009 (S.D.N.Y. Jan. 16, 2013)............................ 24

Harris v. Chipotle Mexican Grill, Inc.
  39 F. Supp. 3d 564 (D. Minn. 2014)......................................................................................... 20

Hernandez v. Immortal Rise, Inc.
  No. 11-CV-4360 (RRM), 2012 WL 4369746 (E.D.N.Y. Sept. 24, 2012)......................22, 23, 24

Iriarte v. Café 71, Inc.
  No. 15-CIV-3217 (CM), 2015 WL 8900875 (S.D.N.Y. Dec. 11, 2015)..................................... 22

Jackson v. Bloomberg, L.P.
  298 F.R.D. 152 (S.D.N.Y. 2014)............................................................................................... 24

Jenkins v. TJX Companies Inc.
  853 F. Supp. 2d 317 (E.D.N.Y. 2012) ...................................................................................... 13

Ji v. Jling, Inc.
  No. 15-CV-4194 (JMA) (SIL), 2016 WL 2939154 (E.D.N.Y. May 19, 2016).......................... 14

Kemper v. Westbury Operating Corp.
  No. 12-CIV-895, 2012 WL 4976120, at *3 (E.D.N.Y. Oct. 17, 2012) ...................................... 25

Lanzetta v. Florio's Enter., Inc.
  763 F. Supp. 2d 615 (S.D.N.Y. 2011) ....................................................................................... 24

Limarvin v. Edo Rest. Corp.
  11-CIV-7356 (DAB), 2013 WL 371571 (S.D.N.Y. Jan. 31, 2013) ........................................... 23

Longnecker v. American Exp. Co.
  No. 14-CV-0069-HRH, 2014 WL 4071662 (D. Ariz. Aug. 18, 2014)....................................... 20

Lujan v. Cabana Mgmt., Inc.
  No. 10-CV-755, 2011 WL 317984 (E.D.N.Y. Feb. 1, 2011)..................................................... 20

Lundy v. Catholic Health System of Long Island
  711 F.3d 106 (2d Cir. 2013)................................................................................................ 1, 15

Maldonado v. Arcadia Business Corp.
  No. 14-CV-4129 (DLI) (RML), 2015 WL 1914933 (E.D.N.Y. Apr. 27, 2015)......................... 22

Martinez v. Zero Otto Nove, Inc.
  No. 15-CIV-899 (ER), 2016 WL 3554992 (S.D.N.Y. June 23, 2016) (Ramos, J.) ............. 12, 13

Mata v. Foodbridge, LLC
  No. 14-CIV-8754 (ER), 2015 WL 3457293 (S.D.N.Y. June 1, 2015)....................................... 14

McGlone v. Contract Callers
  867 F. Supp. 2d 438 (S.D.N.Y. 2012) ...................................................................................... 25

Mongiove v. Nate's Corp.
No. 15-CV-1024 (NGG) (RML), 2016 WL 590460 (E.D.N.Y. Feb. 11, 2016) ........................ 22

Moore v. Eagle Sanitation, Inc.
276 F.R.D. 54 (E.D.N.Y. 2011) ............................................................................................. 23

Myers v. Hertz Corp.
624 F.3d 537 (2d Cir. 2010) ........................................................................................... 13. 16

Personal Touch Moving, Inc., No. 13-CIV-8187, 2014 WL 4593944, at *7 (S.D.N.Y.
Sept. 15, 2014) ....................................................................................................................... 22

Ramos v. PJJK Rest. Corp.
No. 15-CV-5672 (PKC), 2016 WL 1106373 (S.D.N.Y. Mar. 10, 2016) .................................. 21

Reyes v. Midaja, LLC
No. 14-CIV-9812 (RWS), 2015 WL 4622587 (S.D.N.Y. Aug. 3, 2014) .................................. 13

Reyes v. N.Y. F&B Svcs., LLC
No. 15-CV-2882-LTS-DCF, 2016 WL 796859 (S.D.N.Y. Feb. 22, 2016) ............................... 22

Romero v. H.B. Automotive Group, Inc.
No. 11-CIV-386 (CM), 2012 WL 1514810 (S.D.N.Y. May 1, 2012) ................................. 12, 13

Romero v. La Revise Assoc., LLC
968 F. Supp. 2d 639 (S.D.N.Y. 2013) ................................................................................... 20

Sanchez v. JMP Ventures, LLC
No. 13-CIV-7264 (KBF), 2014 WL 465542 (S.D.N.Y. Jan. 27, 2014) ................... 13, 14, 15, 16

Sutherland v. Ernst & Young LLP
726 F.3d 290 (2d Cir. 2013) ................................................................................................. 19

Tamay v. Mr. Kabob Rest., Inc.
No. 15-CV-5935 (JMF), 2016 WL 205456 (S.D.N.Y. Jan. 15, 2016) ...................................... 20

Trinidad v. Pret A Manger (USA) Ltd.
962 F. Supp. 2d 545 (S.D.N.Y. 2013) ................................................................................... 22

Vasto v. Credico (USA) LLC
No. 15-CIV-9298 (PAE), 2016 WL 2658172 (S.D.N.Y. May 5, 2016) ..................................... 24

Watson v. Surf-Frac Wellhead Equip. Co.
No. 11-CV-843, 2013 U.S. Dist. LEXIS 143195 (E.D. Ark. Oct. 3, 2013) .............................. 17

Whitehorn v. Wolfgang's Steakhouse, Inc.
767 F. Supp. 2d 445 (S.D.N.Y. 2011) ................................................................................... 22

Wolman v. Catholic Health Sys. of Long Island, Inc.
853 F. Supp. 2d 290 (E.D.N.Y. 2010) ................................................................................... 17

<u>Statutes</u>

29 U.S.C. § 216(b) ................................................................................................ 10

29 U.S.C. § 256(b) ................................................................................................ 24

Defendant Chipotle Mexican Grill, Inc. ("Chipotle") respectfully submits this Memorandum of Law in Opposition to Plaintiff's Motion for Conditional Certification Pursuant to Section 216(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*

## PRELIMINARY STATEMENT

Chipotle pays all employees for all hours worked.  This bedrock principle is reflected in various policies and training materials and is repeatedly emphasized to all employees at every level throughout Chipotle.  Indeed, Chipotle maintains multiple protocols and systems to ensure that all time is accurately recorded and paid and any errors can be promptly corrected, including issuing employees receipts when they clock-out reflecting their precise daily hours worked so that they can quickly raise any discrepancies with their managers.  Despite these lawful policies and policing efforts, Plaintiff contends that he and a putative collective were improperly denied regular and overtime wages by virtue of "off-the-clock" work and "time-shifting," whereby hours were allegedly reallocated among workweeks to stay beneath the 40-hour threshold.  Apart from the inherent flaws in his logic and theories,[1] as explained below, Plaintiff has also failed to establish the requisite link between himself and those he purports to represent with respect to the violations alleged for two primary reasons.

First, Plaintiff's Declaration is incompetent as evidence to support this Motion.  Courts in this District require a declaration to set forth a certain level of detail concerning the dates, locations, and contents of conversations with coworkers who were also alleged to have been subjected to unlawful conduct.  Plaintiff largely omits these critical details in favor of generalized statements that his allegations "were discussed" on lunch breaks and on "his way home," without more.  Plaintiff also fails to offer any information concerning the schedules, hours, or compensation paid to

---

[1]     Plaintiff's "time shifting" theory is inherently illogical and unsupportable in light of his allegation that he "always" worked over 40 hours and therefore any time allegedly reallocated to a different workweek would necessarily be paid at time and one-half.

the coworkers with whom he allegedly spoke and, more importantly, neglects to identify any specific workweeks that he worked overtime or the amount of such overtime. Plaintiff's Declaration thus <u>does</u> <u>not</u> <u>even</u> establish that he suffered an actionable violation under the standards set forth in <u>Lundy v. Catholic Health System of Long Island</u>, 711 F.3d 106 (2d Cir. 2013). Without himself pleading sufficient violation, Plaintiff cannot purport to plead a violation on behalf of others.

Second, even putting aside these deficiencies, the nature of Plaintiff's allegations precludes a determination that he is "similarly situated" to others. Plaintiff's own testimony highlights that his "off-the-clock" and "time-shifting" allegations, if true, were the product of individualized directives from rogue managers failing to follow Chipotle's lawful policies, rather than the product of some systematic practice that could bind the putative collective together. For example, Plaintiff's testimony highlights that at one restaurant, the alleged violation occurred because a manager directed him to work "off-the-clock," while at another it occurred because he was automatically clocked-out and a manager failed to correctly adjust his time sheets. His testimony thus demonstrates the need for an individualized inquiry to determine: (i) the reason for the alleged violation; and (ii) whether a violation occurred at all. The testimony of members of the putative collective submitted herewith only confirms the need for an individualized analysis given the nature of the violation alleged.

The combination of Plaintiff's deficient Declaration and the nature of the violations as described by Plaintiff preclude Plaintiff from establishing that he is "similarly situated" to all hourly employees throughout New York City. As such, Plaintiff's Motion should be denied in its entirety.[2]

---

[2]     Chipotle addresses alternative relief and Plaintiff's ancillary arguments in Points III-VI, <u>infra</u>. Chipotle also notes at the outset that Counsel to Plaintiff has incorrectly designated himself as "Attorneys for...FLSA Collective Plaintiffs and the Class" despite no collective or class having yet been certified and without demonstrating adequacy.

## RELEVANT BACKGROUND

**A.   THE PARTIES**

**1.    Chipotle Mexican Grill, Inc.**

Chipotle operates fresh Mexican food restaurants serving a focused menu of burritos, tacos, burrito bowls, and salads.   (Gottlieb Decl. ¶ 4).   Chipotle has more than 2,100 restaurants throughout the United States, with approximately 66 restaurants in New York City, in which approximately 9,800 hourly workers have been employed since December 2010.  (Id. at ¶ 7, 14).  A single Chipotle restaurant may be staffed, in order of descending authority, by a salaried exempt Restaurateur, exempt General Manager, and/or one or more exempt Apprentices, one or more hourly non-exempt Service Managers, one or more hourly non-exempt Kitchen Managers, and a range of 15-35 full and part-time hourly non-exempt Crew Members.   (Id. at ¶ 12).   The management structure and number of hourly employees varies materially from restaurant to restaurant based on numerous factors, including sales volume and hours of operation.  (Id. at ¶ 13).

**2.    Plaintiff Emanuel Garcia**

Plaintiff is a former Chipotle employee.  Plaintiff was hired as a Crew Member at Chipotle's restaurant located at 185 Montague Street, Brooklyn, NY 11201 on or about December 21, 2011.[3] (Id. at ¶ 23).  Plaintiff became a Kitchen Manager on or about May 27, 2013 and a Service Manager on or about October 14, 2013.  (Id. at ¶ 25, 27).  Plaintiff worked as a Service Manager infrequently at Chipotle's Court Street, MetroTech Plaza, Greenwich Village, and Upper East Side restaurant locations as a Service Manager.  (Id. at ¶ 28).  Plaintiff was terminated on August 19, 2015 for unacceptable work performance.  (Id. at ¶ 29).

---

[3]     Plaintiff incorrectly attests that he became employed by Chipotle "[i]n or around December 2010."  (Garcia Decl. ¶ 1).  His employment was thus for one year less than he testified, calling into question the remainder of his testimony.

B.      **Chipotle's Timekeeping Policies And Procedures**

        1.      **Chipotle's Timekeeping Policy**

Chipotle maintains a Timekeeping Policy that applies to non-exempt employees to ensure compliance with wage and hour laws.  (Id. at ¶ 30, 33; Exs. 1, 2).  The Timekeeping Policy is included in Chipotle's Crew Handbook and its Restaurant Management Handbook.  (Id.).  The Crew Handbook is distributed and available in each restaurant to all Crew Members, and the Restaurant Management Handbook is distributed and available in each restaurant to all Kitchen Managers and Service Managers.  (Id. at ¶ 31, 34).  Chipotle requires all Crew Members, Kitchen Managers, and Service Managers to review the Handbook applicable to them and, upon completion, to execute a form attesting that they read, understood, and will adhere to the policies contained therein.  (Id.).

        The Timekeeping Policy is unambiguous.  It states, in relevant part:

        All hourly employees are paid for all time worked.  This is the law and Chipotle's policy.

(Id. at Exs. 1, 2).  The Policy explicitly provides that all hourly employees must record and be paid for all time worked.  It clarifies that time worked includes all of the work that hourly employees do, such as work performed before or after a scheduled shift, all meetings, and all time spent in training.  (Id. at ¶ 36-37).  The Policy prohibits any "off-the-clock" work.  (Id. at ¶ 39).  Chipotle does not simply disseminate this clear Policy.  Chipotle has multiple protocols in place to ensure that it is followed, including training practices, reminder statements, hotlines, anonymous complaint procedures, time receipts, and procedures to correct any errors in hours recorded or pay.  (Id. at ¶ 38).

        2.      **Chipotle's Timekeeping System – Aloha**

Chipotle uses a single system to record both customer transactions and hours worked for hourly employees – the NCR Aloha Restaurant POS Software ("Aloha"), which is developed,

hosted, and owned by NCR Corporation ("NCR").  (Id. at ¶ 41).  Apart from the customer data the system records, Chipotle uses Aloha to gather, record and track all hours worked by all hourly employees.   Hourly employees record their time worked in Aloha by "clocking-in" before beginning work and "clocking-out" after ending work at the POS terminal in their restaurants using either a swipe card or a unique employee identification number.  (Id. at ¶ 44).

For multiple business reasons, Chipotle needs daily and early access to data processed from Aloha, which requires transferring the Aloha data from approximately 2,100 Chipotle restaurants every night.[4]  (Id. at ¶ 48).  To meet this need, Chipotle fixes a time each day for each restaurant at which that day's transactions are closed ("End of Day Transaction Close").  (Id.).  At the End of Day Transaction Close, the Aloha data from each Chipotle restaurant is transferred to NCR for processing, and by approximately 8:00 AM EST the following morning, NCR returns reports generated from this data for each restaurant.  (Id.).

At the End of Day Transaction Close, the Aloha system in each restaurant "resets," meaning that no more data can be entered for the preceding day, with the exception of necessary adjustments that are made manually following the End of Day Transaction Close.  (Id.).  After the reset, the Aloha system is refreshed, meaning that any employees who were clocked into the Aloha system before the reset will no longer be clocked-in following the reset.  (Id. at ¶ 49).

The overwhelming majority of Chipotle's more than 2,100 restaurants close their doors to customers each night at 10:00 PM local time.  (Id. at ¶ 48).  The End of Day Transaction Close is currently scheduled for 3:00 AM local time for the majority of Chipotle's New York City restaurants, and not 11:30 PM or 12:30 AM as Plaintiff suggests.  (Id. at ¶ 48; Garcia Decl. ¶ 8, 9).  However, this time varies and is earlier for some restaurants and later for others based on business

---

[4]    For example, the daily reports are utilized by restaurant managers and field leaders to prepare for the upcoming day's operations.  Likewise, the daily transfer of the data is necessary for Chipotle to process the payroll data needed to timely calculate straight-time and overtime wages and pay its hourly employees.

considerations and has changed over the proposed collective period.  (Gottlieb Decl. ¶ 48).  The vast majority of Chipotle's hourly employees – those who work the morning, lunch, or early evening shifts – are not impacted by Aloha's reset because they stop working earlier in the day.[5]  Further, because most restaurants close to customers at 10:00 PM local time, most employees working the late evening shifts are expected to, and able to, complete their work before Aloha resets five hours later.  (Id. at ¶ 51).  In the event an employee works past the Aloha reset time, Chipotle's express policies require the employee to either clock-in after the reset or, as described below, report their hours to a manager so that any discrepancies are resolved and the employee is compensated for all hours worked.  (Id. at ¶ 49, 50, 53).

3.    **Chipotle's Time Punch Policy**

When an employee clocks-out for the day after the completion of the shift, Aloha automatically prints out a receipt that contains a report of the hours worked by the employee for that day.  (Id. at ¶ 42, 43; Ex. 3).  This allows the employee to confirm that all hours worked were accurately captured and recorded.  (Id.).  In the event of a discrepancy, it enables the employee to raise the issue with a manager.  (Id.).  The employee also has other vehicles to ensure records and pay are accurate including the means to anonymously report concerns.

Although Chipotle requires its hourly employees to record all the time they work accurately using Aloha, discrepancies occasionally arise such as when an employee forgets to clock-in at the start of a shift, when an employee forgets to clock-out at the end of a shift, when an employee works outside of the restaurant, when the POS terminal is temporarily not operational, or when an Aloha reset occurs while the employee is working.  (Id. at ¶ 43).  In these instances, Chipotle's employees are taught that managers are authorized to resolve these discrepancies by use of a "time

---

[5]    For example, the New York Plaza downtown locations closes to customers at approximately 7:00 PM.  (Ochoa Decl. ¶ 16).  The End of Day Transaction Close at his restaurant occurs no earlier than 12:30, such that all employees have left the restaurant well before the automatic reset.  (Id. ¶ 21).

punch edit," manually adjusting time records to accurately reflect all hours worked.  (Id. at ¶ 44, 45).  Time punch edits are rarely necessary and may never be used to remove time actually worked from an employee, even if the hours are more than expected.  (Id. at ¶ 45).  The Policy requires an affected employee to review and approve each adjustment made by a manager through a time punch edit.  (Id. at ¶ 46).

These processes are set forth in Chipotle's Time Punch Policy, which Chipotle distributes to its employees through its Crew Handbook and Restaurant Management Handbook.  (Id. at ¶ 47; Exs. 1, 2).  Chipotle's Time Punch Policy informs employees of the Aloha reset and specifically instructs them about the need for an adjustment to their time entries in the event that they are working past the reset time.  (Id.).  The Time Punch Policy makes clear that, if an hourly employee works past the reset time, a manager must edit that employee's Aloha entries so that the employee is paid for all hours worked.  (Id.).

### 4. Violations Of The Timekeeping And Time Punch Policies Are Strictly Prohibited

If a manager failed to edit an hourly employee's Aloha entry to accurately reflect hours worked by the employee, that manager would be in violation of Chipotle's Timekeeping and/or Time Punch Policy.  Specifically:

> Chipotle will take all steps to prevent and remedy violations regarding editing time punches and will take disciplinary action, up to and including termination, for [a manager's] failure to edit time punches appropriately, accurately, and correctly.

(Id. at Exs. 1, 2; ¶ 57).  Likewise, any manager who knowingly makes an inaccurate edit or adjustment to an hourly employee's time entry, such that the employee is not fully paid for all time worked, would be in violation of Chipotle's Time Punch Policy:

> Chipotle will take all steps to prevent and remedy unlawful violations of [the requirement to pay hourly employees for all time worked] and will take disciplinary action, up to and including termination, for [a manager's] failure to pay all hourly employees for all time worked.

(Id.).  Finally, any manager who directs or permits an hourly employee to work "off-the-clock" without accurately recording the time would be in violation of these policies and may be subject to discipline.  (Id. at ¶ 57).

Hourly employees are encouraged to raise any questions or concerns about these policies, or about their pay in general, by contacting their managers, field leaders, or one of Chipotle's two confidential 24-hour hotlines.  (Id. at ¶ 55).  Each Chipotle restaurant displays a poster with the hotline information.  (Id.).  The information is contained in the Crew Handbook and Restaurant Management Handbook as well.  Chipotle's compliance specialists promptly address any concerns received through the hotlines.  (Id.).

**C.    PLAINTIFF'S ALLEGATIONS CONCERNING HIS EXPERIENCES STAND IN CONTRAST TO THE TESTIMONY OF NUMEROUS OTHER HOURLY EMPLOYEES WHO WORKED IN NEW YORK CITY RESTAURANTS**

### 1.    Plaintiff's Allegations

Plaintiff contends that he worked at two Chipotle restaurants – Montague Street and Court Street – and that he "filled in" at three additional restaurants – Upper East Side, Greenwich Village, and Metrotech Plaza – on an "as needed" basis.  (Garcia Decl. ¶¶ 1, 6).  Plaintiff generally contends that he was required to work "off-the-clock" and that his hours were "shifted" from one week to the next to avoid overtime, but his specific allegations reveal even his own experiences to differ from restaurant to restaurant.

**Montague Street:**  Plaintiff contends that while he worked at the Montague Street restaurant, Jose Ruiz, a General Manager, and Raul Florez, an Apprentice, required him to clock-out by midnight even when he had not finished working.  (Id. at ¶ 4).  He further contends that, at Montague Street, Mr. Florez told him that he had to work "off-the-clock" if the replacement shift was not ready by the end of his scheduled shift.  (Id.).  Finally, he contends that he was "made to shift overtime hours into the next week" to avoid the payment of overtime.  (Id.).  This last

allegation is particularly notable and not credible for two reasons: (i) as a Crew Member, Kitchen Manager, or Service Manager, Plaintiff did not have the ability to shift his own hours from one week to the next; and (ii) it is, in any event, a mathematical and practical impossibility given Plaintiff's other sworn testimony that he worked over 40 hours per week throughout his employment such that, by Plaintiff's own admission, shifting would not have alleviated the payment of overtime.  (Id. at ¶ 11).

**Court Street:**  Plaintiff contends that while he worked at the Court Street restaurant, Nancy Sanchez, the General Manager, directed him to clock-out at the scheduled conclusion of his shift rather than when he completed his work.  (Id. at ¶ 5).  In contrast with his allegations concerning Montague Street, Plaintiff makes no mention of having to clock-out at midnight or for the purpose of preparing the replacement shift.  (Id.).  Plaintiff also alleges that he was made to shift his own hours from one week to the next to avoid overtime, which again, for the reasons set forth above, makes absolutely no sense.  (Id.).

**Metrotech Plaza:**  Plaintiff contends that he worked at Metrotech Plaza on some unidentified dates.  (Id. at ¶ 7).  Unlike at Montague Street and Court Street, Plaintiff does not mention that anyone directed him to clock-out prior to his completing his shift or that anyone directed him to perform "off-the-clock" work.  Plaintiff offers only the amorphous statement that it was "common knowledge that everyone would be asked to clock-out at a certain time and continue working."  (Id.).  Plaintiff does not make any specific allegations of time shifting at Metrotech Plaza, beyond his generalized introductory statement that "Defendant practices the same time-shaving and time shifting policies" in all restaurants.  (Id. at ¶ 6).

**Greenwich Village:**  Plaintiff contends that he worked at Greenwich Village on some unidentified dates.  (Id. at ¶ 8).  Unlike Metrotech Plaza, Plaintiff contends that he was affirmatively told to clock-out at 12:00 AM and to continue working by "Angie," an alleged General Manager

whose full name he could not provide.  (<u>Id</u>.).  Further, unlike Metrotech Plaza, Court Street, or Montague Street, Plaintiff alleges that in Greenwich Village, he was automatically clocked-out at 12:00 AM but verbally instructed to inform the General Manager on his next shift about the hours that he worked after 12:00 AM so that his hours could be manually adjusted.[6]  (<u>Id</u>. at ¶ 8).  Plaintiff does not make any specific allegations of time shifting at Greenwich Village, beyond his generalized introductory statement that all practices were the same.  (<u>Id</u>. at ¶ 6).

**Upper East Side:**  Plaintiff contends that he worked at Upper East Side on some unidentified dates.  (<u>Id</u>. at ¶ 9).  Plaintiff acknowledges that the alleged practices at Upper East Side differed from those of the other four restaurants, insofar as he testified that "management had a stricter time-shaving policy."  (<u>Id</u>.).  There, in contrast to the other restaurants, he contends that he was automatically clocked-out at 11:30 PM, an express acknowledgement that the reset time varied from one restaurant to another.  (<u>Id</u>.).  Plaintiff does not allege that he actually worked "off-the-clock" and does not make any specific allegations of time shifting.  (<u>Id</u>. at ¶¶ 6, 9).

Plaintiff purports to testify to conversations with coworkers wherein allegations of "off-the-clock" work and "shifting" were discussed.  Plaintiff does not offer the dates of any of these conversations, the location of these conversations (save one, in Paragraph 5 of his Declaration), or provide any testimony concerning the actual hours worked or compensation paid to the coworkers with whom he allegedly conversed.  Indeed, Plaintiff does not even offer an estimate of his own hours worked beyond contending that he "regularly worked over 40 hours per week."  (<u>Id</u>. at ¶ 11).  Plaintiff also does not explain the basis for his "personal observations" of allegedly improper compensation to his coworkers.

---

[6]      Again, Plaintiff's testimony is internally consistent: if he was required to clock-out before 12:00 AM and continue working thereafter, as he first testifies, he cannot also have been automatically clocked-out at 12:00 AM, as he later testifies.  The absence of any testimony concerning the dates or number of days he worked in this restaurant further compound the confusion and lack of evidentiary merit to his Declaration.

### 2.      The Testimony Of Other Hourly Employees Who Worked In New York City

Plaintiff did not provide declarations from any other employee that corroborates any of his claims or presents even a modest showing that they are "similarly situated" to Plaintiff.  Other hourly employees, some of whom worked in the same restaurants as Plaintiff, testified under oath that they did not work "off-the-clock," that there hours were not "shifted" from one week to the next, and that they were appropriately paid for all hours worked.

For example, Camilo Canaveral and Edison Perez have worked at the Greenwich Village location since September 2013 and May 2015, respectively.  (Canaveral Decl. ¶ 2; Perez Decl. ¶ 2). They testified that they have always been paid for all hours worked.  (Canaveral Decl. ¶ 7; Perez Decl. ¶¶ 6-7).   They acknowledged that if they discovered any discrepancies in the records concerning their hours of work or pay, they would raise it with their managers or call a toll-free hotline.  (Canaveral Decl. ¶¶ 7, 12; Perez Decl. ¶¶ 7, 12).   Thus, Canaveral and Perez each acknowledged that on occasion, they forgot to clock-in when they began work or forgot to clock-out when they completed work, but that the errors were rectified by their managers after they notified them and authorized them to adjust their records.  (Canaveral Decl. ¶¶ 10-12; Perez Decl. ¶¶ 9-11). Unlike Plaintiff, Canaveral and Perez testified that the End of Day Transaction Close at their restaurant occurred at 3:00 AM, well after all employees had left the restaurant.  (Canaveral Decl. ¶¶ 21-26; Perez Decl. ¶¶ 21-25).  Canaveral and Perez concluded that they have never been asked to, or actually worked, "off the clock" and that their hours have never been shifted from one week to another.  (Canaveral Decl. ¶¶ 13-14, 17-18, 31; Perez Decl. ¶¶ 14, 17-20, 30).

Likewise, Tatyana Cancel, Xiara Perez, and Maribel Alvarez have worked at the Court Street location since April 2014, September 2014, and November 2013, respectively, and have each worked with Nancy Sanchez and Raul Florez, who Plaintiff claims directed them to work "off-the-clock" or shifted their hours.  (Cancel Decl. ¶ 2; Perez Decl. ¶ 2; Alvarez Decl. ¶ 2).  Each of these

employees disagreed with Plaintiff and testified that: (i) they have always been paid for all hours worked; (ii) that they were never asked to, nor did they, work "off-the-clock" by Ms. Sanchez or Mr. Florez; (iii) and that their hours were never "shifted" from one week to the next.  (Cancel Decl. ¶ 7, 11, 14, 16-18, 20, 23, 30-31; Perez Decl. ¶ 7, 14, 16-18, 20, 30-31; Alvarez Decl. ¶ 7, 10, 14, 17-18, 20, 25, 30-31).   Other hourly employees working in other New York City area restaurants also testified, in stark contrast to Plaintiff, that they were never required to work "off the clock," that their overtime hours have never been shifted from one week to another, and that they were appropriately paid for all hours worked.  (Morillo Decl. ¶¶ 5, 7, 11, 14, 17, 24, 29-30; Rodriguez Decl. ¶¶ 5, 7, 9-11, 14, 17-18, 20, 28; Ochoa Decl. ¶¶ 7, 9-11, 14, 20, 30-31; Baez Adams Decl. ¶¶ 5, 7, 11, 13-15, 17-18, 20, 24, 30).

## D.   CHIPOTLE'S ARBITRATION POLICY

Beginning in August 2014, Chipotle implemented an arbitration program applicable to all new hires, including all new employees in New York City.  (Gottlieb Decl. ¶ 18).  Since that time, all newly hired employees have completed arbitration agreements whereby they agree to arbitrate all employment-related claims.  (Id. at ¶ 19).  These employees have also waived their right to pursue any claims on a class or collective basis.  Since the arbitration program was implemented, approximately 4,260 employees in New York City have executed agreements.  (Id. at ¶ 20).

## ARGUMENT

## I.   THE STANDARD FOR CONDITIONAL CERTIFICATION

Pursuant to Section 216(b) of the FLSA, a plaintiff may bring a collective action on behalf of himself and other "similarly situated" employees.  See 29 U.S.C. § 216(b); Martinez v. Zero Otto Nove, Inc., No. 15-CIV-899 (ER), 2016 WL 3554992, at *2 (S.D.N.Y. June 23, 2016) (Ramos, J.). Courts use a two-step analysis when determining whether certification of a collective action is appropriate.  See Romero v. H.B. Automotive Group, Inc., No. 11-CIV-386 (CM), 2012 WL

1514810, at *9 (S.D.N.Y. May 1, 2012).  In the first stage, the Court must determine whether the named plaintiffs and putative class members are "similarly situated."  See id. (citing Myers v. Hertz Corp., 624 F.3d 537, 554 (2d Cir. 2010)).  The burden is on the plaintiff to set forth "substantial allegations of a factual nexus between the named plaintiffs and potential opt-in plaintiffs with regard to their employer's alleged FLSA violation."  Jenkins v. TJX Companies Inc., 853 F. Supp. 2d 317, 320 (E.D.N.Y. 2012).  Plaintiff's "modest factual showing cannot be satisfied simply by unsupported assertions…[or] [c]onclusory allegations."  Romero, 2012 WL 1514810, at *10.  In the second stage, if a class has been conditionally certified, the defendant can move to decertify the class.  See id.  "Certification [at this first stage] is not automatic.  While the factual showing that [the putative plaintiff] must make at this stage is modest, it must be sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law."  Id. at *3); see also Fu v. Mee May Corp., No. 15-CIV-4549 (KPF), 2016 WL 1588132, at *2 (S.D.N.Y. Apr. 20, 2016).

## II. PLAINTIFF HAS NOT MET HIS BURDEN TO DEMONSTRATE THAT HE IS "SIMILARLY SITUATED" TO OTHER EMPLOYEES WITH RESPECT TO THE VIOLATIONS ALLEGED

### A. Plaintiff's Declaration Is Insufficient To Support Conditional Certification Of All Hourly Workers At All New York City Restaurants

Conditional certification cannot be granted on the basis of Plaintiff's insufficient Declaration.  Courts in this District will not allow plaintiffs to meet their burden without providing a "minimum level of detail regarding the contents of [] conversations or observations" of coworkers who were also subject to the alleged unlawful common policy.  Martinez, 2016 WL 3554992, at *4 (quoting Reyes v. Midaja, LLC, No. 14-CIV-9812 (RWS), 2015 WL 4622587, at *3 (S.D.N.Y. Aug. 3, 2014)); Sanchez v. JMP Ventures, LLC, No. 13-CIV-7264 (KBF), 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014) (holding that facts such as "where or when these observations or conversations occurred…is critical in order for the Court to determine the appropriate scope of the

proposed class and notice process."); <u>Guo v. Tommy's Sushi, Inc.</u>, No. 14-CIV 3946 (PAE), 2014 WL 5314822, at *3 (S.D.N.Y. Oct. 16, 2014) (denying conditional certification of a class of all hourly paid, non-managerial employees based on "unsupported assertions" regarding discussions and comparisons among coworkers).  These details are particularly critical where, as here, a request for conditional certification is premised solely upon the affidavit of a single employee.  <u>See</u>, <u>e.g.</u>, <u>Ji v. Jling, Inc.</u>, No. 15-CV-4194 (JMA) (SIL), 2016 WL 2939154, at *5 (E.D.N.Y. May 19, 2016) (internal citation omitted); <u>Mata v. Foodbridge, LLC</u>, No. 14-CIV-8754 (ER), 2015 WL 3457293, at *4 (S.D.N.Y. June 1, 2015) (same).

Here, Plaintiff claims to have had conversations with other employees concerning "time-shaving" and "off-the-clock" work.  However, Plaintiff's Declaration is fatally thin on details.  To begin, Plaintiff neglects to identify the dates on which he allegedly spoke with any coworkers. (Garcia Decl. ¶ 3, 4, 5, 9, 20).  The absence of dates is problematic given that he does not identify the dates on which he allegedly worked at each of the five restaurants referenced in his Declaration including, most problematically, the three he "filled in" at on an "as needed" basis.[7]  (<u>Id</u>. at ¶6). This issue is compounded by the fact that Plaintiff's allegations identify inconsistent and sporadic managerial directives, rather than a standard policy, as the source of the alleged violations, meaning that it is critical to understand who the offending manager(s) were to understand when the alleged violations occurred.  As it stands, it is impossible for the Court to make a determination as to the timeframe that Plaintiff's allegations concern.  <u>See</u> <u>Sanchez</u>, 2014 WL 465542, at *2 ("[T]he Court does not know where or when these observations or conversations occurred, which is critical in order for the Court to determine the appropriate scope of the proposed class and notice process.").

Likewise, with one exception, Plaintiff does not offer any details concerning where any of his alleged conversations took place.  Plaintiff simply states that he had conversations "[t]hroughout

---

[7]     Thus, his alleged conversations may have occurred outside of the three-year limitations period under the FLSA, rendering this Motion largely baseless.

-14-

his employment" on lunch breaks or on his way home.  (Garcia Decl. ¶ 3).  With respect to the one

instance where he does identify a location – on the F Train – Plaintiff neglects to include a date

rendering it entirely unhelpful to his bid to support his contention that his allegations concern more

than him alone.  See Sanchez, 2014 WL 465542, at * 2.

Further, Plaintiff neglects to offer any information concerning "the number of hours other

employees worked or the compensation they earned."  Martinez, 2016 WL 3554992, at *5.  Indeed,

while Plaintiff uses the term "overtime" throughout his Declaration, Plaintiff does not even offer

any details as to the specific amount of hours he worked in excess of 40 in any given week,[8] or the

schedule or hours of any other person with whom he allegedly conversed, rendering it impossible to

determine whether Plaintiff or these employees actually worked more than 40 hours in a week.  See,

e.g., Ji, 2016 WL 2939154, at *4 (denying conditional certification where affidavit failed to offer

evidence that other employees worked more than 40 hours in a week).  Plaintiff's failure in this

regard – which extends to his own personal experience – not only renders his request for conditional

certification wanting, but fails to meet the pleading standards set forth in Lundy v. Catholic Health

System of Long Island, 711 F.3d 106, 114 (2d Cir. 2013) (requiring dismissal of an FLSA

complaint where only "threadbare" allegations are raised and a plaintiff neglects to allege working

more than 40 hours of work in a specific workweek); DeJesus v. HF Mgmt. Svcs, LLC, 726 F.3d

85, 87 (2d Cir. 2013) (dismissing complaint where plaintiff alleged that she worked "more than

forty hours per week during 'some or all weeks of her employment.'"); Amponin v. Olayan America

Corp., No. 14-CIV-2008 (TPG), 2015 WL 1190080, at *3 (S.D.N.Y. Mar. 16, 2015) (dismissing

FLSA complaint where "plaintiff's allegations identify neither a specific week during which she

worked more than forty hours, nor the specific number of hours she worked during any such

week.").  Stated differently, because Plaintiff has not sufficiently alleged a violation on his own

---

[8]      Plaintiff simply states: "Throughout my employment with Defendant, I regularly worked over 40 hours per week."  (Garcia Decl. ¶ 11).

behalf under Second Circuit precedent, he cannot purport to represent a collective and advance claims on their behalf.

Finally, Plaintiff repeatedly states that he has made "personal observations" of the alleged "off-the-clock" work of his coworkers and the alleged time-shifting practices, but neglects to substantiate how, precisely, he came to develop personal knowledge of something that is, by its nature, incapable of being observed.  (Garcia Decl. ¶¶ 6, 8, 9, 10, 11).  For Plaintiff to have personally observed "off-the-clock" work, Plaintiff would have to have not only observed a coworker clocking-out and continuing to work, but he would have to review the related time records and pay stubs to "observe" whether a violation occurred.  Similarly, for Plaintiff to have personally observed "time shifting," Plaintiff would have to have witnessed a manager manually altering time records in the Aloha system and, again, confirmed that an employee was inappropriately paid by reference to pay stubs showing no overtime either in the weeks from which hours were shifted or the weeks to which hours were shifted.  While Plaintiff certainly uses the correct buzz phrase – "personally observed" – it is superficial, at best, as Plaintiff has not even feigned an attempt to illustrate the basis for his knowledge.

In short, Plaintiff's Motion should be denied because of his failure to support his Motion with competent evidence.  See, e.g., Sanchez, 2014 WL 465542, at * 2.

**B.      Plaintiff Has Not Demonstrated That He And Putative Collective Members Were "Victims Of A Common Policy Or Plan That Violated The Law"**

Plaintiff cannot meet his burden for the additional reason that he cannot demonstrate that he and putative collective members "together were victims of a common policy or plan that violated the law."  Myers, 624 F.3d at 554.  As an initial matter, Chipotle's policies are entirely lawful. Chipotle's Timekeeping and Time Punch Policies emphasize that all employees are required to accurately record their time, that managers must make adjustments to resolve errors to ensure all time is accurately recorded, and that all employees are to be paid for all hours worked.  See Point B,

supra.  These policies explicitly prohibit "off-the-clock" work.  <u>See</u> Point B, <u>supra</u>.  Chipotle takes numerous steps to ensure that these policies are followed, including disciplining employees for failure to adhere, requiring employees to acknowledge that they have read and understood all timekeeping procedures, training employees about these policies, issuing daily time records/receipts, and providing avenues for employees to raise concerns about their time records and pay, either through managers, field leaders, or one of two toll-free hotlines.  <u>See</u> Point B, <u>supra</u>.

Likewise, the automatic reset for Aloha – which results in some employees being clocked-out automatically at a certain time – is lawful.  <u>See</u>, <u>e.g.</u>, <u>Wolman v. Catholic Health Sys. of Long Island, Inc.</u>, 853 F. Supp. 2d 290, 301 (E.D.N.Y. 2010); <u>see also</u> <u>Watson v. Surf-Frac Wellhead Equip. Co.</u>, No. 11-CV-843, 2013 U.S. Dist. LEXIS 143195, at *17 (E.D. Ark. Oct. 3, 2013); <u>Camilotes v. Resurrection Health Care Corp.</u>, 286 F.R.D. 339, 350 (N.D. Ill. 2012) (compiling cases).  Consistent with Chipotle's policy to pay for all hours worked, Chipotle's policies direct employees to clock-back-in if they are automatically clocked-out or raise the issue with a manager so that their time entries can be manually adjusted to ensure proper payment for all hours worked.  <u>See</u> Point B, <u>supra</u>.  Other mechanisms also exist to ensure that time records and pay are correct both before and after wages are generated.

In the face of these lawful policies, Plaintiff must demonstrate that they were unlawfully applied among members of the putative collective.  However, the evidence presently before the Court reveals that the issue of whether hourly employees were similarly affected by the implementation of these lawful policies is highly individualized.  This is most apparent by reference to Plaintiff's own sworn testimony.

Plaintiff's testimony concerning "off-the-clock" work varies from restaurant to restaurant. At Montague Street, Plaintiff contends that a General Manager or Apprentice required him to clock-out at midnight, even if he continued working after, to ensure the replacement shift was ready.

(Garcia Decl. at ¶ 4).   At Court Street, in contrast, Plaintiff contends that a General Manager directed him to clock-out, not at midnight, but when his scheduled shift was to end without the limiting criteria of preparing for a replacement shift.   (Id. at ¶ 5).   At Metrotech Plaza, Plaintiff suggests that he was simply required to rush to complete his work before he was clocked-out and that he was "frequently" required (by unidentified persons) to work "off-the-clock" despite acknowledging he rarely worked there.   (Id. at ¶ 7).   At Greenwich Village, Plaintiff alleges that he was automatically clocked-out at 12:00 AM, but directed to verbally inform his General Manager of any unrecorded hours so that his hours could be adjusted.   (Id. at ¶ 8).   Finally, at Upper East Side, Plaintiff alleges that he was automatically clocked-out at 11:30 PM, rather than 12:00 AM, but does not allege that he actually performed any "off-the-clock" work.   (Id. at ¶ 9).

Plaintiff's allegations concerning "time shaving" also vary from restaurant to restaurant.   At Montague Street and Court Street, Plaintiff contends that employees "were made" to shift overtime hours from one week to the next.[9] (Id. at ¶ 4, 5).   At the remaining locations, Plaintiff simply states that Chipotle allegedly "practiced the same time-shaving and time-shifting policies against crew members and hourly members" without elaboration on the dates, frequency, or managers involved. (Id. at ¶ 6).   Importantly, Plaintiff does not allege that the alleged time-shifting ever occurred to him personally at any of these three locations.   (Id. at ¶¶ 6, 7, 8, 9).   And, because Plaintiff testified that he worked over 40 hours every week, he does not explain how it would even be possible to have shifted hours from one week to another to avoid overtime.

Plaintiff's testimony – before other evidence is even considered – reveals the practices allegedly in place from one restaurant to another to differ such that the hourly employees on whose behalf conditional certification is sought cannot be "similarly situated" with respect to the violation alleged.   Plaintiff's testimony highlights that the alleged violations, to the extent they occurred,

---

[9]       This testimony is puzzling since Crew Members and Hourly Managers are not authorized to make adjustments to recorded time, rendering it impossible for the affected employees to themselves shift their time, as Plaintiff alleges.

were the product of unique managerial preference or directives departing from lawful policies, as opposed to a common plan or policy, such that they necessarily vary from restaurant to restaurant. That is not hyperbole, but Plaintiff's testimony.   As such, Plaintiff cannot contend that he is "similarly situated" to other hourly employees.

Even putting aside the differences from restaurant to restaurant evident in Plaintiff's Declaration, conditional certification is still inappropriate because the testimony of putative collective members reveals that they are not "similarly situated" to Plaintiff with respect to the violations alleged.   Hourly employees who worked in the same restaurants as Plaintiff or that worked in other New York City restaurants that would be embraced by the collective proposed by Plaintiff testified, in detail, that: (i) they were paid for all hours worked; (ii) that they were not required to, nor did they ever, work "off the clock;" (iii) that their hours were never "shifted" from one week to the next; (iv) that they had multiple avenues to resolve errors concerning their hours of work or their pay and that they took advantage of those opportunities.  (Canaveral Decl. ¶¶ 13-14, 17-18, 31; Perez Decl. ¶¶ 14, 17-20, 30; Cancel Decl. ¶ 7, 11, 14, 16-18, 20, 23, 30-31; Perez Decl. ¶ 7, 14, 16-18, 20, 30-31; Alvarez Decl. ¶ 7, 10, 14, 17-18, 20, 25, 30-31; Morillo Decl. ¶¶ 5, 7, 11, 14, 17, 24, 29-30; Rodriguez Decl. ¶¶ 5, 7, 9-11, 14, 17-18, 20, 28; Ochoa Decl. ¶¶ 7, 9-11, 14, 20, 30-31; Baez Adams Decl. ¶¶ 5, 7, 11, 13-15, 17-18, 20, 24, 30).  Plaintiff cannot credibly contend that he is "similarly situated" to members of the proposed collective who testified that they had the literal opposite experiences as Plaintiff.

### C.     Plaintiff Is Not "Similarly Situated" To Employees Who Were Hired After August 2014 And Executed Arbitration Agreements

Plaintiff cannot demonstrate that he is "similarly situated" to the collective on whose behalf he seeks conditional certification because all employees hired after August 2014 have executed enforceable arbitration agreements precluding their ability to participate in a collective or class action.  See, e.g., Sutherland v. Ernst & Young LLP, 726 F.3d 290, 296-98 (2d Cir. 2013)

(authorizing arbitration agreements with class and collective action waivers).  Many Courts have held that conditional certification is inappropriate if the collective includes signatories to enforceable arbitration agreements waiving the right to participate in collective actions.  See, e.g., Adami v. Cardo Windows, Inc., 299 F.R.D. 68, 81-82 (D.N.J. 2014); Longnecker v. American Exp. Co., No. 14-CV-0069-HRH, 2014 WL 4071662, at *7 (D. Ariz. Aug. 18, 2014).[10]  Plaintiff's Motion should be denied for this additional reason.

### III.    IN THE ALTERNATIVE, THE COURT SHOULD LIMIT ANY COLLECTIVE TO EMPLOYEES WHO WORKED IN THE SAME TWO RESTAURANTS AS PLAINTIFF

In the alternative, a collective should be limited to hourly employees who worked in one of the two restaurants in which Plaintiff worked.  Courts routinely limit conditional certification orders in cases involving restaurant-employers to only those locations at which the named plaintiff(s) worked.  See Apolinar v. R.J. 49 Rest., LLC, No. 15-CV-8655 (KBF), 2016 WL 2903278, at *6-7 (S.D.N.Y. May 18, 2016); Feng v. Soy Sauce LLC, No. 15-CV-3058, 2016 WL 1070813, at *5 (E.D.N.Y. Mar. 14, 2016); Tamay v. Mr. Kabob Rest., Inc., No. 15-CV-5935 (JMF), 2016 WL 205456, at *2 (S.D.N.Y. Jan. 15, 2016); Becerra v. IM LLC-I, No. 14-CV-2671 (ADS) (ARL), 2015 WL 1954478, at * 5 (E.D.N.Y. Apr. 29, 2015); Lujan v. Cabana Mgmt., Inc., No. 10-CV-755, 2011 WL 317984, at *4-9 (E.D.N.Y. Feb. 1, 2011).  To be sure, the District of Minnesota recently held that a collective in a similar "off-the-clock" case brought against Chipotle could not be conditionally certified beyond the single store in which the plaintiffs worked.  See Harris v. Chipotle Mexican Grill, Inc., 39 F. Supp. 3d 564 (D. Minn. 2014).  The plaintiffs supported their request for certification with six declarations from employees holding multiple job titles, each of whom contended that they were required to perform "off-the-clock" work.  See id.  The Court held

---

[10]    Chipotle is cognizant that many New York District Courts have held that it is premature to consider the effect of an arbitration agreement signed by putative collective members at the conditional certification stage.  See, e.g., Romero v. La Revise Assoc., LLC, 968 F. Supp. 2d 639, 647 (S.D.N.Y. 2013).  However, the matter has not yet been addressed by the Second Circuit.  Further, Chipotle raises the issue now to preserve its ability to make a motion pursuant to Rule 12(b), if necessary, with respect to any signatories to an arbitration agreement.

that "such a limited sampling of employees does not support the Plaintiffs' assertion of widespread violations resulting from a common policy or plan." Id. at 579.  Accordingly, the Court refused to certify a collective beyond a single store.

While Chipotle submits that collective certification here should be denied entirely – primarily because of the evidentiary deficiency of Plaintiff's Declaration – it should not, under any circumstances, extend beyond the two stores where Plaintiff actually worked given the evidence submitted by Plaintiff in support of his Motion.  Plaintiff's Declaration does not even mention any Chipotle restaurant beyond the two to which he was assigned and the three at which he allegedly "filled in."  Thus, there is no factual basis for the Court to find, inferentially or otherwise, that the practices complained of by Plaintiff existed or occurred at any other Chipotle location.  Indeed, Plaintiff's allegations posit that the alleged violations were not the result of some systematic policy that could serve as the "glue" between restaurants, but instead, the result of the directives of a handful of managers that failed to follow Chipotle's lawful policies.  As such, if any collective is certified, it should be limited to the appropriate period before August 2014 and the two stores to which Plaintiff was assigned and for which Plaintiff has offered evidentiary support, albeit a minimal amount.

**IV.    IF ANY COLLECTIVE IS CERTIFIED, NOTICE SHOULD ONLY BE DISTRIBUTED TO HOURLY EMPLOYEES EMPLOYED IN PLAINTIFF'S TWO STORES WITHIN THREE YEARS PRECEDING THE FILING OF THE COMPLAINT**

If the Court grants any portion of Plaintiff's Motion, the Court should limit the recipients of notice of the matter to hourly employees hired before August 2014 who were employed at the two restaurants where Plaintiff worked within three years of the Court's Order on Plaintiff's Motion. Courts in this District routinely reject requests to apply the limitations period applicable to claims under the New York Labor Law.  See Ramos v. PJJK Rest. Corp., No. 15-CV-5672 (PKC), 2016 WL 1106373, at *4-5 (S.D.N.Y. Mar. 10, 2016) (finding that efficiency or judicial economy would

not be enhanced if collective action notice distributed to persons with time-barred FLSA claims); Reyes v. N.Y. F&B Svcs., LLC, No. 15-CV-2882-LTS-DCF, 2016 WL 796859, at n. 6 (S.D.N.Y. Feb. 22, 2016) (same); Mongiove v. Nate's Corp., No. 15-CV-1024 (NGG) (RML), 2016 WL 590460, at *6 (E.D.N.Y. Feb. 11, 2016); Personal Touch Moving, Inc., No. 13-CIV-8187, 2014 WL 4593944, at *7 (S.D.N.Y. Sept. 15, 2014) (same);  Trinidad v. Pret A Manger (USA) Ltd., 962 F. Supp. 2d 545, 564 (S.D.N.Y. 2013) (same).  Counsel to Plaintiff has, in fact, made this very request before and has had the request rejected.  See Iriarte v. Café 71, Inc., No. 15-CIV-3217 (CM), 2015 WL 8900875, at *5-6 (S.D.N.Y. Dec. 11, 2015) (rejecting claim of Lee Litigation Group, PLLC that it is "common practice" to distribute notice covering a six year period, and commenting that "[i]t makes no sense to notify people about a claim that may never concern them.").  This result is particularly appropriate here as Plaintiff does not offer any argument for seeking the unwarranted extension of the limitations period.

In addition, the three-year period should run, not from the filing of the Complaint – on January 26, 2016 – but from the date of the Court's order on Plaintiff's Motion.  See Cherif v. Sameday Delivery Corp., No. 13-CV-1341 (RJD) (MDG), 2015 WL 5772012, at *5 (E.D.N.Y. Sept. 30, 2015); Maldonado v. Arcadia Business Corp., No. 14-CV-4129 (DLI) (RML), 2015 WL 1914933, at *4 (E.D.N.Y. Apr. 27, 2015) (holding that using the date of the filing of the complaint is only appropriate where "defendants would be perversely incentivized to drag out preliminary discovery so as to shorten the pre-filing notice period.") (internal citation omitted); Hernandez v. Immortal Rise, Inc., No. 11-CV-4360 (RRM), 2012 WL 4369746, at *7 (E.D.N.Y. Sept. 24, 2012); Whitehorn v. Wolfgang's Steakhouse, Inc., 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011).

**V.     IF ANY COLLECTIVE IS CERTIFIED, PLAINTIFF'S PROPOSED NOTICE SHOULD BE REJECTED AND THE PARTIES SHOULD BE DIRECTED TO MEET AND CONFER OVER THE FORM AND CONTENT OF A SUITABLE NOTICE**

Plaintiff prematurely included a proposed form of notice with his Motion.  (Docket No. 21-1 at Ex. A).  Plaintiff's proposed notice is, of course, entirely one-sided and prejudicial.  If the Court grants any portion of Plaintiff's Motion, the Court should direct the parties to meet and confer over the content and form of the notice and submit the same to the Court for approval.[11]  See, e.g., Tamay, 2016 WL 205456, at *2 (directing parties to meet and confer over form and substance of notice).   To the extent the Court is inclined to consider the proposed notice at this time, Chipotle requests that the following defects be remedied.

First, the notice should set forth contact information for Chipotle's counsel.  See Limarvin v. Edo Rest. Corp., 11-CIV-7356 (DAB), 2013 WL 371571, at *2 (S.D.N.Y. Jan. 31, 2013); Hernandez, 2012 WL 4369746, at *7; Diaz v. S&H Bondi's Dept. Store, No. 10-CIV-7676 (PGG), 2012 WL 137460, at *7 (S.D.N.Y. Jan. 18, 2012); Moore v. Eagle Sanitation, Inc., 276 F.R.D. 54, 61 (E.D.N.Y. 2011).

Second, the notice should prominently indicate that putative collective members can choose their own counsel.  See Calderon v. King Umberto, Inc., 892 F. Supp. 2d 456, 463  (E.D.N.Y. Sept. 25, 2012).  The notice should also eliminate the threat currently set forth therein.  See Docket No. 21-1 ("If you want your own attorney…you will be responsible for paying that attorney's fees and expenses.").

Third, the notice should include a statement on the first page reading: "This notice is to locate persons who wish to join this case and are eligible to join this case and has no other purpose.

---

[11]     The Court should direct Plaintiff to "meet and confer" with defense counsel in an effort to resolve the following objections, among others: (i) Chipotle's denial of the allegations in the lawsuit, as well as its defenses, should be addressed earlier, more prominently, and in more detail; (ii) recipients should be more clearly advised that they retain their rights to pursue claims even if they do not join the lawsuit; (iii) the notice should make clear that a recipient may obtain nothing by virtue of the lawsuit; and (iv) the period for a putative Opt-In Plaintiff to file a consent form should be shortened to 30 days.  Chipotle reserves the right to raise additional objections during the course of a "meet and confer."

Your right to participate in this suit may depend upon a later decision by the federal court that you and the Class Representatives are 'similarly situated.'" See Hamadou v. Hess Corp., No. 12-CIV-0250 (CM) (JLC), 2013 WL 164009, at *15 (S.D.N.Y. Jan. 16, 2013).  Relatedly, the Court should order Plaintiffs to include language reading: "Chipotle does not believe you are entitled to participate in this case and will make a motion before the Court at the appropriate time seeking an order dismissing you from this case in the event you complete the form at the end of this Notice." See, e.g., Enriquez v. Cherry Hill Market Corp., No. 10-CV-5616 (FB)(ALC), 2012 WL 440691, at *4 (E.D.N.Y. Feb. 10, 2012).

Finally, for the reasons set forth in Point IV, supra, the notice should be mailed to potential Opt-Ins employed as hourly employees within the three year period prior to the date of the Court's Order on Plaintiff's Motion who were hired before August 2014.  See, e.g., Hernandez, 2012 WL 4369746, at *7.

**VI.    IF ANY COLLECTIVE IS CERTIFIED, THE CLAIMS OF POTENTIAL OPT-IN PLAINTIFFS SHOULD NOT BE TOLLED**

In an FLSA collective action, the limitations period continues to run for each plaintiff until he or she files with the Court written consent to join the lawsuit.  See, e.g., Jackson v. Bloomberg, L.P., 298 F.R.D. 152, 170 (S.D.N.Y. 2014) (citing 29 U.S.C. § 256(b)).  "Equitable tolling allows courts to extend the statute of limitations…but it applies only in the rare and exceptional case." Ramos, 2016 WL 1106373, at *4-5 (quoting Lanzetta v. Florio's Enter., Inc., 763 F. Supp. 2d 615, 622 (S.D.N.Y. 2011));  Apolinar, 2016 WL 2903278, at *8 (noting that equitable tolling is premature in absence of demonstration that "a party has been prevented in some extraordinary way from exercising his rights.");  Vasto v. Credico (USA) LLC, No. 15-CIV-9298 (PAE), 2016 WL 2658172, at *16 (S.D.N.Y. May 5, 2016) (refusing to toll claims despite pendency of motion for conditional certification for seven months).

-24-

Here, Plaintiff asks the Court to subvert the normal process and toll the claims of all potential Opt-In Plaintiffs until notice is distributed.  (Pl. Mem. at 14).  Plaintiff offers no evidence or even argument in support of his request that would render this matter "rare and exceptional." Ramos, 2016 WL 1106373, at *5.  His simple unsupported statement that Courts have "increasingly granted requests for equitable tolling" is insufficient.[12]   See id. (rejecting request for equitable tolling premised solely upon the contention that courts "routinely grant" requests for tolling). Plaintiff cannot remedy his failure to offer any argument in his Reply.  See, e.g., Carbonell v. Acrish, 154 F. Supp. 2d 552, 561 (S.D.N.Y. 2001).

## CONCLUSION

For each of the foregoing reasons, Chipotle respectfully submits that the Court should enter an Order: (i) denying Plaintiff's Motion in its entirety; or, in the alternative (ii) limiting certification of a collective to the two stores where Plaintiff worked; (iii) directing that notice be distributed to hourly workers at the two stores in which Plaintiff worked for the three-year period preceding the date of the Court's Order on Plaintiff's Motion who were hired before August 2014; (iv) denying Plaintiff's request for equitable tolling; and (v) directing the parties to meet and confer concerning the form and content of a proposed notice and to submit the same to the Court for review or resolution of any disputes within thirty (30) days of the date of the Court's Order.

---

[12]        The cases cited by Plaintiff do not support a different result.  In Jackson, the Court equitably tolled claims solely because the motion for conditional certification had been fully briefed for more than seven months.  See 298 F.R.D. at 170; see also McGlone v. Contract Callers, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) (tolling because of the delay in deciding the motion for conditional certification).  There has been no delay here.  In Glatt v. Fox Searchlight Pictures, Inc., the Court referenced conduct on the part of the defendant that prevented potential plaintiffs from learning of their rights.  See No. 11-CIV-6784, 2013 WL 4834428, at *2 (S.D.N.Y. Aug. 26, 2013).  Plaintiff has not even attempted to identify any improper conduct that prevented a putative plaintiff from learning of their rights here.  In Kemper v. Westbury Operating Corp., the Court did not opine on the propriety of equitable tolling, but instead, discussed the temporal scope of who would appropriately receive notice in contemplation of later arguments about tolling.  See No. 12-CIV-895, 2012 WL 4976122, at *3 (E.D.N.Y. Oct. 17, 2012).

Dated:  July 22, 2016   Respectfully submitted,

**SHEPPARD, MULLIN, RICHTER & HAMPTON** LLP


By: <u>/s/ Brian D. Murphy        </u>
   Brian D. Murphy
   Richard J. Simmons (admitted *pro hac vice*)
   Lisa M. Lewis
   30 Rockefeller Plaza
   New York, NY 10112-0015
   Tel:  (212) 653-8700
   Fax:  (212) 653-8701

   Bruce A. Montoya (admitted *pro hac vice*)
   John Karl Shunk (admitted *pro hac vice*)
   Lou Grossman (admitted *pro hac vice*)
   MESSNER & REEVES LLC
   1430 Wynkoop St. No. 300
   Denver, CO 80202
   Telephone:  (303) 623-1800
   Facsimile:  (303) 623-0552

   *Attorneys for Chipotle Mexican Grill, Inc.*