UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

EMANUEL GARCIA, on behalf of himself, FLSA
Collective Plaintiffs, and the Class,

                              Plaintiffs,

                    - against -

CHIPOTLE MEXICAN GRILL, INC.,

                              Defendant.

_____

**OPINION AND ORDER**

16 Civ. 601 (ER)

Ramos, D.J.:

        Named Plaintiff Emanuel Garcia ("Garcia" or "Plaintiff") brings this action under the

Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") claiming unpaid

overtime wages from his former employer, Chipotle Mexican Grill, Inc. ("Chipotle" or

"Defendant").  Before the Court is Plaintiff's motion for conditional certification of an FLSA

collective action constituting all non-exempt employees working at each of Chipotle's New York

City locations[1] within the six years prior to the filing of the Complaint.  For the following

reasons, Plaintiff's motion is GRANTED in part and DENIED in part.  The Court will

conditionally certify the proposed citywide collective action, but only as to those employees who

worked during the three years preceding the filing of the Complaint, and only as to Plaintiff's

claim regarding time shaving under the FLSA.  The statute of limitations will not be equitably

tolled pending notice to the potential opt-in plaintiffs.

_____

[1] Plaintiff alleges that there are sixty-two Chipotle locations throughout New York City, while Defendant asserts that there are sixty-six.  *Compare* Complaint ("Compl.") (Doc. 1) ¶ 8 & Ex. A, *with* Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Conditional Certification ("Def.'s Opp'n Mem.") (Doc. 40) at 3, *and* Declaration of David B. Gottlieb in Opposition to Plaintiff's Motion for Conditional Certification ("Gottlieb Decl.") (Doc. 40) ¶ 7.  The Court need not resolve this dispute in order to decide the pending motion.

# I. BACKGROUND

## A. Factual Background[2]

Chipotle is an American corporation that operates a nationwide, non-franchised chain of Mexican-style fast food restaurants, with over sixty locations in New York City.  Compl. ¶¶ 6–8. Its employees include non-exempt, hourly paid managers and "crew members," as well as exempt, salary-paid managers and "apprentices."  *Id.* ¶ 8.

Plaintiff was employed by Chipotle at several of its New York City locations from approximately December 2010 to August 19, 2015, first as a crew member and later as an hourly paid manager.  *Id.* ¶¶ 22–23.  During that time, Plaintiff worked at the following five locations: 185 Montague Street, Brooklyn, NY 11201 ("Montague Street"); 1497 Third Avenue, New York, NY 10028 ("Upper East Side"); 140 Court Street, Brooklyn, NY 11201 ("Court Street"); 405 Sixth Avenue, New York, NY 10014 ("Greenwich Village"); and 1 MetroTech Center, Brooklyn, NY 11201 ("MetroTech").  *Id.* ¶ 23.  When Plaintiff was first hired, he worked at Montague Street.  *Id.* ¶ 24.  Around November 2013, he was transferred to the Upper East Side, where he worked until approximately December 2013, when he was transferred back to Montague Street.  *Id.*  In February 2014, Plaintiff was transferred to Court Street, where he worked until August 19, 2015, when he was terminated.  *Id.* ¶¶ 23–24.  At unspecified times throughout his employment, Plaintiff was also "loaned" as needed to the Greenwich Village and MetroTech locations.  *Id.* ¶ 24.

Plaintiff alleges that during his employment, he had a regular schedule of 40 hours per week (8 hours per day for 5 days per week), consisting of either the opening shift (7:00 a.m. to

---

[2] The following facts, assumed to be true for purposes of the instant motion, are drawn from the allegations in the Complaint and the declaration and exhibits filed by Plaintiff in support of his motion.  *See She Jian Guo v. Tommy's Sushi, Inc.*, No. 14 Civ. 3964 (PAE), 2014 WL 5314822, at *1 n.1 (S.D.N.Y. Oct. 16, 2014).

3:00 p.m.) or closing shift (4:00 p.m. to midnight).  *Id.* ¶ 27.  Notwithstanding this schedule, Plaintiff alleges that he regularly worked over 40 hours per week.  *Id.*

Plaintiff claims that during his employment, he was subjected to two unlawful policies with respect to his wages:  time shaving and time shifting.  First, Plaintiff claims that approximately once per week on average, he was required to work beyond his scheduled clock-out time for no pay.  *Id.* ¶ 28.  Specifically, Plaintiff alleges that he was required to clock out at midnight and then continue working, without pay, until 1:00 a.m. or 1:30 a.m. when he finished with his tasks for the day.  *Id.*  Second, Plaintiff claims that every week, he was told to shift his overtime hours from one week to the next, so as to keep his hours "balanced."  *Id.* ¶ 29.  Because of this policy of time shifting, Plaintiff claims that he was not paid the proper rate for his overtime hours.  *Id.*

Plaintiff asserts that he was denied overtime wages at each of the five Chipotle locations where he worked.  Declaration of Emanuel Garcia ("Garcia Decl.") (Doc. 22) ¶¶ 4–9. Specifically, Plaintiff claims that he was forced to work off-the-clock at all five locations, and that he was forced to shift overtime hours from one week to the next at two locations—Montague Street and Court Street.  *Id.*  According to Plaintiff, he was not alone.  Plaintiff lists thirty-four of his former co-workers at the five locations and asserts that he had conversations on a regular basis with each of these individuals about work and pay at Chipotle.  *Id.* ¶ 3.  As a result of these conversations, as well as his own observations, Plaintiff alleges that many of Chipotle's other employees were forced to work overtime without pay and to shift their overtime hours from one week to the next, just as he was.  *Id.* ¶¶ 4–9, 10–11, 14.

For example, Plaintiff recounts conversations he had with three co-workers at the Montague Street location—Brenda Burnhart, Abraham Molina, and Brenda (last name

unknown)—wherein they would often complain about the fact that the general manager and apprentice at that location made them work off-the-clock, beyond the end of their regular shift, in order to get the "replacement shift ready." *Id.* ¶ 4.  Plaintiff also describes conversations he had with co-workers at the Court Street location—Raul Rodriguez and Kareem Maxwell—on the way home from work, when they rode the F train together. *Id.* ¶ 5.  The three would discuss the fact that the general manager at that location directed them to clock out at their scheduled hours, even when they had to continue working, and that they were forced to shift overtime hours into the following week. *Id.*  Plaintiff maintains that his co-workers at MetroTech—Tashawn Mason, Tiana Torres, and Daisa (last name unknown)—"would always yell out 'Hurry up guys, it's time to go,' and rush[] through their duties and responsibilities during closing time, because it was common knowledge that everyone would be asked to clock out at a certain time and continue working." *Id.* ¶ 7.  Plaintiff explains that his co-workers at the Greenwich Village location— Angie Jimenez, Fraylin Olivares, Taisha Lopez, and Eduardo Morales—told him that when they were forced to work after being clocked out, the general manager would "*sometimes* add those hours on the next pay check" if they told her the actual time they left. *Id.* ¶ 8 (emphasis added). Plaintiff also alleges that a co-worker at the Upper East Side location—Rolando Blanco—told him it was common practice for crew members and hourly managers to be automatically clocked out before actually finishing work for the day. *Id.* ¶ 9.

### B.  Procedural Background

On January 26, 2016, Plaintiff brought this action against Chipotle, alleging that the company's time shaving and time shifting policies denied him overtime wages in violation of the FLSA and NYLL.  Plaintiff brought his FLSA claims on behalf of himself and all non-exempt employees employed by Chipotle within New York City during the three years prior to the filing

of the Complaint, and his NYLL claims on behalf of himself and all non-exempt employees employed by Chipotle within New York City during the six years prior to the filing of the Complaint.  Compl. ¶¶ 11, 14.  The parties are currently engaged in discovery, which the Court limited to Garcia and Chipotle for the time being.  *See* Doc. 15.

On June 17, 2016, Plaintiff filed a motion for conditional certification of an FLSA collective action constituting all non-exempt, hourly paid employees working at each of Chipotle's New York City locations within the six years prior to the filing of the Complaint.[3]  On July 22, 2016, Defendant timely filed its brief in opposition to the motion.  After the Court granted two separate requests for extensions,[4] on September 16, 2016, Plaintiff filed his reply brief, and on September 23, 2016, Defendant filed its surreply.

## II.  LEGAL STANDARD

Pursuant to the FLSA, an individual may file suit against an employer on behalf of himself and "other employees similarly situated" who give "consent in writing" to become party plaintiffs.  29 U.S.C. § 216(b).  "District courts have discretion to facilitate this collective action mechanism by authorizing that notice be sent to potential plaintiffs informing them of 'the pendency of the action and of their opportunity to opt-in as represented plaintiffs.'"  *Mark v. Gawker Media LLC*, No. 13 Civ. 4347 (AJN), 2014 WL 4058417, at *2 (S.D.N.Y. Aug. 15, 2014) (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010)).

---

[3] Although the statute of limitations for FLSA claims is at most three years, Plaintiff requests conditional certification for a six-year period in light of the fact that Plaintiff has also asserted claims under the NYLL, which carry the longer, six-year statute of limitations.  Reply Memorandum of Law in Support of Plaintiff's Motion for Conditional Collective Certification ("Pl.'s Reply Mem.") (Doc. 47) at 9–10.  However, Plaintiff does not currently seek class certification of his NYLL claims under Federal Rule of Civil Procedure 23.  Memorandum of Law in Support of Plaintiff's Motion for Conditional Collective Certification ("Pl.'s Mem.") (Doc. 21) at 1 n.1.

[4] On August 2, 2016, the Court granted Plaintiff's request for a one-week extension of time to file his reply brief.  Doc. 43.  The Court also granted Defendant's request to file a surreply.  *Id.*  On August 12, 2016, the Court granted the parties' request for a thirty-day stay of the case, in light of the parties' pending settlement discussions.  Doc. 45.

The Second Circuit Court of Appeals has endorsed a two-step framework for determining whether a court should certify a case as a collective action under Section 216(b).  *See Myers*, 624 F.3d at 554–55; *see also Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016).  This process entails an analysis of whether prospective plaintiffs are "similarly situated" at two different stages:  an early "notice stage," and again after discovery is largely complete. *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012) (citing *Bifulco v. Mortgage Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009)).  At stage one, the court makes "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred."  *Myers*, 624 F.3d at 555.  At stage two, after additional plaintiffs have opted in, "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Id.*   If the court concludes that they are not similarly situated, the action may be "de-certified," and the opt-in plaintiffs' claims "may be dismissed without prejudice."  *Id.*

Here, Plaintiff seeks an initial determination of the propriety of notice to putative opt-in plaintiffs.  "Because minimal evidence is available" at this early stage of the proceedings, and because the Court "retain[s] the ability to reevaluate whether the plaintiffs are similarly situated," Plaintiff faces a "relatively lenient evidentiary standard."  *McGlone*, 867 F. Supp. 2d at 442 (quoting *Mentor v. Imperial Parking Sys., Inc.*, 246 F.R.D. 178, 181 (S.D.N.Y. 2007)).  He must only make "a 'modest factual showing' that [he] and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Myers*, 624 F.3d at 555 (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, J.)).  "The 'modest factual showing' cannot be satisfied simply by 'unsupported assertions,' but it should

remain a low standard of proof because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Id.* (citation omitted). "Accordingly, in deciding whether to grant [Plaintiff's] motion, the Court must merely find some identifiable factual nexus which binds [Plaintiff] and potential class members together as victims of a particular practice." *Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 346 (E.D.N.Y. 2012) (quoting *Sbarro*, 982 F. Supp. at 261) (internal quotation marks omitted).

In considering Plaintiff's motion, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007). It merely "examines the pleadings and affidavits to determine whether the named plaintiff[] and putative class members are similarly situated." *McGlone*, 867 F. Supp. 2d at 442. If the Court finds that they are, it will conditionally certify the class and order that notice be sent to potential class members. *Id.*

## III. DISCUSSION

Plaintiff asks the Court to conditionally certify a collective comprising all hourly paid employees of Chipotle's New York City locations for the last six years, arguing that all are similarly situated with respect to the company's alleged policy and practice of time shaving and time shifting to deny overtime wages. Pl.'s Mem. at 1. In its opposition to Plaintiff's motion, Chipotle raises three principal arguments: first, that Plaintiff's allegations fail to establish that he suffered an actionable violation of the FLSA; second, that Plaintiff's allegations regarding Chipotle's purported violations are not credible; and third, that Plaintiff has not met his burden of demonstrating that he and potential opt-in plaintiffs were victims of a common policy or plan that violated the law. Each of these arguments is addressed in turn, followed by a discussion of the appropriate scope of notice and disclosure and Plaintiff's request for equitable tolling.

**A.  Adequacy of Plaintiff's Allegations as to His Own FLSA Claim**

Defendant argues that Plaintiff has not established that he suffered an actionable violation of FLSA under the standards set forth by the Second Circuit in *Lundy v. Catholic Health System of Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013).  Def.'s Opp'n Mem. at 2, 15–16.  "As a prerequisite to a collective action, the named plaintiff must demonstrate that he, himself, was a victim of the defendants' illegal pay practices."  *Hanming Feng v. Soy Sauce LLC*, No. 15 Civ. 3058 (ENV) (LB), 2016 WL 1070813, at *3 (E.D.N.Y. Mar. 14, 2016).  Accordingly, the Court addresses the sufficiency of Plaintiff's allegations regarding his own claim for relief before moving on to address whether to certify the proposed collective action.  *See Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 556 (S.D.N.Y. 2013) ("The court's discretionary power to facilitate the sending of notice to potential class members is premised on its use as a tool for efficient case management, and it does not promote efficient case management to facilitate notice to potential class members where the representative plaintiffs have failed to state plausible FLSA violations.").

In *Lundy*, the Second Circuit explained that "to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."  711 F.3d at 114 (citing 29 U.S.C. § 207(a)(1)).  In that case, the plaintiffs failed to allege "a single workweek in which they worked at least 40 hours and also worked uncompensated time in excess of 40 hours."  *Id.*  The Court thus affirmed dismissal of the plaintiffs' FLSA overtime claims.  *Id.* at 115.  In reaching its conclusion, the Court noted that "[d]etermining whether a plausible claim has been pled is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense,' and that "some courts *may* find that an approximation of overtime hours worked may help draw a

8

plaintiff's claim closer to plausibility." *Id.* at 114 & n.7 (emphasis added); *see also Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 n.10 (2d Cir. 2013) (reaffirming that the standard set forth in *Lundy* "does not require an approximate number of overtime hours"); *DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 88 (2d Cir. 2013) (same).

Here, Plaintiff alleges that while he was employed by Chipotle, he had a "regular schedule of 8 hours per day for 5 days per week which consisted of either the opening shift (7 am to 3 pm) or the closing shift (4 pm to 12 am)," but that he "regularly worked over forty (40) hours per week." Compl. ¶ 27.[5] Plaintiff also alleges that "[a]bout once a week on average, [he] was required to work off-the-clock," that is, "[h]e was required to clock out at his scheduled clock out time at 12:00 am and keep working until 1 am or 1:30 am when he finished with all the tasks for the day." *Id.* ¶ 28. Moreover, Plaintiff alleges that "[e]very week during his employment, [he] was told to shift his overtime hours from one week and add it to the following week," which prevented him from "properly receiv[ing] [his] overtime premium." *Id.* ¶ 29.

In accordance with *Lundy*, Plaintiff alleges 40 hours of work every week during his employment, as well as some uncompensated amount of time in excess of 40 hours per week on average. Although Plaintiff does not explicitly provide an approximate number of unpaid overtime hours, his allegations are sufficient to state a plausible FLSA overtime claim.

### B. Credibility of Plaintiff's Assertions

At various points in its opposition papers, Defendant appears to argue that Plaintiff's motion for conditional certification should be denied because Plaintiff's allegations regarding Defendant's purported FLSA violations are not credible. *See, e.g.*, Def.'s Opp'n Mem. at 3 n.3,

---

[5] *Cf. Nakahata*, 723 F.3d at 201 (finding that plaintiffs did not state a plausible claim for relief where they did not allege that they "were scheduled to work forty hours in a given week"); *DeJesus*, 726 F.3d at 89 (reaching the same conclusion where plaintiff "did not estimate her hours in any or all weeks or provide any other factual context or content").

4–8, 11–12, 16–17, 18 n.9, 19.  At this stage, however, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."  *Lynch*, 491 F. Supp. 2d at 368.

For example, Defendant explains at length its timekeeping policies and procedures designed to ensure compliance with wage and hour laws, relying on a declaration from the company's Director of Compliance and Field People Support, David Gottlieb.  Def.'s Opp'n Mem. at 4–8.  In relevant part, Chipotle's timekeeping policy provides that all hourly employees must record and be paid for all time worked.  Gottlieb Decl. ¶¶ 36, 39.  All Chipotle locations use the same computer system to record hours worked for hourly employees, called "Aloha."  *Id.* ¶ 41.  Hourly employees record their time in Aloha by "clocking-in" before beginning work and "clocking-out" after ending work by using a swipe card or entering an employee identification number at a terminal in the restaurant.  *Id.*  In order to facilitate daily reporting, the Aloha system at each Chipotle location nationwide resets at the end of the day.  *Id.* ¶ 48.  According to Mr. Gottlieb, the reset "usually occurs at 12:30 [a.m.], but also occurs at different times in other restaurants, such at 1:00 a.m., 1:30 a.m., or 3:00 a.m.," although "by early 2014, nearly every restaurant in the New York Metropolitan Area had a 3:00 a.m. reset time."  *Id.*  The reset has the effect of clocking out any employee who is clocked in when the reset occurs.  *Id.* ¶ 49. According to Mr. Gottlieb, Chipotle's written policy informs employees of the reset and instructs them of the procedure to make any corrections so they are properly paid for time they worked beyond the reset in any given day.  *Id.*

The existence of any wage and hour policies presents a factual issue better resolved at a later stage in this case.  In any event, even if there were no material factual dispute as to these written policies, it is Chipotle's purported *deviation* from the policies that Plaintiff claims

violated his right to overtime wages under the FLSA.  Defendant's account of its own policies thus fails to undermine the credibility of Plaintiff's assertions.

Defendant also submits declarations from nine other employees, some of whom worked at the same locations as Plaintiff, stating under oath that they, contrary to Plaintiff, did not work "off-the-clock," that their hours were not "shifted" from one week to the next, and that they were appropriately paid for all hours worked.  Def.'s Opp'n Mem. at 11–12 & Exs.  Because "'a court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated[,]' . . . courts in this Circuit have found that competing declarations should not be considered at this juncture." *Becerra v. IM LLC-I*, No. 14 Civ. 2671 (ADS) (ARL), 2015 WL 1954478, at *4 (E.D.N.Y. Apr. 29, 2015) (quoting *Amador v. Morgan Stanley & Co. LLC*, No. 11 Civ. 4326 (RJS), 2013 WL 494020, at *3 (S.D.N.Y. Feb. 7, 2013)); *see also Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 322 (S.D.N.Y. 2007) ("To the extent that Defendants['] opposition relies on a detailed factual dispute about whether the Defendants maintain an 'illegal off-the clock' policy . . . that inquiry is misplaced as those issues go to the merits of the case.").  Accordingly, the Court declines to consider these declarations.[6]

Defendant also asserts that Plaintiff began working at Chipotle in December 2011, not December 2010 as he alleges, "calling into question the remainder of his testimony."  Def.'s Opp'n Mem. at 3 n.3.  Moreover, Defendant asserts that Plaintiff's allegation regarding time shifting is "not credible," in light of Plaintiff's other allegation that he worked over forty hours per week throughout his employment, as well as "impossible," given that crew members and

---

[6] In any event, "statements gathered by an employer from its current employees are of limited evidentiary value in the FLSA context because of the potential for coercion." *Amador*, 2013 WL 494020, at *8; *see also Racey v. Jay-Jay Cabaret, Inc.*, No. 15 Civ. 8228 (KPF), 2016 WL 3020933, at *5 (S.D.N.Y. May 23, 2016) (same).

hourly managers "are not authorized to make adjustments to recorded time." *Id.* at 8–9, 18 n.9. These are factual issues more appropriately resolved at a later date.

### C. Sufficiency of Plaintiff's Factual Showing as to Chipotle's Common Policy and Practice

Defendant argues that Plaintiff has not provided the modest factual showing required to certify a citywide collective of hourly employees. The Court disagrees.

Garcia states, under penalty of perjury, that he had conversations with over thirty other Chipotle employees (whose names he lists) concerning work and pay at Chipotle, Garcia Decl. ¶ 3, and that based on these discussions, he learned that other hourly employees were similarly required to work off-the-clock hours, *id.* ¶ 14. Without more, these allegations might be insufficient to provide the modest factual showing required under the FLSA to conditionally certify a collective action. *See Sanchez v. JMP Ventures, L.L.C.*, No. 13 Civ. 7264 (KBF), 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014). Here, however, Garcia goes further, providing detail as to a number of such conversations.

For example, Garcia describes discussions had with Raul Rodriguez and Kareem Maxwell on the F train home from work, regarding the fact that their general manager at the Court Street location directed them to clock out even if they still had work to do. Garcia Decl. ¶ 5. Garcia also describes conversations with certain employees at the Montague Street location, wherein they would complain about the fact that Raul Florez, an apprentice at that location, would tell them to work off-the-clock "if [they] did not get the replacement shift ready by the end of [their] scheduled shift." *Id.* ¶ 4. Based on these and other descriptions in his declaration, Plaintiff has provided a sufficient "minimum level of detail" to justify certification as to his time shaving claims. *Reyes v. Nidaja, LLC*, No. 14 Civ. 9812 (RWS), 2015 WL 4622587, at *3 (S.D.N.Y. Aug. 3, 2015) (noting the "consensus" in this district is that "where a plaintiff bases an

assertion of a common policy on observations of coworkers or conversations with them, he must provide a minimum level of detail regarding the contents of those conversations or observations").

Defendant argues that Plaintiff must make a more detailed showing, because his request for conditional certification is premised solely upon his own affidavit.[7]  Def.'s Opp'n Mem. at 14.  But courts in this district "routinely certif[y] conditional collective actions based on the plaintiff's affidavit declaring they have personal knowledge that other coworkers were subjected to similar employer practices."  *Guo Qing Wang v. H.B. Rest. Grp., Inc.*, No. 14 Civ. 813 (CM), 2014 WL 5055813, at *4 (S.D.N.Y. Oct. 7, 2014) (collecting cases, and certifying collective based on single plaintiff's personal knowledge from "his observations and his conversations with his coworkers"); *see also Ramos v. Platt*, No. 13 Civ. 8957 (GHW), 2014 WL 3639194, at *2 (S.D.N.Y. July 23, 2014) ("[C]ontrary to Defendants' arguments, conditional certification may be granted on the basis of the complaint and the plaintiff's own affidavits."); *Hernandez v. Bare Burger Dio Inc.*, No. 12 Civ. 7794 (RWS), 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013) (collecting cases to support proposition that "courts in this circuit have routinely granted conditional collective certification based solely on the personal observations of one plaintiff's affidavit").

Furthermore, Defendant overstates the degree to which Plaintiff's declaration lacks specificity.  Defendant focuses on the lack of specific dates and locations of conversations, arguing that this case is akin to *Sanchez*, 2014 WL 465542.  Def.'s Opp'n Mem. at 14–15.  In

---

[7] On October 27, 2016, Plaintiff filed a declaration from Tiana Torres, another employee at the MetroTech location, in support of his motion for conditional certification.  Doc. 53; *see also* Doc. 54 (Defendant's October 31, 2016 letter requesting that the Court refuse to consider the declaration or, alternatively, provide Defendant with an opportunity to address it in a supplemental brief).  Because this submission is untimely, and Plaintiff never sought leave to file it, the Court will not consider the declaration in deciding the instant motion.  However, the Court notes that nothing in the declaration contradicts Plaintiff's assertions.

that case, however, the court denied the plaintiff's motion for conditional certification, because—unlike here—the plaintiff did not "provide *any* detail as to a *single* such observation or conversation." *Id.* at *2. Defendant also points out that Plaintiff does not offer any details concerning the number of hours other employees worked or the compensation they earned, relying on this Court's decision in *Martinez v. Zero Otto Nove Inc.*, 15 Civ. 899 (ER), 2016 WL 3554992 (S.D.N.Y. June 23, 2016). Def.'s Opp'n Mem. at 15. As in *Sanchez*, the plaintiffs in *Martinez* failed to provide "*any* details of their observations or conversations," citing as one possible example of such a detail being "the number of hours other employees worked or the compensation they earned." 2016 WL 3554992, at *5. This level of detail is not a prerequisite to providing the factual showing required under the FLSA, and Garcia has sufficiently alleged enough detail in other respects that his omission of these types of facts does not preclude certification in this case.

Defendant also overstates the degree to which Plaintiff's experiences differed from one location to another. *See* Def.'s Opp'n Mem. at 8–10, 17–19. Defendant argues that because Plaintiff's experience regarding his off-the-clock work varied at each location, any FLSA violations that occurred "were the product of unique managerial preference or directives departing from lawful policies, as opposed to a common plan or policy." *Id.* at 18–19.[8] Plaintiff need not plead the exact same fact scenario at each of the restaurants where he worked in order to establish a common policy or plan, however. Rather, Plaintiff's allegation that at each of the

---

[8] Plaintiff's allegations with regard to time shaving differ among locations in the following material respects: At Montague Street, employees were forced to clock out by midnight, even if they were not done working, and if the replacement shift was not ready by the end of their scheduled shift, employees were required to work off-the-clock until it was. Garcia Decl. ¶ 4. At Court Street, employees were directed to clock out even when they still had work to do. *Id.* ¶ 5. At MetroTech, employees were frequently required to work off-the-clock. *Id.* ¶ 7. At Greenwich Village, employees were instructed to clock out around or before midnight and continue working off-the-clock, and if they did not do so the system would automatically clock them out. *Id.* ¶ 8. If an employee told the general manager the actual time he or she left, the manager would "sometimes" add those hours on the next paycheck. *Id.* And at Upper East Side, employees were automatically clocked out before finishing their duties. *Id.* ¶ 9.

five locations at which he worked over five years, employees were required to work off-the-clock, beyond their regularly scheduled shift, provides a sufficient "factual nexus" between Plaintiff and the potential opt-in plaintiffs to support conditional certification.

Finally, Defendant argues that if the Court conditionally certifies a collective action, it should be limited to hourly employees who worked in the restaurant locations at which Plaintiff actually worked. Def.'s Opp'n Mem. at 20–21. Defendant argues that Plaintiff has first-hand knowledge regarding only five locations, so "there is no factual basis for the Court to find, inferentially or otherwise, that the practices complaint of by Plaintiff existed or occurred at any other Chipotle location." *Id.* at 21.

The fact that Plaintiff worked at only five Chipotle locations is not dispositive of the issue of citywide certification—"what matters is whether he and employees at those restaurants were 'similarly situated' with respect to the FLSA violations alleged in the complaint." *Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 370 (S.D.N.Y. 2014). "In this Circuit, courts have regularly found named plaintiffs to be similarly situated to employees at locations where they did not work, provided that the plaintiffs demonstrate that they were all subject to the same allegedly unlawful policy or practice." *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013) (citing *Rosario v. Valentine Ave. Disc. Store, Co.*, 828 F. Supp. 2d 508, 516–17 (E.D.N.Y. 2011)). Thus, "the Court must focus on whether Plaintiff has provided sufficient evidence that employees at all [Chipotle locations in New York City] were, in fact, subject to the same unlawful policies." *Juarez*, 29 F. Supp. 3d at 370.

Although this case presents a close call, the Court finds that Plaintiff has provided enough evidence, at this stage, to suggest that workers throughout the city were subject to the same practice of time shaving. Plaintiff presents evidence that: Defendant owns and operates all

of its locations in the city, Pl.'s Mem., Ex. C; every location in the city is advertised on the same

website, *id.*, Ex. D; every location in the city uses the same menu, *id.*, Ex. F; hiring at all

locations in the city is centrally managed, *id.*, Ex. K; and the employment structure and benefits

are standardized across all locations in the city, *id.*, Exs. L, M.  Plaintiff also presents evidence

that employees are transferred and loaned between locations in the city as needed—Plaintiff

himself was transferred and loaned among three locations in Brooklyn and two locations in

different parts of Manhattan.  Garcia Decl. ¶¶ 2, 6.[9]  Moreover, Defendant submits that every

Chipotle location in the city uses the same computer system to record hours worked for hourly

employees, Gottlieb Decl. ¶ 41, and that the system at each location resets at the end of the day,

*id.* ¶ 48.  Considering similar factors, courts in this Circuit have granted conditional certification

of classes including employees of locations beyond those of which the plaintiff had first-hand

knowledge.  *See, e.g.*, *Juarez*, 29 F. Supp. 3d at 370–71 (considering specific similarities

between the locations and an inference that all of the locations treated their employees as part of

a single pool); *Lamb v. Singh Hosp. Grp., Inc.*, No. 11 Civ. 6060 (MKB), 2013 WL 5502844, at

*5 (E.D.N.Y. Sept. 30, 2013) (considering that all of the locations used the same computer

payment system, where some of the plaintiffs' claims arose out of the way in which the system

calculated payments).  The Court also finds significant that although Plaintiff only worked at five

of Defendant's sixty-plus locations in the city, he experienced similar treatment at *each* of those

locations.  For these reasons, the Court finds that Plaintiff has satisfied his minimal burden to

---

[9] Plaintiff asks the Court to additionally consider other lawsuits against Chipotle claiming similar violations regarding off-the-clock work, notably *Harris v. Chipotle Mexican Grill, Inc.*, 49 F. Supp. 3d 564 (D. Minn. 2014) (conditionally certifying a collective of employees from one location in Minnesota), and *Turner v. Chipotle Mexican Grill, Inc.*, 123 F. Supp. 3d 1300 (D. Colo. 2015) (conditionally certifying a nationwide collective).  Pl.'s Reply Mem. at 7–8.  Because Plaintiff's burden with respect to his conditional certification motion is inherently fact-specific, however, the Court declines to consider allegations made in other cases.

show that he and the potential opt-in plaintiffs are similarly situated with respect to the time shaving violations he alleges in the Complaint.[10]

With regard to Plaintiff's allegation of time shifting, however, the Court finds that Plaintiff has not satisfied his burden.  Unlike Plaintiff's allegations regarding off-the-clock work, Plaintiff's allegations regarding time shifting are less specific, indicating only generally that employees discussed the fact that they were "made to shift overtime hours into the next week so that [they] were not being paid the overtime due to [them]."  Garcia Decl. ¶¶ 4–5.  In addition, these allegations relate to only two of the five locations where Plaintiff worked.

Accordingly, the Court will conditionally certify this case as a citywide collective action and authorize that notice be sent to potential plaintiffs, but only as to Plaintiff's time shaving claim under the FLSA.

### D.  Scope of Notice and Disclosure

Plaintiff requests that notice of this action be sent to all hourly employees of Chipotle's New York City locations within the six years prior to the filing of the Complaint.  Pl.'s Mem. at 1.  The FLSA, however, has a two-year statute of limitations, or three years in the case of willful violations.  29 U.S.C. § 255(a).  Given the fact that willfulness is disputed, and that Plaintiff has not yet moved for certification of the NYLL claim, the Court finds that a three-year notice period is appropriate.  *See Hamadou*, 915 F. Supp. 2d at 668.

---

[10] Although neither party substantively addresses *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545 (S.D.N.Y. 2013), the Court finds that case distinguishable.  In *Trinidad*, the district court similarly considered whether to conditionally certify a citywide FLSA collective action against Pret A Manger, a company that also runs a large chain of non-franchised restaurants.  *Id.* at 548–49.  There, the court declined to conditionally certify a citywide collective, finding that because the plaintiffs' testimony "seem[ed] to describe inconsistent practices across the Pret stores at which plaintiffs worked," the plaintiffs had "not demonstrated across all locations a uniform policy of failure to pay overtime compensation."  *Id.* at 558.  Here, by contrast, the Court finds that Garcia's experiences across the five Chipotle locations where he worked were sufficiently similar to support an inference of a uniform policy of FLSA-violative overtime practices across all locations in New York City.

Although notice is normally provided to those employed within three years of the date of the notice, "courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date." *Id.* (internal quotation marks omitted).  Accordingly, the Court finds it appropriate in this case to send notice of this action to all hourly employees of Chipotle's New York City locations within the three years prior to the filing of the Complaint.

Defendant asks the Court to limit notice of this action to hourly employees hired before August 2014, arguing that "all employees hired after August 2014 have executed enforceable arbitration agreements precluding their ability to participate in a collective or class action." Def.'s Opp'n Mem. at 19, 21.  As Defendant concedes, however, "courts have consistently held that the existence of arbitration agreements is 'irrelevant' to collective action approval 'because it raises a merits-based determination.'"  *Romero v. La Revise Assocs., L.L.C.*, 968 F. Supp. 2d 639, 647 (S.D.N.Y. 2013); *see* Def.'s Opp'n Mem. at 20 n.10.  "Case law holds . . . that issues of fact surrounding arbitration agreements are properly resolved at the second stage of the two-step inquiry," when the Court will examine whether Plaintiff and the opt-in plaintiffs are in fact similarly situated.  *Romero*, 968 F. Supp. 2d at 647.  Because it is inappropriate for the Court to consider the effect of any arbitration agreements at this time, the Court will allow notice to be sent to employees hired after August 2014.

In order to facilitate sending notice of this action to all potential plaintiffs, Plaintiff requests that the Court order Defendant to produce the names, Social Security numbers, titles, compensation rates, dates of employment, last known mailing addresses, email addresses, and all known telephone numbers of all hourly employees working in New York City during the last six years.  Pl.'s Mem. at 1–2, 12–13.  At this juncture, it is sufficient for Defendant to produce the

names, titles, compensation rates, dates of employment, last known mailing addresses, known

email addresses, and known telephone numbers for hourly employees who worked in New York

City during the three years prior to the filing of the Complaint.  "If Plaintiff is unable to

effectuate notice on some potential opt-in plaintiffs with the information that is produced,

Plaintiff may renew his application for additional information regarding those specific

employees."  *Hanming Feng*, 2016 WL 1070813, at *7 (denying production of Social Security

numbers).

### E.  Equitable Tolling

Finally, Plaintiff asks the Court to toll the statute of limitations for all potential opt-in

plaintiffs until notice is distributed.  Pl.'s Mem. at 14.  Equitable tolling is appropriate "only in

rare and exceptional circumstances, where a plaintiff has been prevented in some extraordinary

way from exercising his rights."  *Vasto v. Credico (USA) LLC*, No. 15 Civ. 9298 (PAE), 2016

WL 2658172, at *16 (S.D.N.Y. May 5, 2016) (citations and internal quotation marks omitted).

The Court does not find that this case presents any such "rare and exceptional circumstances."

Accordingly, Plaintiff's request is denied.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for conditional certification is GRANTED

in part and DENIED in part.  Specifically, the Court grants Plaintiff's request for citywide

conditional certification, but only as to Plaintiff's time shaving claim under the FLSA.  The

Court denies Plaintiff's request for a collective reaching back six years and for equitable tolling.

Defendants are directed to produce, by **November 14, 2016**, a list of the names, titles,

compensation rates, dates of employment, last known mailing addresses, known email addresses,

and known telephone numbers for hourly employees who worked in New York City during the

three years prior to the filing of the Complaint.  The parties are directed to meet and confer over the content of the notice to be sent to the potential opt-in plaintiffs and, if any disagreements remain, to submit such notice to the Court for approval by **November 17, 2016**.  The Clerk of the Court is respectfully directed to terminate the motions, Docs. 20 and 54.

It is SO ORDERED.

Dated:     November 3, 2016
           New York, New York

Edgardo Ramos, U.S.D.J.