Brian D. Murphy
Lisa M. Lewis
Richard J. Simmons (admitted *pro hac vice*)
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 653-8700
Facsimile: (212) 653-8701

Bruce A. Montoya (admitted *pro hac vice*)
John Karl Shunk (admitted *pro hac vice*)
MESSNER & REEVES LLC
1430 Wynkoop St. No. 300
Denver, CO 80202
Telephone: (303) 623-1800
Facsimile: (303) 623-0552

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
:
EMANUEL GARCIA, *on behalf of himself, FLSA Collective Plaintiffs and the Class* :
:
:
Plaintiffs, :   Case No. 16-CV-0601
:
-against- :
:
:
CHIPOTLE MEXICAN GRILL, INC., :
:
Defendant. :
:
:
---------------------------------------------------------------- x

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS THE CLAIMS OF OPT-IN PLAINTIFFS
<u>WHO ARE SUBJECT TO ARBITRATION AGREEMENTS</u>**

SMRH:483922605.3

**TABLE OF CONTENTS**

Page(s)

PRELIMINARY STATEMENT ..................................................................................................1

RELEVANT BACKGROUND ......................................................................................................3

    A.    The Parties ..............................................................................................................3

        1.    Chipotle Mexican Grill, Inc. ......................................................................3

        2.    Plaintiff Emanuel Garcia .............................................................................3

    B.    Chipotle's Arbitration Agreement ..........................................................................3

    C.    Relevant Proceedings .............................................................................................4

ARGUMENT ...................................................................................................................................6

I.    APPLICABLE STANDARDS ...........................................................................................6

II.    THE CLAIMS OF OPT-IN PLAINTIFFS WHO EXECUTED THE ARBITRATION AGREEMENT MUST BE DISMISSED ...................................................7

    A.    The Arbitration Agreement Is Valid And Enforceable ..............................................7

    B.    The Claims Asserted By The Opt-In Plaintiffs Falls Within The Scope Of The Arbitration Agreement And Are Properly Arbitrable ......................................10

    C.    The Court Should Dismiss The Claims Of The Opt-In Plaintiffs, Rather Than Compelling Their Claims To Arbitration .............................................................11

III.    COUNSEL TO PLAINTIFF SHOULD BE PROHIBITED FROM REPRESENTING DISMISSED OPT-IN PLAINTIFFS IN FUTURE PROCEEDINGS ..................................12

CONCLUSION ..............................................................................................................................13

**TABLE OF AUTHORITIES**

Page(s)

Cases

*Alvarez v. National Debt Relief, LLC*
  No. 16-CIV-4156 (CM), 2017 WL 2876478 (S.D.N.Y. June 23, 2017) .................................. 10

*American Express Co. v. Italian Colors Restaurant*
  133 S.Ct. 2304 (2013) ............................................................................................................... 6

*In re Am. Express Fin. Advisors Sec. Litig.*
  672 F.3d 113 (2d Cir. 2011) ...................................................................................................... 6

*In re Am. Express Merchants' Litig.*
  634 F.3d 187 (2d Cir. 2011) ...................................................................................................... 6

*Badinelli v. Tuxedo Club*
  183 F. Supp. 3d 450 (S.D.N.Y. 2016) ...................................................................................... 9

*Bassett v. Electronic Arts, Inc.*
  93 F. Supp. 3d 95 (E.D.N.Y. 2015) .......................................................................................... 8

*Bensadoun v. Jobe-Riat*
  316 F.3d 171 (2d Cir. 2003) ...................................................................................................... 6

*Bynum v. Maplebear Inc.*
  No. 15-CV-6263, 2016 WL 5373643 (E.D.N.Y. Sept. 19, 2016) ........................................ 7, 10

*Centrifugal Force, Inc. v. Softnet Commc'n, Inc.*
  No. 08-CIV-5463, 2011 WL 744732 (S.D.N.Y. Mar. 1, 2011) ................................................ 9

*Diaz v. Michigan Logistics, Inc.*
  167 F. Supp. 3d 375 (E.D.N.Y. 2016) .............................................................................. 10, 11

*Fengler v. Crouse Health Found, Inc.*
  595 F. Supp. 2d 189 (N.D.N.Y. 2009) .................................................................................... 12

*Gold v. Deutsche Aktiengesellschaft*
  365 F.3d 144 (2d Cir. 2004) ...................................................................................................... 9

*Green Tree Fin. Corp-Alabama v. Randolph*
  531 U.S. 79 (2000) .................................................................................................................... 6

*Guan v. Uber Tech., Inc.*
  236 F. Supp. 3d 711 (E.D.N.Y. 2017) ................................................................................. 8, 10

*Hines v. Overstock.com, Inc.*
  380 Fed. Appx. 22 (2d Cir. 2010) ............................................................................................. 8

*Litvinov v. UnitedHealth Grp. Inc.*
  No. 13-CV-8541 (KBF), 2014 WL 1054394 (S.D.N.Y. Mar. 10, 2014) ...................................... 8

*Lloyd v. J.P. Morgan Chase & Co.*
  No. 11-CIV-9305 (LTS), 2013 WL 4828588 (S.D.N.Y. Sept. 9, 2013) ...................................... 7

*Mumin v. Uber Tech., Inc.*
  239 F. Supp. 3d 507 (E.D.N.Y. 2017) ................................................................................ 9, 10

*Nayal v. HIP Network Servs. IPA, Inc.*
  620 F. Supp. 2d 566 (S.D.N.Y. 2009) ...................................................................................... 9

*Patterson v. Raymours Furniture Co., Inc.*
  659 Fed. Appx. 40 (2d Cir. 2016) ..................................................................................... 9, 10

*Reynolds v. de Silva*
  No. 09-CIV-9218, 2010 WL 743510 (S.D.N.Y. Feb. 24, 2010)............................................... 11

*Serebryakov v. Golden Touch Transp. of NY, Inc.*
  No. 12-CV-3990 (NGG) (RER), 2015 WL 135947 (E.D.N.Y. Mar. 24, 2015) ........................... 6

*Specht v. Netscape Commc'ns Corp.*
  306 F.3d 17 (2d Cir. 2002)........................................................................................................ 6

*Sutherland v. Ernst & Young LLP*
  726 F.3d 290 (2d Cir. 2013)...................................................................................................... 9

*Zambrano v. Strategic Delivery Solutions, LLC*
  No. 15-CIV-8410 (ER), 2016 WL 5339552 (S.D.N.Y. Sept. 22, 2016) .............................. 10, 11

*Zheng v. General Elec. Co.*
  No. 15-CV-1232, 2016 WL 3212092 (N.D.N.Y. June 9, 2016).................................................. 8

Statutes

Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* .................................................................. *passim*

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* .................................................................................. 6

New York Labor Law.................................................................................................................. 1, 4

Defendant Chipotle Mexican Grill, Inc. ("Chipotle") respectfully submits this Memorandum of Law in Support of its Motion to Dismiss the Claims of Opt-In Plaintiffs who are Subject to Chipotle's Arbitration Agreement.

**PRELIMINARY STATEMENT**

The Court should dismiss the claims of any Opt-In Plaintiff who executed Chipotle's Arbitration Agreement. Chipotle's Arbitration Agreement, applicable to all new-hires beginning in August 2014, sets forth in plain, concise, and understandable terms the nature of arbitration, the scope of claims subject to arbitration, and the relinquishment of any ability to proceed in Court or in arbitration on a class or collective basis. Each Opt-In Plaintiff at issue here voluntarily executed the Agreement. In short, Chipotle's Arbitration Agreement prohibits 118 Opt-In Plaintiffs who filed "Consents" from participating in this action.[1]

In granting the requested relief, the Court need only determine that the Arbitration Agreement is valid and that the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") claims advanced here fall within its purview. As to the former issue, Chipotle cannot conceive of any legitimate argument the Opt-In Plaintiffs will advance in an attempt to invalidate the Agreement. As a result, Chipotle offers the Court a survey of the various arguments that have been raised – and rejected – in similar contexts to demonstrate that no credible grounds exist to invalidate the Agreement at issue here. As to the latter issue, a wealth of case law from this District holds that FLSA and NYLL claims are arbitrable particularly where, as here, they are explicitly referenced in the body of an arbitration agreement. The application of the law to the facts could not be more straightforward with respect to this primary issue.

The instant matter does, however, require the Court to address two matters for which there is little, if any, precedent. First, the Court should dismiss the claims of the Opt-In Plaintiffs without

---

[1] Chipotle reserves its right to argue that the Arbitration Agreements also support decertification of the conditionally certified FLSA collective when appropriate.

affirmatively compelling arbitration as it is not part of this Motion.  The Opt-In Plaintiffs only passively filed "Consents" to participate, likely without any intention of assuming the burdens, filing costs, and risks of being a primary litigant as they would if they were required to proceed to arbitration.  Further, the Opt-In Plaintiffs likely would never have initiated an action against Chipotle *but for* their receipt of the Court-authorized Notice.  Dismissal, without compulsory arbitration, is therefore appropriate because it will seek to restore the status quo for all parties under the unique circumstances presented here and minimize any infringement on Chipotle's due process rights.

Second, the Court should prohibit Counsel to Plaintiff from representing any of the Opt-In Plaintiffs who are dismissed in any future proceedings, including any arbitrations.  Counsel to Plaintiff advocated for distribution of the Notice to persons whom he knew to be signatory to the Arbitration Agreement and whom he knew to be contractually prohibited from participating in this action.  That is, he advocated for them to take steps contrary to their obligation to arbitrate.  At a minimum, this constituted a breach of fiduciary obligations that disclose a conflict between Counsel to Plaintiff's interests and the interests of those signatories, as well as others who are not yet precluded from participating in this action.  In addition, by virtue of his efforts, Counsel to Plaintiff learned the identities of persons whom he otherwise would not have had occasion to represent such that his mere filing of this case has served as a tool for solicitation of potential clients.  He should not be permitted to capitalize on his efforts and use arbitrations as a means to exert leverage in this case.

Accordingly, for the reasons set forth more fully below, Chipotle respectfully requests an Order: (i) dismissing the claims of the Opt-In Plaintiffs who executed Chipotle's Arbitration Agreement; and (ii) prohibiting Counsel to Plaintiff from representing any of the dismissed Opt-In Plaintiffs in any future proceedings.

# RELEVANT BACKGROUND

## A. THE PARTIES

### 1. Chipotle Mexican Grill, Inc.

Chipotle operates fresh Mexican food restaurants serving a focused menu of burritos, tacos, burrito bowls, and salads. (Gottlieb Decl. ¶ 3). Chipotle has more than 2,100 restaurants throughout the United States, with approximately 66 restaurants in New York City, in which approximately 13,600 hourly workers have been employed since December 2010. (*Id.*).

### 2. Plaintiff Emanuel Garcia

Plaintiff is a former Chipotle employee. Plaintiff was hired as a Crew Member at Chipotle's restaurant located at 185 Montague Street, Brooklyn, NY 11201 on or about December 21, 2011. (*Id.* at ¶ 4). Plaintiff became a Kitchen Manager on or about May 27, 2013 and a Service Manager on or about October 14, 2013. (*Id.*). Plaintiff worked as a Service Manager infrequently at Chipotle's Court Street, MetroTech Plaza, Greenwich Village, and Upper East Side restaurant locations as a Service Manager. (*Id.*). Plaintiff was terminated on August 19, 2015 for unacceptable work performance. (*Id.*).

## B. CHIPOTLE'S ARBITRATION AGREEMENT

Beginning in August 2014, Chipotle implemented an arbitration program applicable to all new hires, including all new employees in New York City. (Gottlieb Decl. ¶ 5). The Arbitration Agreement relevant here provides, in relevant part:[2]

> In consideration of Chipotle's offer of employment to Employee…Chipotle and Employee hereby agree that any and all Claims…shall be resolved by final and binding arbitration in accordance with this Agreement.

(*Id.* at Ex. A, ¶ 2).

> As used in this Agreement, "Claims" means any and all disputes, claims, and controversies arising out of or relating to this Agreement, the parties' employment

---

[2] Chipotle implemented a revised Arbitration Agreement in February 2017. (*Id.* at ¶ 6). However, all Opt-In Plaintiffs at issue here received Notice prior to February 2017 and thus, were not party to the revised Agreement.

relationship, or the formation, existence, or termination of the parties' employment relationship, including but not limited to all claims for…wages or other compensation due…Fair Labor Standards Act…and state and local government wage and hour [laws].

(*Id*. at Ex. A, ¶ 4).

> BY SIGNING THIS AGREEMENT, THE PARTIES AGREE THAT EACH MAY BRING AND PURSUE CLAIMS AGAINST THE OTHER ONLY IN HIS, HER, OR ITS INDIVIDUAL CAPACITY, AND MAY NOT BRING, PURSUE, OR ACT AS A PLAINTIFF OR CLASS MEMBER, IN ANY PURPORTED CLASS OR COLLECTIVE PROCEEDING…NEITHER PARTY MAY BRING, PURSUE, OR ACT AS A PLAINTIFF OR REPRESENTATIVE IN ANY PURPORTED REPRESENTATIVE PROCEEDING OR ACTION, INCLUDING ANY CLAIMS UNDER ANY FEDERAL, STATE, OR LOCAL LAW, OR OTHERWISE PARTICIPATE IN ANY SUCH REPRESENTATIVE PROCEEDING OR ACTION OTHER THAN ON AN INDIVIDUAL BASIS.

(*Id.* at Ex. A, ¶¶5.1-5.2).

Chipotle distributed, and continues to distribute, the Arbitration Agreement electronically as part of the new hire and onboarding process. (*Id.* at ¶ 7-9). New employees access the Agreement through Chipotle's Workday on-line system by virtue of a unique identification number and password. (*Id.* at ¶ 7). The employee must accept the Arbitration Agreement electronically to complete the new hire process and begin work for Chipotle. (*Id.* at ¶ 10). Pursuant to the Arbitration Agreement, Chipotle assumes all costs associated with arbitration other than those the employee would have been required to pay if the matter was in Court. (*Id.* at Ex. A., ¶ 7).

## C. RELEVANT PROCEEDINGS

Plaintiff initiated this case by Complaint dated January 26, 2016. *See* Docket No. 1. Plaintiff alleges claims for unpaid minimum wage and overtime in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York Labor Law ("NYLL) because of alleged "off-the-clock" work. Plaintiff also alleges claims for "spread of hours" pay, incorrect wage records, and failure to receive required wage notices under NYLL. Plaintiff advances his FLSA claims on a collective basis and his NYLL claims on a class basis.

Plaintiff moved for conditional certification of an FLSA collective pursuant to 29 U.S.C. § 216(b) with regard to his minimum wage and overtime claims, seeking certification based upon two theories of alleged off-the-clock work: (i) "time-shaving;" and (ii) "time-shifting." Chipotle argued that Plaintiff provided insufficient evidence to support any collective, but that if a collective was certified, signatories to the Arbitration Agreement should not be included. *See* Docket No. 40 at pp. 19-20. On November 4, 2016, the Court granted Plaintiff's Motion, in part, limiting its conditional certification order to Plaintiff's "time-shaving" claims alone. *See* Docket No. 57. The Court deferred ruling on the impact of the Arbitration Agreement. Plaintiff would, of course, have been precluded from filing this entire action had he signed the Arbitration Agreement.

Court-authorized Notice to potentially interested persons was sent on or about January 31, 2017. (Murphy Decl. ¶ 2). Recipients were permitted to file "Consents" to participate in the action for a period of 60 days, which ended on or about March 31, 2017. (*Id.*). As of the date of this filing, 244 persons filed "Consents" (the "Opt-In Plaintiffs"). (*Id.* ¶ 3). Of these, approximately 38 were filed after the date on which Consents could be permissibly filed.[3] (*Id.* at ¶ 4).

During discovery, Chipotle produced information and documents, including executed Arbitration Agreements, concerning the Opt-In Plaintiffs. (*Id.* at ¶ 5). This discovery demonstrates that approximately 118 Opt-In Plaintiffs executed Chipotle's Arbitration Agreement and agreed to be bound by its terms. (Gottlieb Decl. Ex. B). This Motion is filed seeking dismissal of the claims of such Opt-In Plaintiffs in accordance with the Court's Order dated August 24, 2017. *See* Docket No. 106.

---

[3] Chipotle reserves its right to seek dismissal of the claims of any Opt-In Plaintiffs who filed Consents after the deadline to do so passed.

# ARGUMENT

## I. APPLICABLE STANDARDS

The Federal Arbitration Act provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In *American Express Co. v. Italian Colors Restaurant*, the Supreme Court emphasized the obligation of the lower courts to "rigorously enforce arbitration agreements according to their terms, including terms that specify with whom [the parties] choose to arbitrate their disputes, and the rules under which that arbitration will be conducted." 133 S.Ct. 2304, 2309 (2013). On a motion to dismiss premised on the existence of an arbitration agreement, the Court must determine only: (i) whether the parties entered into a valid agreement to arbitrate; and (ii) whether the dispute falls within the scope of the arbitration agreement. *See, e.g., In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011). Both of these issues are properly resolved by the Court, rather than the arbitrator, unless the arbitration agreement itself unequivocally designates such authority to an arbitrator. *See, e.g., Serebryakov v. Golden Touch Transp. of NY, Inc.*, No. 12-CV-3990 (NGG) (RER), 2015 WL 135947, at *3 (E.D.N.Y. Mar. 24, 2015).

On a motion to dismiss in this context, the Court applies a standard akin to that at summary judgment: the Court must consider all relevant, admissible evidence, it must draw all reasonable inferences in favor of the non-moving party, and if the relevant facts are uncontroverted, it must rule as a matter of law. *See, e.g., Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003); *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 27-28 (2d Cir. 2002). The "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp-Alabama v. Randolph*, 531 U.S. 79, 91 (2000) (internal citations omitted); *In re Am. Express Merchants' Litig.*, 634 F.3d 187, 191 (2d Cir. 2011) (abrogated on other grounds).

## II. THE CLAIMS OF OPT-IN PLAINTIFFS WHO EXECUTED THE ARBITRATION AGREEMENT MUST BE DISMISSED

The Court should dismiss the claims of any Opt-In Plaintiff who executed Chipotle's Arbitration Agreement because the Arbitration Agreement is valid and enforceable, and the wage and hour claims the Opt-In Plaintiffs purport to assert plainly fall within its scope. It is appropriate for the Court to resolve this issue now rather than waiting for the close of discovery or Chipotle's anticipated motion to decertify the conditionally certified FLSA collective. *See, e.g., Lloyd v. J.P. Morgan Chase & Co.*, No. 11-CIV-9305 (LTS), 2013 WL 4828588 (S.D.N.Y. Sept. 9, 2013).

### A. The Arbitration Agreement Is Valid And Enforceable

Chipotle's Arbitration Agreement is valid and enforceable as against each of the 118 Opt-In Plaintiffs who were hired after August 2014 and executed the Agreement. In resolving this threshold inquiry, Courts in this District apply general principles of contract and will uphold the integrity of an arbitration agreement unless the plaintiff can show that special circumstances exist, such as duress or coercion. *See Bynum v. Maplebear Inc.*, No. 15-CV-6263, 2016 WL 5373643, at *6 (E.D.N.Y. Sept. 19, 2016). The Opt-In Plaintiffs cannot offer any credible argument that would support invalidation of the Arbitration Agreement.

Chipotle's Arbitration Agreement is short, concise, and in plain terms explains the arbitration process and sets forth the obligation of each signatory to submit any claims related to their employment to Chipotle to arbitration. (Gottlieb Decl. Ex. A). Each Opt-In Plaintiff to whom this Motion is directed consented to the terms of the Arbitration Agreement by electronic signature, (Gottlieb Decl. Ex. B), pursuant to which they:

> ACKNOWLEDGE[] THAT EMPLOYEE HAS CAREFULLY READ THIS AGREEMENT, THAT EMPLOYEE UNDERSTANDS ITS TERMS, AND THAT EMPLOYEE HAS ENTERED INTO THIS AGREEMENT VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS BY CHIPOTLE OTHER THAN THOSE CONTAINED IN THIS AGREEMENT.

(Gottlieb Decl. Ex. A at ¶ 13) (emphasis in original).  Given the readily apparent validity of the Arbitration Agreement, Chipotle cannot conceive of any argument the Opt-In Plaintiffs will advance to the contrary.  However, given that the Opt-In Plaintiffs have suggested that they may not oppose this Motion, to arm the Court with the caselaw to resolve this Motion in Chipotle's favor, Chipotle identifies the following potential arguments, all of which have been rejected.

First, the Opt-In Plaintiffs cannot argue that an electronic signature, as opposed to an ink signature, renders the Agreement unenforceable.  In *Guan v. Uber Tech., Inc.*, the Eastern District of New York addressed this argument in detail.  *See* 236 F. Supp. 3d 711 (E.D.N.Y. 2017).  The Court initially noted that "[t]he making of contracts over the internet 'has not fundamentally changed the principles of contract.'"  *Id.* at 722 (internal citation omitted).  "[I]n the context of agreements made on the internet, New York Courts find that binding contracts are made when the user takes some action demonstrating that he has at least constructive knowledge of the terms of the agreement, from which knowledge a court can infer acceptance."  *Id.* (quoting *Hines v. Overstock.com, Inc.*, 380 Fed. Appx. 22, 25 (2d Cir. 2010) (summary order)).  The Court then held, in accordance with the weight of authority, that clicking a button to manifest assent suffices to meet this standard.  *See id.* at 723 (citing *Bassett v. Electronic Arts, Inc.*, 93 F. Supp. 3d 95 (E.D.N.Y. 2015)); *see also Litvinov v. UnitedHealth Grp. Inc.*, No. 13-CV-8541 (KBF), 2014 WL 1054394, at *3 (S.D.N.Y. Mar. 10, 2014).  The Opt-In Plaintiffs here manifested the requisite acceptance by electronically clicking "I Agree" as part of the onboarding process.  (Gottlieb Decl. ¶ 11).

Second, the Opt-In Plaintiffs cannot argue that Chipotle's presentation of the Agreement in electronic format prevented them from reading or understanding the Agreement.  It is well-settled that the failure to read a contract is not a defense to contract formation.  *See Guan*, 236 F. Supp. 3d at 724-25; *Zheng v. General Elec. Co.*, No. 15-CV-1232 (TJM/CHF), 2016 WL 3212092, at *3 (N.D.N.Y. June 9, 2016) ("Plaintiff's bald, conclusory allegations that he did not knowingly and

voluntarily enter into the agreement contained in the Offer Letter is insufficient to overcome the presumption created by signing the Offer Letter that he entered the employment agreement knowingly and voluntarily."); *Centrifugal Force, Inc. v. Softnet Commc'n, Inc.*, No. 08-CIV-5463, 2011 WL 744732, at *7 (S.D.N.Y. Mar. 1, 2011).

Third, the Opt-In Plaintiffs cannot argue that the Arbitration Agreement should be invalidated on the grounds that they did not understand it or its ramifications. Under generally accepted principles of New York contract law, "in the absence of fraud or other wrongful act on the part of another contracting party, a party 'who signs or accepts a written contract…is conclusively presumed to know its contents and to assent to them." *Badinelli v. Tuxedo Club*, 183 F. Supp. 3d 450, 456 (S.D.N.Y. 2016) (citing *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004)).

Fourth, the Opt-In Plaintiffs cannot argue that the "take it or leave it" nature of the Arbitration Agreement, by which Chipotle requested consent to arbitrate as a condition of employment, renders the Arbitration Agreement invalid. *See, e.g., Patterson v. Raymours Furniture Co., Inc.*, 659 Fed. Appx. 40, 41-42 (2d Cir. 2016) (noting that the arbitration agreement at issue and upheld was imposed as a condition of employment); *Mumin v. Uber Tech., Inc.*, 239 F. Supp. 3d 507 (E.D.N.Y. 2017) (citing *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 571-72 (S.D.N.Y. 2009)).

Fifth, the Opt-In Plaintiffs cannot argue that the waiver embedded in the Arbitration Agreement, which prevents each signatory from participating in a class or collective action and limits them to proceeding on an individual basis only, invalidates the Arbitration Agreement. The overwhelming majority of Courts, including the Second Circuit and Courts in this District, hold that such waivers are fully enforceable and do not undermine the validity of the arbitration agreement of

which they are a part.[4] *See Patterson*, 659 Fed. Appx. at 41-43; *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 296-97 (2d Cir. 2013); *Diaz v. Michigan Logistics, Inc.*, 167 F. Supp. 3d 375, 382 (E.D.N.Y. 2016). Further, Courts in this District have uniformly held that such waivers are enforceable with respect to claims arising under the FLSA and/or NYLL. *See, e.g., Alvarez v. National Debt Relief, LLC*, No. 16-CIV-4156 (CM), 2017 WL 2876478 (S.D.N.Y. June 23, 2017); *Mumin*, 2017 WL 934703, at *11-12; *Guan*, 236 F. Supp. 3d at 734-35; *Diaz*, 167 F. Supp. 3d at 382.

Accordingly, Chipotle's Arbitration Agreement is valid and enforceable as to each Opt-In Plaintiff who is a signatory thereto.

### B. The Claims Asserted By The Opt-In Plaintiffs Falls Within The Scope Of The Arbitration Agreement And Are Properly Arbitrable

The Opt-In Plaintiffs cannot credibly contend that their wage and hour claims under the FLSA and NYLL do not fall within the scope of the Arbitration Agreement they executed. The Arbitration Agreement explicitly lists claims arising under the FLSA and/or NYLL as falling within its terms:

> As used in this Agreement, "Claims" means any and all disputes, claims, and controversies arising out of or relating to this Agreement, the parties' employment relationship…including but not limited to all claims for…wages or other compensation due…Fair Labor Standards Act…and state and local government wage and hour [laws].

(Gottlieb Decl. at Ex. A, ¶ 4).

Courts in this District uniformly hold that FLSA and NYLL claims fall within the scope of an arbitration agreement where the agreement specifically references those claims, and that such claims are arbitrable. *See Alvarez*, 2017 WL 2876478, at *2-3; *Bynum*, 2016 WL 5373643, at *10-

---

[4] Chipotle is cognizant of this Court's holding in *Zambrano v. Strategic Delivery Solutions, LLC*, No. 15-CIV-8410 (ER), 2016 WL 5339552, at *10 (S.D.N.Y. Sept. 22, 2016), reserving that issue for an arbitrator to determine. That said, Chipotle advances this argument solely to rebut any attempt by Plaintiff to argue that this provision renders the Arbitration Agreement invalid, which is a determination properly before this Court.

11 ("The decisions of the Supreme Court, as well as of courts both within and outside this Circuit, indicate that valid arbitration agreements subjecting individual FLSA claims to arbitration must be enforced."); *Diaz*, 167 F. Supp. 3d at 379-80; *Reynolds v. de Silva*, No. 09-CIV-9218, 2010 WL 743510, at *5 (S.D.N.Y. Feb. 24, 2010) (collecting cases). Indeed, this Court recently held that FLSA claims are fully arbitrable where they fall within the scope of an arbitration agreement. *See Zambrano*, 2016 WL 5339552, at *5 ("[T]here is no indication Congress intended FLSA claims to be nonarbitrable.").

### C. The Court Should Dismiss The Claims Of The Opt-In Plaintiffs, Rather Than Compelling Their Claims To Arbitration

The Court should dismiss the claims of the Opt-In Plaintiffs without compelling them to proceed to arbitration. Unlike the "classic" circumstances attendant to a motion to dismiss premised on the existence of an arbitration agreement – where a single plaintiff has affirmatively sought to initiate an action, albeit in an improper forum – here, the Opt-In Plaintiffs have only passively filed "Consents" to participate in the representative action of another. Many, if not all, of the affected Opt-In Plaintiffs had no intention of ever pursuing an individual claim or otherwise assuming the burdens, costs, and risks associated with fulfilling the responsibilities of a litigant. As such, affirmatively requiring that they proceed with arbitration may very well be contrary to their interests.

Further, compelling arbitration rather than simply dismissing the claims of the Opt-In Plaintiffs will prejudice Chipotle and serve as an affront to its due process rights. The bulk of the Opt-In Plaintiffs would not have initiated an action against Chipotle *but for* Counsel to Plaintiff's efforts to distribute it to them as part of his conditional certification motion. Chipotle should not now be faced with the prospect of defending over a hundred arbitrations against persons who are contractually barred from participating in this action simply because it prevailed on the merits of its Arbitration Agreement. Instead, the unique circumstances presented here should compel the Court

to simply return each of the Opt-In Plaintiffs to the position they occupied prior to the filing of their invalid Consents by dismissing their claims without further action. Should an Opt-In Plaintiff wish to commence an arbitration, they should do so without provocation and in accordance with the contractually agreed upon procedures set forth in the Arbitration Agreement. (Gottlieb Decl. Ex. A. ¶ 6). Only in this manner can the Court return Chipotle and the Opt-In Plaintiffs to the status quo.

### III. COUNSEL TO PLAINTIFF SHOULD BE PROHIBITED FROM REPRESENTING DISMISSED OPT-IN PLAINTIFFS IN FUTURE PROCEEDINGS

Assuming Chipotle's Motion is granted, the Court should prohibit Counsel to Plaintiff from representing the dismissed Opt-In Plaintiffs in any future proceedings. As an initial matter, Counsel to Plaintiff only learned the identities of the dismissed Opt-In Plaintiffs by virtue of his advancing a legal theory that lacked merit under existing Second Circuit precedent. Courts regularly restrict the disclosure of information such as email addresses, telephone numbers, social security numbers, and dates of birth, even after conditional certification is granted, precisely to protect against the potential for improper solicitation by use of "inherently private information." *See, e.g., Fengler v. Crouse Health Found, Inc.*, 595 F. Supp. 2d 189, 198 (N.D.N.Y. 2009). Counsel should not now be permitted to use this information to drum up further litigation in the form of individual arbitrations.

In addition, Counsel to Plaintiff has advocated for a position on behalf of the dismissed Opt-In Plaintiffs that resulted in them taking action contrary to their contractual obligations. Specifically, each of the dismissed Opt-In Plaintiffs was contractually obligated to arbitrate their claims and to do so on an individual basis. Yet, Counsel to Plaintiff engaged in litigation tactics on their behalf that prompted each of them to file a "Consent" to participate in a collective action in Federal Court, an act that is inconsistent with their obligation to arbitrate and could, conceivably, result in undisclosed and unanticipated costs, including filing fees, and a unilateral waiver of the right to arbitrate. This position amounts to a breach of Counsel to Plaintiff's fiduciary obligations

that discloses a conflict between his interests, those of the dismissed Opt-In Plaintiffs, and those of other current participants in this action.

Finally, upon dismissal, the Opt-In Plaintiffs shall cease to be parties to this action and shall cease to be represented by Counsel to Plaintiff for purposes of this action or any other purpose. There is no continuing relationship between the Opt-In Plaintiffs and Counsel to Plaintiff to be protected. Each of the Opt-In Plaintiffs should be returned to the position they occupied prior to their improper attempt to join this action, and should locate alternative counsel, if they choose, to pursue any matters they believe appropriate. Only in this manner can the dismissed Opt-In Plaintiffs be free from their potential use as pawns to serve another purpose in this action.

## CONCLUSION

For each of the foregoing reasons, Chipotle respectfully submits that the Court should enter an Order: (i) dismissing the claims of any Opt-In Plaintiff who executed Chipotle's Arbitration Agreement; (ii) prohibiting Counsel to Plaintiff from representing or otherwise communicating with the dismissed Opt-In Plaintiffs; and (iii) granting such other and further relief as this Court deems just and proper.

Dated:  September 15, 2017    Respectfully submitted,

**SHEPPARD, MULLIN, RICHTER & HAMPTON** **LLP**

By: /s/ Brian D. Murphy
Brian D. Murphy
Richard J. Simmons (admitted *pro hac vice*)
Lisa M. Lewis
30 Rockefeller Plaza
New York, NY 10112-0015
Tel:  (212) 653-8700
Fax:  (212) 653-8701

Bruce A. Montoya (admitted *pro hac vice*)
John Karl Shunk (admitted *pro hac vice*)
MESSNER & REEVES LLC
1430 Wynkoop St. No. 300
Denver, CO 80202
Telephone:  (303) 623-1800
Facsimile:  (303) 623-0552

*Attorneys for Chipotle Mexican Grill, Inc.*