EXHIBIT B

23726.txt

1

1

2              UNITED STATES DISTRICT COURT

3              SOUTHERN DISTRICT OF NEW YORK

4    ---------------------------------------------x

5    EMANUEL GARCIA, on behalf of himself, FLSA

6    Collective Plaintiffs and the Class,

7                         Plaintiff,

8              -against-   No. 16-CV-0601

9    CHIPOTLE MEXICAN GRILL, INC.,

10                        Defendant.

11   ---------------------------------------------x

12

13

14

15      DEPOSITION OF CYNTHIA P. FLORES GARCIA

16               New York, New York

17            Tuesday, November 20, 2018

18

19

20

21

22

23726.txt

```
23
                Reported by:
 24             Aydil M. Torres, CSR
                JOB NO. 23726
 25
```

                                                        2

```
  1

  2

  3                         November 20, 2018

  4                            3:00 p.m.

  5

  6

  7                     Deposition of CYNTHIA P.

  8             FLORES GARCIA, held at the offices

  9             of Lee Litigation Group, PLLC, 30

 10             East 39th Street, New York,

 11             New York, pursuant to Order, before

 12             Aydil M. Torres, a Notary Public of

 13             the State of New York.

 14

 15

 16

 17

 18

 19
```

Page 2

23726.txt

20

21

22

23

24

25

♀

3

1

2

3    A P P E A R A N C E S:

4

5        LEE LITIGATION GROUP, PLLC

6        Attorneys for Plaintiff

7            30 East 39th Street, Second Floor

8            New York, New York 10016

9        BY:  C.K. LEE, ESQ.

10

11

12        MESSNER REEVES, LLP

13        Attorneys for Defendant

14            805 Third Avenue

15            New York, New York 10022

16        BY:  KATHERINE OTTO, ESQ.

Page 3

23726.txt

17

18

19          ALSO PRESENT:

20              Jasmin Perez, Paralegal

21

22

23

24

25
    ♀

                                                    4

1

2

3                    S T I P U L A T I O N S

4

5              IT IS HEREBY STIPULATED AND AGREED

6       by and between the attorneys for the

7       respective parties herein, that filing,

8       sealing and the same are hereby waived.

9              IT IS FURTHER STIPULATED AND AGREED

10      that all objections, except as to the form of

11      the question, shall be reserved to the time

12      of the trial.

13              IT IS FURTHER STIPULATED AND AGREED

                        Page 4

23726.txt

14    that the within deposition may be sworn to

15    and signed before any officer authorized to

16    administer an oath, with the same force

17    and effect as if signed and sworn to before

18    the Court.

19

20

21

22

23

24

25

♀

                                                  5

1

2    C Y N T H I A   P.  F L O R E S   G A R C I A,

3              the witness herein, having been

4              first duly sworn by a Notary Public

5              of the State of New York, was

6              examined and testified as follows:

7                   THE REPORTER:  Please state

8         your name for the record.

9                   THE WITNESS:  Cynthia

10        Flores.

Page 5

23726.txt

11            THE REPORTER:  Please state

12            your address for the record.

13            THE WITNESS:  48-46 40th

14            Street -- where I'm working?

15            MR. LEE:  No, no, your home

16            address.

17            THE WITNESS:  Okay.  48-46

18            40th Street, 2nd Floor, Sunnyside,

19            New York 11104.

20            MR. LEE:  You're apartment

21            is the second floor?

22            THE WITNESS:  Yes.

23            MR. LEE:  Okay.  Thanks for

24            coming in.

25            I'm just going to ask you

6

1

2            some questions.

3            THE WITNESS:  Uh-huh.

4      EXAMINATION BY

5      MR. LEE:

6         Q.   What's your full name?

7         A.   Cynthia Flores Garcia.

Page 6

23726.txt

```
 8        Q.   Is there a "P" somewhere in there?

 9        A.   Uh-huh.

10        Q.   What is the "P"?

11        A.   Paulette.

12        Q.   Paulette.

13        A.   Yeah.

14        Q.   Like Paulette Goder.  Do you know

15   Paulette Goder?

16        A.   No.

17        Q.   She is an old silent film movie

18   star from the '20s.  You should check her

19   out.

20             So you currently work at

21   Chipotle --

22        A.   Yes.

23        Q.   -- right?

24             And do you recall an affidavit that

25   you signed a while back?
```

                                                    7

```
 1             Cynthia P. Flores Garcia

 2        A.   Yes.

 3        Q.   Okay.  And the affidavit was signed

 4   June 14, 2018.  Is that about right?
```

23726.txt

```
 5          A.   Uh-huh.
 6          Q.   Just because we have a court
 7     reporter, she has to write down everything
 8     you are saying.
 9          A.   Okay.
10          Q.   She is writing everything that you
11     are saying, and so you just need to respond
12     truthfully to my questions, okay?
13               And you are still working at
14     Chipotle, right?
15          A.   Yes.
16          Q.   Did you have to get time off to do
17     this --
18          A.   I --
19          Q.   -- deposition today?
20          A.   I did on Thursday, but I wasn't
21     able to get it for today, but I worked in the
22     morning.
23          Q.   Okay.  Okay.  And you had to get
24     approval to take time off?
25          A.   Oh, no, I just requested the day
```

8

```
 1               Cynthia P. Flores Garcia
```

23726.txt

```
2    off, pretty much.

3         Q.    Did you have to give them the

4    reason?

5         A.    No.

6         Q.    When you signed the affidavit, do

7    you know who made you sign it?

8         A.    I don't remember exact --

9                    MS. OTTO:   Object to form.

10        Q.    Okay.  You can go ahead.

11        A.    It was just two people.  They came

12   in.  They spoke to a couple of people that

13   were in the store, and then they just, you

14   know, went through it, and asked us if

15   everything was right, and then we signed.

16        Q.    Okay.  What store were you working

17   at?

18        A.    805 Columbus.

19        Q.    805 Columbus?

20        A.    Uh-huh.

21        Q.    I think that's the one across the

22   street from my apartment.

23        A.    Really?

24        Q.    Yeah.  It's in the Upper West Side,

25   right?
```

Page 9

23726.txt

⚲

9

1              Cynthia P. Flores Garcia

2        A.    Yeah.

3        Q.    And so you didn't actually write

4    the affidavit, right?

5        A.    No.

6        Q.    Okay.  And you didn't actually come

7    up with the idea to write an affidavit,

8    right?

9        A.    No.

10        Q.    They came to you and said, "We want

11    you to sign this affidavit," right?

12        A.    Yes.

13              MS. OTTO:  Object to form.

14        Q.    And then you signed it, right?

15        A.    Yeah, they pretty much just --

16    well, they asked us, first, and -- if we

17    agreed to everything, and then we signed it.

18        Q.    Okay.  But you didn't write it?

19        A.    No.

20        Q.    Okay.  And did you read the whole

21    thing?

22        A.    Yes.

Page 10

23726.txt

23      Q.    Did you read every single sentence?

24      A.    Yes.

25      Q.    Did you understand everything that

♀

10

1                    Cynthia P. Flores Garcia

2      you were reading?

3           A.    Yes.   They were explaining to us

4      everything, and then they asked if we had any

5      questions, and then I -- they gave it to us

6      to read, after it was printed.

7           Q.    Did somebody speak to you about

8      this deposition at the company before you

9      came?

10          A.    No.

11          Q.    Nobody spoke to you about this

12     deposition?

13          A.    Well, I just got the letter in the

14     mail, but I didn't know what was going on.

15          Q.    And nobody at the company spoke to

16     you about you coming out here today?

17          A.    No.

18          Q.    And you didn't have to tell your

19     supervisor that you were taking time off to

Page 11

23726.txt

20      do a deposition for the lawsuit?

21          A.   Well, she -- she was actually there

22      when I received it.

23          Q.   Who's "she"?

24          A.   My area manager.

25          Q.   Okay.

♀

                                            11

1                Cynthia P. Flores Garcia

2          A.   And then she told me that it was

3      very important for me to come, but she didn't

4      say anything else.

5          Q.   It was important for you to come to

6      the deposition today?

7          A.   Yes.

8          Q.   And they were willing to adjust

9      your schedule, so you can come here for the

10     deposition?

11         A.   Yes.

12         Q.   Did they tell you that you had to

13     -- you cannot -- they told you you had to

14     come today, right?

15              MS. OTTO:   Object to form.

16         Q.   Right?

Page 12

23726.txt

17                 MS. OTTO:  Mischaracterizes

18            the testimony.

19     A.   They -- yes.

20     Q.   Okay.  And --

21                 MS. OTTO:  Please allow me

22            to state my objection for the

23            record.

24                 MR. LEE:  You are doing it.

25            Stop interrupting me.


                                            12

1         Cynthia P. Flores Garcia

2                 MS. OTTO:  Allow the court

3            reporter the opportunity to take

4            down what I'm saying.

5                 MR. LEE:  She is doing it.

6            Stop interrupting me.  I'm letting

7            you object.

8                 MS. OTTO:  You are raising

9            your voice.  It's inappropriate.

10                MR. LEE:  It's -- I'm asking

11           questions.  I have not stopped you

12           from objecting, so go ahead and do

13           it.

Page 13

23726.txt

```
14              MS. OTTO:  Mr. Lee, please

15              stop raising your voice to me.

16              MR. LEE:  Can you not

17              interrupt me?

18              MS. OTTO:  If you can speak

19              at that tone of voice, I think we

20              can proceed.

21              MR. LEE:  Thank you.

22         Q.   So who spoke to you about this

23    deposition before you came?

24         A.   My area manager.  She was next to

25    me when I opened it, and she told me that it
```

13

```
1              Cynthia P. Flores Garcia

2    was important to come here.

3         Q.   Okay.  Did anybody else speak to

4    you about it?

5         A.   No.

6         Q.   Did anybody tell you what to say

7    when you came here?

8         A.   No.

9         Q.   Which lawyer -- do you remember if

10   it was a lawyer, or a company employee who
```

Page 14

23726.txt

11      asked you to sign the affidavit?

12          A.    I'm not sure.

13          Q.    Okay.  And you didn't recognize

14      them from before, right?

15          A.    No, I had never seen them.

16          Q.    You had never seen them before, and

17      they showed up at your store, and they said,

18      "Let's sign some affidavits," right?

19                   MS. OTTO:  Object to form.

20          A.    They just said -- yeah, they just

21      wanted to speak to everyone.

22          Q.    Okay.  And then after they spoke to

23      you, they wrote an affidavit for you, right?

24          A.    Yes.

25          Q.    And then you signed what they gave

14

1                   Cynthia P. Flores Garcia

2       you?

3           A.    Yeah.

4           Q.    Okay.

5           A.    I made sure everything was right,

6       and then I signed.

7           Q.    Okay.  How were you able to make

Page 15

23726.txt

```
 8    sure that everything was right?
 9         A.    They took a very long time to
10    explain everything, answering questions they
11    were asking, they, you know, they were
12    writing it down as soon as they were asking
13    the questions, and then they were explaining
14    if we had any questions, you know, just to
15    make sure everything was clear, and then they
16    printed it, and gave me time to read through
17    everything that was printed.
18         Q.    How long did it take you to read
19    your affidavit?
20         A.    I don't remember, but I was in
21    there a long time.  Probably, like -- we were
22    in there for, like, 30 minutes, probably.
23         Q.    Okay.  Was it not 15?
24         A.    It was like --
25              MS. OTTO:  Object to form.

                                              15

 1              Cynthia P. Flores Garcia
 2         A.    I don't remember, exactly.
 3         Q.    Okay.
 4         A.    It was a very long time ago.
                      Page 16
```

23726.txt

```
 5        Q.   It could have been less than 15

 6    minutes, right?

 7                   MS. OTTO:  Object to form.

 8        A.   I don't think it was.

 9        Q.   Was it 15 minutes?

10                   MS. OTTO:  Object to form.

11        A.   I don't think so.

12                   MS. OTTO:  Asked and

13              answered.

14        Q.   How long did you spend reading your

15    affidavit?

16        A.   I don't -- I really don't remember.

17    I just remember we were gone -- well, I sent

18    my crew on break, and then I was doing that,

19    so I don't remember exactly how long it was.

20        Q.   Your break is usually less than 20

21    minutes, right?

22        A.   No, it's usually 30 minutes.

23        Q.   Is it a paid break?

24        A.   Yes.

25        Q.   Okay.  And so you worked at a
```

16

 1            Cynthia P. Flores Garcia

                 Page 17

23726.txt

```
 2    couple of different locations, right?

 3        A.   Yes.

 4        Q.   Okay.  Why do you say that you were

 5    never asked to work or -- at different store

 6    locations than you were hired to work?

 7                 MS. OTTO:  Object to form.

 8        A.   I -- no, basically, they told me

 9    when they were going to transfer -- well, I

10    was asked for a couple of them -- or I think

11    it was --

12        Q.   In paragraph 3 of your affidavit

13    you say, "I have never been asked to

14    temporarily work at, or loaned to, a

15    different store than the store at which I was

16    hired to work," but you worked at multiple

17    different stores, right?

18                 MS. OTTO:  Object to form,

19                 and let the record reflect the

20                 affidavit is not in front of the

21                 witness.

22        Q.   You can answer.

23        A.   Yeah, I just remember -- I don't

24    remember that part, but I remember just being

25    asked to transfer to another store.
```

Page 18

23726.txt

♀

17

```
 1              Cynthia P. Flores Garcia

 2        Q.   Okay.

 3        A.   But, yeah, it was an opportunity

 4   for me as kitchen manager.

 5        Q.   Do you recall the names of managers

 6   that you worked for?

 7        A.   Not all of them, but --

 8        Q.   Okay.

 9        A.   -- I might, some of them.

10        Q.   Who are some of the ones that you

11   know?

12        A.   That I remember -- general

13   managers?

14        Q.   Any kind of managers.

15        A.   The last one I worked -- Katherine

16   Rosario, Crystal -- I don't remember her last

17   name.

18        Q.   You don't remember her last name,

19   right?

20        A.   I believe it was Abreu, if I'm not

21   mistaken, and then Moran.

22        Q.   Who?
```

Page 19

23726.txt

23      A.    Zanan Moran.

24      Q.    Okay.

25      A.    Rocco -- him, I don't remember his

♀

18

1           Cynthia P. Flores Garcia

2     last name.

3           Q.    Okay.  And then do you know what

4     positions you held?

5           A.    When I was working with them?

6           Q.    At Chipotle, what positions did you

7     have?

8           A.    Oh, I have been crew, kitchen

9     manager, service manager.

10          Q.    Did you ever work more than ten

11    hours a day?

12          A.    Yes.

13          Q.    Did that happen frequently for you?

14          A.    Not frequent.

15          Q.    Okay.  Do you know other employees

16    working more than ten hours a day?

17          A.    Not that I can remember.

18          Q.    You don't know if people worked

19    more than ten hours a day, right?

Page 20

23726.txt

20      A.   I don't think anyone has.

21      Q.   Did you work more than 40 hours a

22   week?

23      A.   A couple of times, yeah.

24      Q.   Do you know if other people worked

25   more than 40 hours a week?


19

1              Cynthia P. Flores Garcia

2      A.   Yes.

3      Q.   You know that other people did work

4   more than 40 hours a week?

5      A.   Yeah.

6      Q.   Okay.   When you worked more than a

7   ten-hour day, did you -- what happened?

8      A.   Pretty much, sometimes I would be

9   asked by a manager to stay.

10      Q.   Okay.

11      A.   Or sometimes if I was a manager,

12   and we needed to do something else, I would

13   stay --

14      Q.   Okay.

15      A.   -- to do whatever we needed to do.

16      Q.   But you only got paid for your ten

Page 21

23726.txt

17    hours right?  Or eleven hours?

18         A.   Yeah, for however much I worked.

19    Always, we clock in when we come in, and

20    whenever we stop working, we clock out.

21         Q.   And you didn't get paid for more

22    than that during the days that you worked

23    more than ten hours, right?  You just got

24    your clock in time and clock out time.

25              MS. OTTO:  Object to form.


                                              20

1              Cynthia P. Flores Garcia

2         A.   Just whatever I worked.  So if I

3    worked 12 hours, I would get paid for the 12

4    hours.

5         Q.   Okay.  And then did you receive a

6    pay stub?

7         A.   Yes.

8         Q.   Do you know what is the contents on

9    your pay stub?

10        A.   Yes.

11        Q.   What's on there?

12        A.   Well, pretty much, the time worked,

13    which is within 40 hours, paid break, I

Page 22

23726.txt

```
14      believe there is, like, if you worked over

15      ten hours, you get paid for that too, and now

16      with the New York City law, if there is any

17      changes to your schedule, like, you're able

18      to -- if you're assigned, you get, like,

19      money for that.  Like if you do -- you close,

20      and you open the next day, you get, like,

21      $100 for that, so that's also on the pay

22      stub.

23          Q.   Wait.  Who told you about the New

24      York City law?

25          A.   Oh, we learned about it, because we
```

21

```
1                   Cynthia P. Flores Garcia

2       have to make sure that nobody closes, and

3       then opens the next day.

4           Q.   So if you close, and then open the

5       next day, you get an extra $100?

6           A.   Pretty much, yeah.

7           Q.   What does "pretty much" -- it's

8       either "yes" or "no." It's not "pretty much."

9           A.   Well, yeah.

10          Q.   Okay.  Is there a name for that
```

23726.txt

```
11    pay?

12              Is it just open and closing pay or

13    something, or --

14         A.   I am not sure of what the name is.

15         Q.   Okay.

16         A.   I just know it says, like,

17    "scheduled" --

18         Q.   But you're not supposed to get

19    that.

20              You are not supposed to do that,

21    right?

22              They -- I assume they don't want

23    people to close and then open the next day?

24                   MS. OTTO:   Object to form.

25         A.   They just want to make sure that
```

22

```
1              Cynthia P. Flores Garcia

2    all the people working are, you know, rested

3    well, and they don't --

4         Q.   Okay.

5         A.   So it's just, again, the New York

6    City law.  Or New York State law, if I am not

7    mistaken.
```

Page 24

23726.txt

```
 8        Q.   Are you an attorney?

 9             You're not an attorney, right?

10        A.   No.

11        Q.   So who told you about the New York

12   City law?

13        A.   We learned about it.  I believe

14   that happened a year ago, just to make sure

15   that, you know, if anyone -- there's

16   schedules changing, less hours, or more

17   hours, just to make sure everyone has a fair

18   schedule.

19        Q.   So, again -- but my question was,

20   what was the information on your paycheck?

21   What are they?

22        A.   I mean, that's just everything that

23   we get paid for.

24        Q.   Can you list it out?

25        A.   Yeah.
```

♀

23

```
 1             Cynthia P. Flores Garcia

 2        Q.   List out what information is on

 3   your pay stub.

 4        A.   Well, it has hours that we worked,
```

Page 25

23726.txt

```
 5    paid break, again, if we worked --
 6         Q.   The "paid" what?
 7         A.   The paid break.
 8         Q.   Okay.  What else?
 9         A.   If we worked over ten hours, if we
10    do anything, like, open or close.
11         Q.   Open or close, all right.
12         A.   Yeah, and then it has all your
13    other information in the whole year, and what
14    the taxes get taken out for.
15         Q.   Okay.  Do you ever recall getting a
16    notice when you first started working?
17         A.   Notice --
18                   MS. OTTO:  Object to form.
19         A.   -- about what?
20         Q.   Just any kind of notice when you
21    first started working.
22                   MS. OTTO:  Object to form.
23         A.   When I first started working, no.
24         Q.   Do you know what the "crew
25    handbook" is?
```

24

```
 1              Cynthia P. Flores Garcia
                      Page 26
```

23726.txt

```
 2        A.   Yes.

 3        Q.   What is that?

 4        A.    Pretty much, it just has all the

 5   information important to Chipotle, and pretty

 6   much rules of what the crew members could do.

 7        Q.   Are you a manager now?

 8        A.   Yes.

 9        Q.   You're a manager now, right?

10        A.   Yes.

11        Q.   You're a service manager?

12        A.   Yes.

13        Q.   Upper East Side?

14        A.   No, in the Upper West.

15        Q.    You're a service manager in the

16   Upper West Side?

17        A.   Yes, Upper West.

18        Q.    I'm going to drop in and have a

19   meal and say hi to you.

20        A.   Yeah.

21        Q.   What do you think?

22        A.    I will be there.

23        Q.   Do you know what the timekeeping

24   and time punch policies are?

25        A.   Yes.
```

Page 27

23726.txt

♀

25

1                Cynthia P. Flores Garcia

2        Q.    Okay.

3        A.    Pretty much, just, again, as soon

4     as you -- as you start working, you clock in,

5     and whenever you go on break, you clock out

6     for break, when you come back from break, you

7     clock back in from break, and whenever you

8     stop working, you clock out.

9        Q.    You're actually a manager, right?

10              So you know more about the policies

11    than your typical crew person would know,

12    right?

13       A.    Uh-huh.

14       Q.    You need to say "yes" or "no."

15       A.    Yes.

16       Q.    And so you help the company

17    implement the policies --

18       A.    Yes.

19       Q.    -- right, that they set for

20    employees, right?

21       A.    Yes.

22       Q.    Now, when you were just a crew

                        Page 28

23726.txt

23    member, were you aware of all these policies,

24    or did you know them better when you became a

25    manager?

26

1             Cynthia P. Flores Garcia

2                  MS. OTTO:  Object to form.

3         A.   Well, I knew about this -- again,

4    every time somebody gets hired, we have

5    orientation, and we go through the handbook,

6    so they explain everything to you, and I

7    guess it's just, once you become a manager,

8    you're really more aware of, like, okay, make

9    sure that everything is running fine.  You're

10   actually keeping track of everyone clocking

11   in and clocking out.

12        Q.   So that's your job?  Your job is to

13   track peoples' hours and make sure they're

14   properly clocked in and out?

15        A.   Yes.

16        Q.   Okay.  And were you aware of the

17   punch in, punch out system where they would

18   automatically punch people out after a

19   certain time at the stores?

Page 29

23726.txt

20        A.   Yes.

21        Q.   And you recall that happening,

22   right?

23        A.   Yes.

24        Q.   And do you know what time it would

25   automatically clock people out?

♀

27

1              Cynthia P. Flores Garcia

2        A.   When I started working, it was at

3   3:00 p.m. -- sorry, 3:00 a.m.

4        Q.   Okay.  At which store?

5        A.   That was at Upper East Side.

6        Q.   Okay.  So is it 3:00 at all stores,

7   or did it vary?

8        A.   No, I guess it was because of the

9   time zone, but now it's at 12:30.  I'm not

10   sure --

11        Q.   Right now the automatic clock out

12   is 12:30?

13        A.   Yes.

14        Q.   At your Upper West Side store?

15        A.   I believe that's every Chipotle.

16        Q.   Every Chipotle?

Page 30

23726.txt

17        A.   Yes.

18        Q.   Around the nation, or just in New

19    York?

20        A.   I'm not sure.

21        Q.   Okay.  But you, just, in your

22    mind --

23        A.   I'm pretty sure it's around the

24    nation.

25        Q.   Okay, thank you.


                                              28

1                Cynthia P. Flores Garcia

2                And so if you worked past 12:30,

3     then you're automatically clocked out, right?

4         A.   Yes.

5         Q.   Then your hours are not counted for

6     your working hours, right?

7                     MS. OTTO:   Object to form.

8         A.   Your manager makes sure that

9     everything gets fixed before you leave.

10        Q.   It has to be done manually?

11        A.   Yes.

12        Q.   But the manager is not going to be

13    there, right?

                    Page 31

23726.txt

| 14 | A. Yeah, there is always a manager |
| 15 | closing. So the manager makes sure that |
| 16 | before they leave, the time is fixed in the |
| 17 | system, or sometimes -- it depends. |
| 18 | Sometimes people just -- they know if they're |
| 19 | working past 12:30, they would make sure they |
| 20 | clock back in and -- at 12:30, and then they |
| 21 | continue working. |
| 22 | Q. Okay. Now, because it's such an |
| 23 | additional manual process, is it possible |
| 24 | that people aren't getting paid for that |
| 25 | automatic clocked out time period? |

29

| 1 | Cynthia P. Flores Garcia |
| 2 | MS. OTTO: Object to form. |
| 3 | A. I don't believe so. Usually -- |
| 4 | well, based on the stores that I have worked, |
| 5 | we usually leave before, like, 12:00, so that |
| 6 | doesn't really happen. |
| 7 | Q. Okay. But there are people who |
| 8 | work past 12:30? |
| 9 | A. I believe so. |
| 10 | Q. And in order for them to get paid, |

Page 32

23726.txt

```
11    they would have to remember to clock back in

12    or tell the manager to pay them the extra

13    time?

14         A.    The manager would automatically do

15    it.

16         Q.    What if the manager doesn't

17    remember?

18              MS. OTTO:  Object to form.

19         A.    We would still do it the next day.

20    We always keeping track of everyone, and we

21    actually do get e-mails.  If somebody works

22    past -- it says they clocked out 12:30, that

23    means they were auto clocked out, and then we

24    get e-mails to make sure that gets fixed for

25    the crew member or manager.
```

30

```
1              Cynthia P. Flores Garcia

2         Q.    Okay.  But if the manager doesn't

3    do anything, then that person would not get

4    paid, right?

5         A.    I believe so, yeah.

6         Q.    Okay.  Now, you don't work with

7    other managers, right?  You just work with
```

Page 33

23726.txt

```
 8    your own team?

 9          A.   Well, yeah, my own team.

10          Q.   You have your own team, and you're

11    supervising them.  You don't work with

12    other --

13          A.   Well, I have other managers in the

14    store, but not other managers from other

15    stores.

16          Q.   Okay, okay.  When the two people

17    came in to speak with you to tell you to sign

18    the affidavit, was that on company time?

19                    MS. OTTO:  Object to form.

20          A.   Yes.

21          Q.   And it was during your shift?

22          A.   Yes.

23          Q.   Okay.  How many people did they

24    speak to?

25          A.   I believe it was probably around
```

31

```
 1              Cynthia P. Flores Garcia

 2    three or four.

 3          Q.   Okay.  And all three or four people

 4    signed the affidavit that were given to them?
```

Page 34

23726.txt

```
5        A.    I believe so.

6        Q.    Okay.  And there was nobody who --

7   who said, "I don't want to sign it," right?

8        A.    No, not that I know of.

9        Q.    But people only signed it, because

10   the people came in to ask them to sign it,

11   right?

12                  MS. OTTO:  Object to form.

13        A.    They just asked to speak to us, and

14   if somebody didn't want to speak to them,

15   they did not speak to them.  There was

16   somebody who preferred not to speak to them.

17   Well, he didn't speak English, so he --

18        Q.    Well, he couldn't speak to them,

19   because he didn't speak English.

20        A.    Yeah, but they could have had a

21   translator, but he decided not to, so just

22   whoever wanted to speak to them, they were

23   able to speak to them.

24        Q.    Why did you feel obligated to speak

25   to them?
```

♀

32

```
1              Cynthia P. Flores Garcia
                    Page 35
```

23726.txt

2                    MS. OTTO:  Objection to

3            form.

4        A.   I didn't feel obligated.  I just,

5    you know, I just wanted to know what they

6    needed, and then I spoke to them to see what

7    -- why they were there.

8        Q.   Well, you could have just not done

9    anything, right, and just continued with your

10   work, right?

11       A.   I guess, yeah.

12       Q.   Okay.  Why did you feel compelled

13   to have to spend the time, listen to them,

14   answer their questions, and then review the

15   document?

16                    MS. OTTO:  Object to form.

17       A.   I mean, it was just -- I know it

18   was something with, like, working off the

19   clock, and, you know, whatever questions they

20   were asking, so I just wanted to know what I

21   really needed -- I guess, in a way, I could

22   help with just --

23       Q.   Well, you were helping them defend

24   a lawsuit, right?

25                    MS. OTTO:  Object to form.

                     Page 36

23726.txt

♀

33

1                    Cynthia P. Flores Garcia

2         A.    Not help.

3         Q.    Were you aware of that?

4         A.    I just knew that they were there

5    talking about that.

6         Q.    Were you aware that they were there

7    to ask you to help them defend a lawsuit?

8         A.    No, I just knew that they were

9    there to speak about timekeeping process.

10        Q.    They didn't tell you that your

11   affidavit would be submitted to help them

12   defend a wage lawsuit from another employee,

13   right?

14        A.    I really don't remember.  It was a

15   very long time ago.

16        Q.    And you don't know that, right?

17        A.    I knew about it.

18        Q.    What did you know?

19        A.    I knew -- well, I actually do

20   remember now, getting a notice in the mail

21   about it.

22        Q.    Okay.  But they didn't tell you,

                        Page 37

23726.txt

23    when they spoke to you, that your affidavit,

24    that they asked you to sign, is going to be

25    used to defend against a lawsuit from another

34

1                  Cynthia P. Flores Garcia

2     employee, right?

3                     MS. OTTO:  Object to form.

4         A.   I actually think they did, but,

5     again, I'm not too sure what --

6         Q.   Okay.  And you wanted your

7     affidavit to be used to defend Chipotle's

8     lawsuit against another employee?

9                     MS. OTTO:  Object to form.

10        A.   I mean, I didn't -- I didn't think

11    about it.  I was just there to answer their

12    questions.

13        Q.   Okay.  But you signed the

14    affidavit?

15        A.   Yes.

16        Q.   You didn't just answer questions.

17             You signed an affidavit, right?

18        A.   Yes.

19                     MS. OTTO:  Object to form.

Page 38

23726.txt

```
20                    Argumentative.

21        Q.    You wanted the affidavit to be used

22   to defend Chipotle against wage claims by

23   other employees?

24                    MS. OTTO:  Object to form.

25                    Argumentative, and asked and
```

```
                                               35

1                 Cynthia P. Flores Garcia

2                 answered.

3        A.    I'm not sure.

4        Q.    Is an apprentice below or above you

5   in rank?

6        A.    Above.

7        Q.    "Above"?

8        A.    Uh-huh.

9        Q.    Okay.  What's a "restauranteur"?

10       A.    It's pretty much the title that

11   general managers get once they create, pretty

12   much, like, a perfect team.  It's just, like,

13   based on Chipotle culture.  It's kind of,

14   like, a promotion for a general manager, but

15   they're still general manager.

16       Q.    So you track your own hours, right?
```

Page 39

23726.txt

```
17        A.   Yes.

18        Q.   And so there wouldn't be any

19   instance why you would have an issue with

20   your own hours, right?

21        A.   No.

22             MS. OTTO:  Object to form.

23        Q.   Okay.  And there wouldn't be any

24   instance where you would need to raise or

25   report any issues regarding your own
```

                                        36

```
1            Cynthia P. Flores Garcia

2    timekeeping, because you're a manager, right?

3             MS. OTTO:  Form.

4        A.   Well, if I have any -- let's say if

5    I don't -- if I come and I don't clock out,

6    or if I forget, somebody there, another

7    manager would be able to fix my time.  We're

8    not allowed to fix our own time.

9        Q.   But another service manager as

10   yourself, right?

11       A.   It could be -- it has to be either

12   service or higher.

13       Q.   Okay.  So what's the "aloha
```

Page 40

23726.txt

14    system"?

15         A.    That's pretty much the computer in

16    the front where we have the transactions for

17    the cashiers, and we are also there to clock

18    in and clock out.  Clock out for break and

19    clock in for break.

20         Q.    And does it give you a receipt?

21         A.    Yes.

22         Q.    What does the receipt do?

23         A.    It just tells you when you clock

24    in.  It just tells you the time that you

25    clocked in, and when you clock out.  It tells

37

1              Cynthia P. Flores Garcia

2    you how many hours you worked, the time you

3    clock in, the time you clock out, and how

4    many hours that was.

5         Q.    So when they spoke to you

6    originally about the affidavit, you didn't

7    know anything about the lawsuit, right?

8              You -- they just asked you the

9    question, and you answered to the best of

10    your ability, right?

Page 41

23726.txt

```
11       A.   I believe I had seen something in
12   the mail about it.
13       Q.   Okay.
14       A.   But I don't remember anyone
15   speaking to me, actually.
16       Q.   Okay.  And you don't remember the
17   claims at the time that you were talking to
18   them about the affidavit, right?
19            MS. OTTO:   Objection to
20       form.
21       A.   I don't -- I don't remember.  That
22   was -- again, that was a very long time ago,
23   so I don't --
24       Q.   Well, do you know what the claims
25   are of this person that's suing?
```

                                              38

```
1            Cynthia P. Flores Garcia
2       A.   I believe -- I just know it's
3   something about working off the clock.  But I
4   am not sure, exactly, what it was.
5       Q.   Okay.  And do you know if he -- do
6   you know if he -- do you know if he's
7   bringing the lawsuit just for himself?
```
                    Page 42

23726.txt

```
 8        A.   I don't know.
 9        Q.   Okay.  Do you know what the word
10   "perjury" means?
11        A.   No.
12        Q.   Okay.  It's all right.
13             Do you know what the word "coerced"
14   means?
15        A.   No.
16                  MS. OTTO:  Object to form.
17                  MR. LEE:  I have no other
18             questions.
19                  MS. OTTO:  I have a few
20             question.
21                  MR. LEE:  Oh, I'm sorry.
22             Actually, I just want to finish.  I
23             forgot one thing.  I want to submit
24             this as an exhibit.
25        Q.   So just to confirm, I'm showing the
```

                                           39

```
 1             Cynthia P. Flores Garcia
 2   witness what's being marked as Plaintiff's
 3   Exhibit 1, and this is your signature at the
 4   back page?
```

                        Page 43

23726.txt

```
    5        A.    Yes.

    6        Q.    Right.  And this affidavit is your

    7    affidavit, right?

    8        A.    Uh-huh.

    9        Q.    You need to say, "yes" or "no."

   10        A.    Yes.

   11                    (Plaintiff's Exhibit 1,

   12                    Affidavit, marked for

   13                    identification, as of this

   14                    date.)

   15                    MS. OTTO:  Mr. Lee, are you

   16             done with your questions?

   17                    MR. LEE:  Yeah, go ahead.  I

   18             never got your name.

   19                    MS. OTTO:  Katherine Otto.

   20                    Hello, my name is Katherine

   21             Otto.  I am a lawyer that

   22             represents Chipotle.

   23    BY MS. OTTO:

   24        Q.    You and I have never met before; is

   25    that right?
```

40

```
    1                Cynthia P. Flores Garcia
```
Page 44

23726.txt

```
 2        A.   Correct.

 3        Q.   Okay.  And so just now, a document

 4   has been placed in front of you that's marked

 5   as Exhibit 1; is that right?

 6        A.   Correct.

 7        Q.   And you looked through, and you

 8   identified your signature on this document;

 9   is that right?  On the very last page, page

10   9.

11        A.   Yes.

12        Q.   Okay.  And so before this was

13   placed in front of you a moment ago, Mr. Lee

14   was asking you questions, correct?

15        A.   Correct.

16        Q.   And you did not have this document

17   in front of you when he was asking those

18   questions; is that right?

19        A.   Correct.

20        Q.   Were you ever provided a copy of

21   your declaration, in between the time that

22   you received the notice of your deposition,

23   and today?

24        A.   No.

25        Q.   Okay.  So is the last time that you
```

23726.txt

♀

```
 1              Cynthia P. Flores Garcia
 2    saw this document, when you signed it in your
 3    store?
 4         A.   Yes.
 5         Q.   Do you remember if you were given a
 6    copy of it at that time?
 7         A.   I don't think I was.
 8         Q.   Okay.  So -- but how did you find
 9    out that your deposition was being requested
10    in this case?
11         A.   I just got a notice in the mail at
12    work.
13         Q.   You received something in the mail
14    addressed to you at the store where you work?
15         A.   Yes.
16         Q.   Is that 805 Columbus Avenue?
17         A.   Correct.
18         Q.   And do you remember when that was?
19         A.   I believe that was, maybe, three
20    weeks ago.
21         Q.   When you received that notice, what
22    did you do?
```

23726.txt

23        A.    Well, I opened it, and I -- then, I

24    just read through it, and I knew it was about

25    this, then I requested for the time off.

&#9792;

                                                   42

 1                 Cynthia P. Flores Garcia

 2        Q.    Did you contact anyone, any

 3    attorney, or any other person whose

 4    information was on the notice you received

 5    about your deposition?

 6        A.    No.

 7        Q.    How did you make arrangements to be

 8    here today at this time?

 9        A.    Today -- well, I just told them I

10    wasn't able to make it to work until a

11    certain time, and then I just came here after

12    work.

13        Q.    Who did you tell that you weren't

14    able to make it?

15        A.    My general manager.

16        Q.    Okay.  So the notice that you

17    received to show up today had today's time

18    and date; is that right?

19        A.    No, it was for Thursday.

Page 47

23726.txt

```
20        Q.   Okay.  And so who did you tell that

21   you weren't able to make it to last

22   Thursday's deposition?

23        A.   My general manager.

24        Q.   Anyone else?

25        A.   Oh, my area manager was there when
```

♀

                                                    43

```
 1             Cynthia P. Flores Garcia

 2   I opened it.

 3        Q.   Did you call anyone at this office?

 4        A.   No.

 5        Q.   Have you spoken to anyone at this

 6   office about your deposition?

 7        A.   No, I just came in on Thursday, and

 8   they just told me it was rescheduled.

 9        Q.   So you actually came here last

10   Thursday?

11        A.   Yes.

12        Q.   And what were you told?

13        A.   That -- I believe that it was -- I

14   don't remember.  It was just they told me it

15   was -- it had to be rescheduled.

16        Q.   Okay.  And did they offer today and
```

23726.txt

17    this time to reschedule it?

18         A.   Yes.

19         Q.   In between the time that you

20    received the notice that someone wanted to

21    depose you, and today, you hadn't seen a copy

22    of this -- of your declaration; is that

23    right?

24         A.   Correct.

25         Q.   Now, it's in front of you, and I

44

1              Cynthia P. Flores Garcia

2    want to go through it in a little bit more

3    detail, so let's turn, again, to page 9.

4              And that's your signature, right?

5         A.   Yes.

6         Q.   And it says here that this was

7    executed on June 14, 2018, New York, New

8    York.

9              Does that sound right to you?

10        A.   Yes.

11        Q.   You believe you signed this

12    document at your store at 805 Columbus

13    Avenue?

Page 49

23726.txt

```
14        A.   Correct.

15        Q.   All right.  If you turn to page 8

16   of this document in front of you, paragraph

17   33, let's just read through this together.

18   Paragraph 33 says, "I have completed this

19   declaration voluntarily of my own freewill

20   and am choosing to do so because it is true

21   and correct."  Let's stop right there.

22             When you signed this document, you

23   had read through it; is that right?

24        A.   Correct.

25        Q.   And you testified, when Mr. Lee was
```

45

```
1              Cynthia P. Flores Garcia

2    asking you questions, that some people were

3    there and gave you some information about

4    this document, and you heard all of that

5    information, and read this document before

6    you signed it, correct?

7         A.   Correct.

8              MR. LEE:  I am just

9              objecting to your entire line of

10             questions.  You're asking leading
```

Page 50

23726.txt

```
11                    answers.  You're asking leading

12                    questions.

13                         MS. OTTO:  Sure.

14                         MR. LEE:  I will ask that

15                    the entire line of questioning be

16                    stricken, but go ahead.

17                         MS. OTTO:  Okay.

18        Q.    All right.  And so when Mr. Lee was

19   asking you questions, you testified that you

20   had read the document, and that you had read

21   this information; is that correct?

22        A.    Correct.

23                         MR. LEE:  Again, objection.

24        Q.    Do you need to take a moment to

25   read through this document, and refresh your
```

46

```
1                    Cynthia P. Flores Garcia

2    recollection about all that's in it?

3         A.    Yeah.

4         Q.    Take your time.  We will sit here.

5    We have as much time as we need.

6                         MR. LEE:  Let's break and

7                    let us know when she finishes.
```

Page 51

23726.txt

```
 8                    (Whereupon, a recess was

 9              taken at 3:43 p.m.)

10                    (Time noted:  3:52 p.m.)

11        Q.   We took a break, so that you can

12   review this document.

13                    MR. LEE:  Sorry, how long

14              was the break for the review?

15                    (Whereupon, a discussion was

16              held off the record at this time.)

17        Q.   We took a break, so you could

18   review this document.  It is 3:52.  So you

19   had about 9 minutes to review this.

20              Were you able to read the document?

21        A.   Yes.

22        Q.   And during the time that you were

23   reading the document, Mr. Lee left the room;

24   is that right?

25        A.   Correct.
```

47

```
 1              Cynthia P. Flores Garcia

 2        Q.   Did you and I have any interaction

 3   at all while he was out of the room?

 4        A.   No.
```

Page 52

23726.txt

```
 5        Q.   Okay.  His assistant was also
 6    present in the room while you were reading
 7    the document; is that right?
 8        A.   Yes.
 9                  MR. LEE:  She is not an
10                  "assistant," but you can go on.
11                  MS. OTTO:  I'm sorry, what's
12              your name?
13                  MS. PEREZ:  Jasmin.
14                  MS. OTTO:  What's your role?
15                  MS. PEREZ:  Paralegal.
16                  MS. OTTO:  Paralegal.
17                  Very nice to meet you,
18              Jasmin.
19        Q.   After reading this document, is
20    there anything in this document that you need
21    to correct, or that is inaccurate, or untrue?
22        A.   No.
23        Q.   Let's put the document aside for
24    just a moment.  Have you ever had your
25    deposition taken before?
```

48

```
 1              Cynthia P. Flores Garcia
```
Page 53

23726.txt

```
 2        A.   No.

 3        Q.   Okay.  So this is a new process for

 4   you; is that right?

 5        A.   Yes.

 6        Q.   Mr. Lee didn't go over any ground

 7   rules with you, but let me share some of

 8   those ground rules for you, that will make my

 9   questions easier for both of us to get

10   through.

11             I'm going to ask questions, you're

12   going to give an answer, and he may or may

13   not have an objection.  He will state the

14   objection, and he is entitled to do that, and

15   you are to go ahead and answer the

16   question --

17                   MR. LEE:  I'm sorry, I think

18              on your cross, you are only

19              supposed to ask questions related

20              to questions that I have asked.

21                   MS. OTTO:  Not in a

22              deposition.

23                   MR. LEE:  You're not doing

24              your own deposition.  Otherwise,

25              you are paying for your own
```

Page 54

23726.txt

♀

49

```
 1              Cynthia P. Flores Garcia

 2              deposition transcript.

 3                   MS. OTTO:  Actually --

 4                   MR. LEE:  I called the

 5              deposition.  It's not your

 6              deposition.  It's my deposition.

 7              If you want to do a separate

 8              deposition, you can subpoena her

 9              separately.

10                   MS. OTTO:  Mr. Lee, I am

11              entitled to this examination, and

12              the Court is going to permit me to

13              lay ground rules for the deponent,

14              especially of a witness that hasn't

15              been deposed before.

16                   MR. LEE:  You are only

17              supposed to ask questions that are

18              related to my questions.  That's

19              what a "cross" is.

20                   MS. OTTO:  I am going to

21              call the Judge.

22                   MR. LEE:  Go ahead.
```

Page 55

23726.txt

23          MS. OTTO:  Stay on the

24       record for this.

25          MR. LEE:  What kind of

&#9792;

50

1       Cynthia P. Flores Garcia

2       ground rules are you talking about

3       that you have to instruct her?  I

4       told her, "I'm asking you some

5       questions," right?  She's going to

6       answer truthfully.  Like, what else

7       is there?  Like, what else do you

8       want to tell her?

9          MS. OTTO:  This is improper

10       colloquy in front of the witness.

11       Let's call the Court.

12          MR. LEE:  What else do you

13       want to tell her?  Just tell her.

14       Tell me what you want to tell her.

15          MS. OTTO:  Talking to her

16       about --

17          MR. LEE:  But it's not

18       appropriate.

19          COURT CLERK:  Judge Parker's

Page 56

23726.txt

```
20          chamber.

21              MS. OTTO:  Hi, this is

22          Katherine Otto.  I am calling in

23          the Garcia matter.  We have a

24          deposition underway and a question

25          that's come up.  I was hoping that
```

                                        51

```
1           Cynthia P. Flores Garcia

2           the Judge may have time to speak

3           with us briefly.

4               COURT CLERK:  Unfortunately,

5           the Judge is unavailable.  If you

6           want to put a request in writing, I

7           could get it in short order, but I

8           can't guarantee when he would be

9           available to respond.

10              MS. OTTO:  Sure.  How would

11          you like me to get you the written

12          request?

13              COURT CLERK:  You send it to

14          Judge Parkers chamber's e-mail.

15              MS. OTTO:  I will do that

16          right now.  Thank you so much.
```

23726.txt

```
17                COURT CLERK:  Thank you.
18                MS. OTTO:  We can go off the
19           record while I send this e-mail.
20                MR. LEE:  She told you to
21           send something in writing.  She is
22           not in.
23                MS. OTTO:  She said she was
24           not available, not that she's not
25           in.  And my understanding, from her
```

52

```
1            Cynthia P. Flores Garcia
2           representation, if we send it to
3           her, she can get that to the Judge,
4           or you can just let me lay the
5           ground rules, and we can proceed
6           with the deposition.
7                MR. LEE:  Why don't you just
8           tell me what you're trying to tell
9           her?  I already told you --
10                MS. OTTO:  That if she
11           doesn't understand a question, that
12           she can say, "stop and rephrase."
13           Simple ground rules that are --
```

Page 58

23726.txt

```
14              MR. LEE:  Fine, go ahead.

15              But I don't know why --

16              fine, go ahead.  Knock yourself

17              out.

18              MS. OTTO:  Mr. Lee, please

19              don't interrupt me when I'm

20              speaking.  We have a court

21              reporter --

22              MR. LEE:  You're talking to

23              me and I'm responding.

24              MS. OTTO:  You just

25              interrupted me again.  The court
```

                                                53

```
1               Cynthia P. Flores Garcia

2               reporter needs to get a clear

3               transcript of what's happening in

4               this proceeding and I am simply

5               trying to preserve the record.

6        Q.    Back to my questions, and some

7    ground rules that should make it easier for

8    everyone.  You are to answer the question,

9    even if there is an objection posed, unless

10   someone instructs you not to answer.  That
```

23726.txt

11    hasn't happened yet today, and I don't think

12    it will happen, but that's a ground rule.

13            If you don't understand a question

14    that I have asked, you can tell me, and I

15    will rephrase it.  Can you do that?

16        A.    Yes.

17        Q.    Okay.  And if you answer a question

18    that I have asked, unless you tell me you

19    don't understand it, I will expect that you

20    do understand it; is that fair?

21        A.    Yes.

22        Q.    Okay.  It's also important, when

23    I'm asking questions, and you are giving

24    answers, that we give our court reporter the

25    opportunity to take down everything that

♀

54

1            Cynthia P. Flores Garcia

2    we're saying.

3            If we talk too fast, or talk over

4    each other, or interrupt each other, it can

5    make her job very difficult.  So if I ask you

6    to slow down, or ask you to repeat an answer,

7    it's not because I'm being rude, it's because

Page 60

23726.txt

8      I want to make sure she gets a clear record

9      of what we're saying, okay?

10          A.    Okay.

11          Q.    At the beginning of this

12     deposition, you raised your hand, and you

13     were sworn under oath; is that right?

14          A.    Yes.

15          Q.    Did you understand what that meant?

16          A.    Yes.

17          Q.    Tell me.

18          A.    Pretty much, I just have to make

19     sure everything I am saying is -- that I'm

20     saying nothing more than the truth.

21          Q.    Okay.  When you signed this

22     declaration, did you understand that you

23     needed to be truthful in the statements that

24     were in this declaration?

25          A.    Yes.


                                        55

1                Cynthia P. Flores Garcia

2          Q.    Mr. Lee asked you a question -- he

3      asked you if you knew what the word "perjury"

4      meant.

Page 61

23726.txt

```
 5              Do you remember that question?

 6        A.    Yes.

 7        Q.    Okay.  Do you have a general

 8    understanding of what "perjury" means?

 9        A.    Not really.

10        Q.    Do you know what it means to be

11    "under oath"?

12        A.    I -- I'm not 100 percent sure.

13        Q.    Do you know the difference between

14    telling the truth and telling a lie?

15        A.    Yes.

16        Q.    Are you telling the truth in your

17    testimony today?

18        A.    Yes.

19        Q.    Were you telling the truth in the

20    statements that you signed off on this

21    declaration?

22        A.    Yes.

23        Q.    And you understood what that meant,

24    right?

25        A.    Yes.
```

♀

56

```
 1              Cynthia P. Flores Garcia
```
Page 62

23726.txt

```
 2          Q.   Mr. Lee also asked you if you knew

 3    what the word "coerced" meant.

 4               Do you remember that question?

 5          A.   Yes.

 6          Q.   And if I remember your testimony,

 7    it was that you do not know what that word

 8    means; is that right?

 9          A.   Yes.

10          Q.   Do you know what it means to be

11    "pressured" into giving an answer?

12          A.   Yes.

13          Q.   Do you know what it means to be

14    "threatened" into giving an answer or

15    something --

16          A.   Yes.

17          Q.   Do you know what it means to be

18    "retaliated" against?

19          A.   Yes.

20          Q.   Do you know what it means to be

21    "promised" something in exchange for doing

22    something?

23          A.   Yes.

24          Q.   Did any of those things happen

25    regarding the declarations that you signed
```

Page 63

23726.txt

♀

57

```
 1              Cynthia P. Flores Garcia
 2     off on, that we have been talking about
 3     today?
 4          A.   No.
 5          Q.   Mr. Lee asked you a lot of
 6     questions about when you signed this
 7     document, and when people were in your store,
 8     and I want to make sure that I am clear.  Did
 9     anyone tell you that you had to sign this
10     document?
11          A.   No.
12          Q.   Did anyone tell you that if you
13     didn't listen to these people that were in
14     your store, and the information that they
15     had, that you would be punished or retaliated
16     against in any way?
17          A.   No.
18          Q.   Mr. Lee also asked you some
19     questions about the automatic clock out time
20     around the nation, and I want to make sure I
21     understand what your testimony is.
22              Can you testify with certainty what
```
Page 64

23726.txt

23    the clock out -- automatic clock out time is

24    for every Chipotle store?

25         A.    Yes, 12:30.


                                                    58

1               Cynthia P. Flores Garcia

2         Q.    12:30.  Do you know when that

3     changed?

4         A.    I'm not sure.

5               MR. LEE:  Objection.

6         A.    It was a couple of years ago.

7         Q.    Okay.  Your earlier testimony, when

8     Mr. Lee was asking you questions, was that at

9     one point in time that automatic clock out

10    was 3:00 a.m.; is that right?

11        A.    Yes.

12        Q.    And do I understand your testimony,

13    that at some point in time, that changed to

14    12:30 a.m.?

15        A.    Yes.

16        Q.    But you don't remember, exactly,

17    when that was?

18        A.    No.

19        Q.    You mentioned during Mr. Lee's

                      Page 65

23726.txt

20      questions, that you received a notice in the

21      mail about the lawsuit, and I want to draw a

22      distinction between the notice about the

23      lawsuit, and the notice about your

24      deposition.

25              Are those two separate documents?

♀

                                                    59

1               Cynthia P. Flores Garcia

2       A.    Yes.

3       Q.    Tell me about the first one you

4       received.

5       A.    The first one -- it was a very long

6       time ago.  It was probably over a year, maybe

7       two years ago, and it just spoke about the

8       case, working off the clock, but I don't

9       remember very much about it.  Again, it was,

10      like, maybe two years ago.

11      Q.    Do you remember who the notice came

12      from?

13      A.    No.  I believe it was Chipotle, but

14      I am not too sure.

15      Q.    Okay.  Other than that first notice

16      that you received a couple of years ago, did

Page 66

23726.txt

17    you have any other information about the

18    lawsuit?

19         A.   I just knew about it, but I wasn't

20    -- I wasn't too sure what was going on.

21         Q.   And Mr. Lee asked you a lot of

22    questions about why you signed this

23    declaration.  What was the reason that you

24    listened to the people when they were in your

25    store that day, about the information in the

60

1               Cynthia P. Flores Garcia

2    declaration?

3         A.   They just came in and asked

4    questions, so -- well, they were talking

5    about what was going on, so I just wanted to

6    answer their questions to, you know, see, I

7    guess, how I could help, or just speak about

8    my experience at Chipotle.

9         Q.   Mr. Lee also asked you questions

10    about your timekeeping, because you were a

11    service manager, and one of his questions was

12    whether you kept track of your own time, and

13    managed your own hours.  Do you remember that

23726.txt

14     questioning?

15          A.   Yes.

16          Q.   Before you were a service manager,

17     you were a crew member; is that right?

18          A.   I was a kitchen manager, and before

19     that, I was a crew member.

20          Q.   So when you were a crew member, did

21     -- how were your hours managed when you were

22     a crew member?

23          A.   Pretty much, again, if I forget to

24     clock out -- clock in or clock out, I would

25     go to the manager and my time would be fixed.

                                                    61

1                  Cynthia P. Flores Garcia

2           Q.   And so this declaration that you

3      signed -- it is in front of you, if you want

4      to look at it -- but on the first page -- and

5      this is what you reviewed on the break -- it

6      talks about when you started working as a

7      crew member on the Upper East Side, and then

8      promoted to service manager, right?

9           A.   To kitchen, and then service, yeah.

10          Q.   All of these statements that you

23726.txt

| 11 | | made about your pay, and what your experience |

11    made about your pay, and what your experience

12    has been at Chipotle, that would imply the

13    entire time you worked at Chipotle, even when

14    you were a crew member; is that right?

15        A.    Correct.

16        Q.    Did you ever have hour or clock in,

17    clock out issues when you were a crew member?

18        A.    As a crew member, no.

19        Q.    If you had, who would you have

20    reported those to?

21        A.    Any manager.

22        Q.    Has anyone made any promises to you

23    about your testimony today?

24        A.    No.

25        Q.    Has anyone threatened or pressured

♀

62

1                 Cynthia P. Flores Garcia

2    you about your testimony today?

3        A.    No.

4                 MS. OTTO:   Those are all the

5                 questions I have, subject to

6                 redirect, to the extent that it

7                 goes beyond redirect.

Page 69

23726.txt

```
 8    BY MR. LEE:

 9        Q.    What if a person didn't get along

10    with their manager, if they believed that

11    their time was not being accurately kept, how

12    would they get their time fixed?

13                    MS. OTTO:   Object to form.

14        A.    I mean, we -- we don't only have

15    one manager, we have a lot of managers.  So

16    if you didn't want to, you know -- I guess,

17    feel comfortable with one manager, there

18    would be other managers to ask.

19        Q.    And that's the only option, talking

20    to the managers at the store, right?

21                    MS. OTTO:   Object to form.

22        A.    The manager -- you could always

23    refer back to the area manager, or there's a

24    Chipotle hotline for the workplace, if you

25    feel uncomfortable.



                                            63

 1                Cynthia P. Flores Garcia

 2        Q.   Okay, thanks.

 3                    MS. OTTO:  I have no further

 4              questions.
```

Page 70

23726.txt

```
 5                      -oOo-

 6                      (Whereupon, the examination

 7              of CYNTHIA P. FLORES GARCIA was

 8              adjourned at 4:06 p.m.)

 9

10

11

12

13                      CYNTHIA P. FLORES GARCIA

14

15

16    Subscribed and sworn to

17    before me this      day

18    of              , 2018.

19

20    NOTARY PUBLIC

21

22

23

24

25
```

64

```
 1
```

23726.txt

```
 2     ----------------- I N D E X -----------------

 3

 4     WITNESS        EXAMINATION BY          PAGE

 5     CYNTHIA P. FLORES GARCIA

 6                        MR. LEE            6, 62

 7                        MS. OTTO           39

 8

 9

10

11

12     ----------------- EXHIBITS ------------------

13

14     PLAINTIFF'S                         FOR ID.

15

16        1               Affidavit          39

17

18            (Exhibits retained by reporter.)

19     ----------------------------------------------

20

21

22

23

24

25
```

Page 72

23726.txt

⚥

65

```
 1

 2              C E R T I F I C A T E

 3

 4     STATE OF NEW YORK      )
                             : ss.
 5     COUNTY OF NEW YORK     )

 6

 7          I, AYDIL M. TORRES, a Notary Public

 8     within and for the State of New York, do

 9     hereby certify:

10          That CYNTHIA P. FLORES GARCIA, the

11     witness whose deposition is hereinbefore set

12     forth, was duly sworn by me and that such

13     deposition is a true record of the testimony

14     given by the witness.

15          I further certify that I am not

16     related to any of the parties to this action

17     by blood or marriage, and that I am in no way

18     interested in the outcome of this matter.

19          IN WITNESS WHEREOF, I have hereunto

20     set my hand this 20th day of November, 2018.

21

22
```

23726.txt

```
    23

    24                    AYDIL M. TORRES

    25
```

                                          66

```
    1

    2              DEPOSITION ERRATA SHEET

    3    Our Assignment No.   23726

    4    Case Caption:  EMANUEL GARCIA vs. CHIPOTLE

    5    MEXICAN GRILL, INC.

    6

    7         DECLARATION UNDER PENALTY OF PERJURY

    8

    9         I declare under penalty of perjury

   10    that I have read the entire transcript of my

   11    Deposition taken in the captioned matter or

   12    the same has been read to me, and the same is

   13    true and accurate, save and except for

   14    changes and/or corrections, if any, as

   15    indicated by me on the DEPOSITION ERRATA

   16    SHEET hereof, with the understanding that I

   17    offer these changes as if still under oath.

   18

   19
```

Page 74

23726.txt

20    Signed on the _____ day of

21    _____, 20___.

22    _____

23    CYNTHIA P. FLORES GARCIA

24

25

67

1

2                    DEPOSITION ERRATA SHEET

3    Page No._____Line No._____Change to:_____

4    _____

5    Reason for change:_____

6    Page No._____Line No._____Change to:_____

7    _____

8    Reason for change:_____

9    Page No._____Line No._____Change to:_____

10   _____

11   Reason for change:_____

12   Page No._____Line No._____Change to:_____

13   _____

14   Reason for change:_____

15   Page No._____Line No._____Change to:_____

16   _____

Page 75

23726.txt

```
17      Reason for change:_____

18      Page No._____Line No._____Change to:_____

19      _____

20      Reason for change:_____

21      Page No._____Line No._____Change to_____

22      _____

23      Reason for change:_____

24      SIGNATURE:_____DATE:_____

25                  CYNTHIA P. FLORES GARCIA
```

68

```
1

2                   DEPOSITION ERRATA SHEET

3       Page No._____Line No._____Change to:_____

4       _____

5       Reason for change:_____

6       Page No._____Line No._____Change to:_____

7       _____

8       Reason for change:_____

9       Page No._____Line No._____Change to:_____

10      _____

11      Reason for change:_____

12      Page No._____Line No._____Change to:_____

13      _____
```

23726.txt

14    Reason for change:_____

15    Page No._____Line No._____Change to:_____

16    _____

17    Reason for change:_____

18    Page No._____Line No._____Change to:_____

19    _____

20    Reason for change:_____

21    Page No._____Line No._____Change to:_____

22    _____

23    Reason for change:_____

24    SIGNATURE:_____DATE:_____

25              CYNTHIA P. FLORES GARCIA