UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EMANUEL GARCIA, on behalf of himself,
FLSA Collective Plaintiffs, and the Class,

          Plaintiffs,

-against-

CHIPOTLE MEXICAN GRILL, INC.,

          Defendant.

**OPINION AND ORDER**

16 Civ. 601 (ER)

Ramos, D.J.:

      Plaintiffs bring this action under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") for unpaid wages allegedly owed by Defendant Chipotle Mexican Grill, Inc. ("Chipotle"). On April 16, 2018, the Court entered an Order (1) dismissing 118 individuals who had opted into this lawsuit but were subject to arbitration agreements (the "Arbitration Opt-Ins"), and (2) denying Chipotle's request that Plaintiffs' counsel, Lee Litigation Group, PLLC ("Lee"), be prohibited from representing the Arbitration Opt-Ins in any future proceedings. Chipotle moved for reconsideration of that aspect of the Order denying the request to prohibit Lee from representing the Arbitration Opt-Ins. On October 31, 2018, the Court heard oral argument on the motion for reconsideration, denied the motion, and stated that it would issue an Opinion setting forth its reasoning. This is that Opinion.

I.    **Factual and Procedural Background**

      On January 26, 2016, Emanuel Garcia brought this action against his former employer, Chipotle, which operates a chain of Mexican-style fast food restaurants, including over sixty locations in New York City. Compl. ¶¶ 7–8, Doc. 1. Garcia worked at five Chipotle locations during his employment from December 2010 until August 2015. *Id.* ¶¶ 22–23. Garcia alleges

that he was not paid proper hourly wages due to two unlawful policies: (1) "time shaving," whereby he was often required to work beyond his scheduled clock-out time for no pay; and (2) "time shifting," whereby he was told to record a week's overtime hours for the following week, so as to keep his hours "balanced" and thereby deprive him of the proper amount of overtime pay. *Id.* ¶¶ 28–29.

On November 4, 2016, the Court issued an Opinion and Order granting in part and denying in part Garcia's motion to conditionally certify an FLSA collective action under 29 U.S.C. § 216(b). Doc. 57; *Garcia v. Chipotle Mexican Grill, Inc.*, No. 16 Civ. 601 (ER), 2016 WL 6561302 (S.D.N.Y. Nov. 4, 2016). As the Court explained, FLSA certification entails a two-stage process: an early "notice stage," and another stage after discovery is largely complete. *Garcia*, 2016 WL 6561302, at *3 (quoting *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012)). "At stage one, the court makes 'an initial determination to send notice to potential opt-in plaintiffs who may be "similarly situated" to the named plaintiffs with respect to whether a FLSA violation has occurred.'" *Id.* (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010)). At this initial stage, the plaintiff need only make a "'modest factual showing' that [he] and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law,'" *id.* at *4 (alteration in original) (quoting *Myers*, 624 F.3d at 555), and "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations," *id.* (quoting *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)). "At stage two, after additional plaintiffs have opted in, 'the district court will, on a fuller record, determine whether a so-called "collective action" may go forward by determining whether the plaintiffs who have opted in are in fact "similarly situated" to the named plaintiffs.'" *Id.* at *3 (quoting *Myers*, 624 F.3d at 555).

2

The Court, ruling at the initial stage, conditionally certified a citywide collective with respect to the allegations of time shaving under the FLSA, but not as to time shifting. *Id.* at *8–9. Pursuant to that conditional certification, the Court authorized that notice be sent to hourly employees who worked at Chipotle restaurants in New York City within three years prior to the filing of the Complaint. *Id.* at *9.

Chipotle sought to limit the scope of the notice to employees hired before August 2014 because, according to Chipotle, employees hired after August 2014 had executed arbitration agreements that precluded their ability to participate in the collective action. *Id.* The Court rejected Chipotle's argument, noting that "courts have consistently held that the existence of arbitration agreements is 'irrelevant' to collective action approval 'because it raises a merits-based determination'" that is inappropriate at the initial stage of certification. *Id.* (quoting *Romero v. La Revise Assocs., L.L.C.*, 968 F. Supp. 2d 639, 647 (S.D.N.Y. 2013)). The Court explained that "'issues of fact surrounding arbitration agreements are properly resolved at the second stage of the two-step inquiry,' when the Court will examine whether Plaintiff and the opt-in plaintiffs are in fact similarly situated." *Id.* (quoting *Romero*, 968 F. Supp. 2d at 647). Accordingly, the Court permitted notice to be sent to any hourly employees who worked in New York City during the three years prior to the filing of the Complaint, even if they were hired after August 2014 when arbitration agreements were purportedly signed. *Id.*

On January 31, 2017, Court-authorized notice was distributed to the relevant employees. Murphy Decl. ¶ 2, Doc. 114.  To opt into the lawsuit, employees had to complete a "consent to sue" form and return it to Plaintiffs' counsel, Lee, for filing with the Court. Doc. 60, at 3. The form stated that they "consent to be a plaintiff in the lawsuit *Garcia v. Chipotle Mexican Grill, Inc.*" and "hereby designate Lee Litigation Group, PLLC to represent me and make decisions on

3

my behalf concerning the litigation and any settlement." *Id.* at 4.  Approximately 244 employees completed the form and opted into this lawsuit.  Murphy Decl. ¶ 3.  Among the opt-ins were 118 employees who had signed arbitration agreements (the "Arbitration Opt-Ins").  Gottlieb Decl. ¶ 12 & Ex. B, Doc. 117.

On September 15, 2017, Chipotle moved to dismiss the 118 Arbitration Opt-Ins, Doc. 113, which Plaintiffs did not oppose, Doc. 119.  Chipotle also sought to prohibit Plaintiffs' counsel, Lee, from representing the dismissed Arbitration Opt-Ins in any future arbitration, and Plaintiffs opposed that aspect of the motion.  Chipotle argued that (1) Lee should not be permitted to "drum up" business by soliciting Arbitration Opt-Ins that lacked a legal basis to opt in, and (2) Lee caused the Arbitration Opt-Ins to breach their arbitration agreements by opting in, which allegedly constituted a breach of Lee's fiduciary duties to them.  Def.'s Mem. Supp. Mot. Dismiss 12–13, Doc. 115.  Plaintiffs responded that Lee already had an attorney-client relationship with the Arbitration Opt-Ins and should be permitted to continue to represent them in arbitration.  Pls.' Oct. 19, 2017 Letter, Doc. 121.

On April 11, 2018, the Court held a conference where it addressed Chipotle's request to bar Lee from representing the Arbitration Opt-Ins.  During a colloquy with Chipotle, the Court stated that "unless you have some case law suggesting that that type of relief would be appropriate . . . as I sit here I don't see how I could possibly" grant the request.  Apr. 11, 2018 Conf. Tr. 7:21–24, Doc. 153.  Chipotle responded that "admittedly there is not a case on point on this," and Chipotle was "asking for . . . a good faith extension of the law." *Id.* at 8:7–9.  The Court concluded, "That aspect of the motion will be denied." *Id.* at 9:8.  On April 16, 2018, the Court issued an Order granting the motion to dismiss the Arbitration Opt-Ins and denying the

motion to prohibit Lee from representing them "[f]or the reasons stated during the conference." Doc. 145, at 1.

On April 26, 2018, Lee mailed to Chipotle 118 letters requesting to arbitrate claims under the FLSA and NYLL on behalf of each of the Arbitration Opt-Ins. Doc. 156-2.

On May 1, 2018, Chipotle moved for partial reconsideration of the Court's April 16, 2018 Order insofar as it denied the request to disqualify Lee from representing the Arbitration Opt-Ins, or in the alternative for clarification of the Court's reasons for its denial. Doc. 155.

On October 19, 2018, Chipotle requested oral argument on its reconsideration motion in light of "recent legal developments," citing three new cases.[1] Doc. 191. The Court held oral argument on October 31, 2018.

## II.     Legal Standard

Under Local Civil Rule 6.3, reconsideration may be granted only where the Court has overlooked controlling decisions of law or factual matters that were "put before it on the underlying motion . . . and which, had they been considered, might have reasonably altered the result." *Mikol v. Barnhart*, 554 F. Supp. 2d 498, 500 (S.D.N.Y. 2008) (quoting *Greenwald v. Orb Commc'ns & Mktg., Inc.*, No. 00 Civ. 1939 (LTS) (HBP), 2003 WL 660844, at *1 (S.D.N.Y. Feb. 27, 2003)). Under such circumstances, a motion for reconsideration may be granted "to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). "Reconsideration of a court's previous order is an 'extraordinary remedy to be employed sparingly in the interests of

---

[1] As will be discussed below, Chipotle cited *Edwards v. Doordash, Inc.*, 888 F.3d 738, 743 (5th Cir. 2018); *McGrew v. VCG Holding Corp.*, 735 F. App'x 210, 211 (6th Cir. 2018); and *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018).

finality and conservation of scarce judicial resources.'" *Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) (quoting *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)). "Where the movant fails to show that any controlling authority or facts have actually been overlooked, and merely offers substantially the same arguments he offered on the original motion or attempts to advance new facts, the motion for reconsideration must be denied." *Mikol*, 554 F. Supp. 2d at 500.

### III. Discussion

As noted above, Chipotle has moved for reconsideration of that part of the Court's April 2018 Order denying the request to prohibit Lee from representing the Arbitration Opt-Ins. In its motion, Chipotle continues to press the theory that the Arbitration Opt-Ins' introduction to Lee was "illegitimate" and "improper" because their arbitration agreements precluded them from joining the FLSA collective, Def.'s Mem. Supp. Mot. Recons. 5, 7, Doc. 156—even though in November 2016 the Court explicitly authorized notice to be sent to these employees notwithstanding the potential existence of arbitration agreements, *Garcia*, 2016 WL 6561302, at *9. Chipotle cites *Hamoudeh v. UnitedHealth Group Inc.*, No. 16 Civ. 790 (PKC) (RML), 2016 WL 2894870 (E.D.N.Y. May 17, 2016), for the proposition that Lee is using FLSA certification "as a means to make workers aware of their rights such that they can, at the very least, pursue arbitration," and that "stirring up potential litigation in this manner would be an improper use of judicial authority." *Id.* at *2.

However, *Hamoudeh* is clearly distinguishable. In that case, the *named plaintiffs* allegedly had arbitration agreements depriving them of standing to sue (and a motion to compel arbitration was pending), so at that juncture it was improper to certify the collective or send notice to *any* employees at all. For that specific reason, the court declined to use the FLSA's "case management mechanism where it may soon rule that there is no case to manage." *Id.*

Indeed, that court acknowledged and distinguished the numerous cases certifying collectives led by named plaintiffs not subject to arbitration and facilitating notice to potential opt-ins even though the opt-ins may have arbitration agreements—which is precisely the situation here. *Id.* at *1 & n.1 (collecting cases).

Furthermore, the Court notes that ensuring that "all workers are aware of their rights" is "one of the FLSA's primary goals." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 180 (S.D.N.Y. 2015) (quoting *Guareno v. Vincent Perito, Inc.*, No. 14 Civ. 1635, 2014 WL 4953746, at *1 (S.D.N.Y. Sept. 26, 2014)). That goal is properly served where, as here, a named plaintiff has adequately stated an FLSA claim and notice is distributed to potential opt-ins on a modest showing that they are similarly situated. *Garcia*, 2016 WL 6561302, at *5, *8–9. In contrast, in *Hamoudeh*, that informational goal was trumped by the need for "efficient case management" because the named plaintiff may not even have been able to proceed with the case, so distributing notice of the lawsuit was premature. *Hamoudeh*, 2016 WL 2894870, at *2 (quoting *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 556 (S.D.N.Y. 2013)).

The "recent legal developments" cited by Chipotle do not change the analysis. Doc. 191. Chipotle points to *Edwards v. Doordash, Inc.*, 888 F.3d 738, 743 (5th Cir. 2018), and *McGrew v. VCG Holding Corp.*, 735 F. App'x 210, 211 (6th Cir. 2018), but both of those cases merely state that the arbitrability of a named plaintiff's claim should be decided before conditionally certifying a collective. *Edwards* and *McGrew*, like *Hamoudeh* two years earlier, involved *named plaintiffs* subject to arbitration, and thus they still do not control this case where the only arbitration agreements belong to certain *opt-ins*. Here, the named plaintiff does not have an arbitration agreement, and consistent with numerous cases, the Court conditionally certified the collective while deferring factual issues concerning the existence and validity of

7

any opt-ins' arbitration agreements.[2] *Garcia*, 2016 WL 6561302, at *9 (citing *Romero*, 968 F. Supp. 2d at 647). This continues to be the law in this circuit and elsewhere: "The majority of district courts to have addressed the issue have determined that the fact that some employees 'have signed arbitration agreements does not preclude conditional certification' as to all employees." *Camara v. Mastro's Rests. LLC*, 340 F. Supp. 3d 46, 59 (D.D.C. 2018) (quoting *Maddy v. Gen. Elec. Co.*, 59 F. Supp. 3d 675, 685 n.7 (D.N.J. 2014)) (citing *Garcia*, 2016 WL 6561302, at *9).

Chipotle now protests that it is suffering a "manifest injustice" wrought by the "multitude of arbitration filings" by the 118 Arbitration Opt-Ins. Def.'s Mem. Supp. Mot. Recons. 9. The irony is not lost on the Court. Chipotle could have permitted its employees to raise disputes through collective actions such as those under the FLSA and realize the efficiencies inherent in collective or class procedures. Indeed, before August 2014, Chipotle apparently did so. But after that date, Chipotle decided to require its employees to sign arbitration agreements waiving any right to participate in class or collective actions and channeling disputes into arbitration. Gottlieb Decl. Ex. A, ¶¶ 2, 5. Chipotle cannot credibly complain that too many employees, having learned of their rights from a lawful Court-authorized notice, are now asserting those rights through arbitration. Chipotle is not suffering

---

[2] Chipotle also alludes to *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018), which enforced arbitration clauses waiving collective actions under the FLSA. But even after *Epic*, there still will be factual issues concerning the existence of opt-ins' arbitration agreements or their invalidity under "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Id.* at 1622 (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). Such factual issues concerning opt-ins' arbitration agreements are properly deferred until after the initial stage of certification.

one scintilla of injustice—it is getting exactly what it bargained for in the arbitration agreement.[3]

At bottom, Chipotle's argument rests on the faulty premise that it was "improper" for the Arbitration Opt-Ins to receive notice of this action, and that their introduction to Lee was "illegitimate." Def.'s Mem. Supp. Mot. Recons. 5, 7. But over two years ago, this Court specifically directed "notice to be sent to employees hired after August 2014," notwithstanding Chipotle's protestations that such employees had arbitration agreements. *Garcia*, 2016 WL 6561302, at *9. That ruling was consistent with numerous cases holding that the court may conditionally certify a collective action brought by a plaintiff not subject to arbitration while deferring factual issues concerning the existence and validity of any arbitration agreements of potential opt-ins. Chipotle has cited no authority, let alone any controlling authority, disturbing that body of case law or authorizing the severe sanction of disqualifying Lee. Because Chipotle has failed to point to any controlling authority or facts that the Court had overlooked, and has failed to show any injustice, let alone manifest injustice, the motion for reconsideration must be denied.

---

[3] In addition, Chipotle argues that, based on the language of the "consent to sue" form, Lee's representation of the Arbitration Opt-Ins ceased when they were dismissed from this lawsuit, and Lee should be prevented from forming a new attorney-client relationship for purposes of arbitration. Def.'s Mem. Supp. Mot. Recons. 9–10 & n.2. But as Plaintiffs made clear at oral argument, the scope of Lee's representation is better left to Lee and their clients, who can account for individual circumstances, such as instances where there was a need and expectation to pursue arbitration before the limitations period expired. Chipotle also claims there is a "serious question" as to whether Lee complied with their fiduciary and ethical duties by causing the Arbitration Opt-Ins to opt into this action in breach of their arbitration agreements. *Id.* at 10–11. However, "[d]isqualification of an attorney is only appropriate where there has been a clear violation of the Code of Professional Responsibility leading to a 'significant risk of trial taint.'" *Shabbir v. Pak. Int'l Airlines*, 443 F. Supp. 2d 299, 305 (E.D.N.Y. 2005) (quoting *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981)). That high standard for disqualification is not met here, nor would disqualification be Chipotle's appropriate remedy. The remedy is dismissing the Arbitration Opt-Ins, which the Court already did in April 2018. Doc. 145.

## IV. Conclusion

For the reasons set forth above, Chipotle's motion for partial reconsideration is DENIED.[4] The Clerk of the Court is respectfully directed to terminate the motion, Doc. 155.

It is SO ORDERED.

Dated: January 29, 2019
        New York, New York

_____
Edgardo Ramos, U.S.D.J.

---

[4] Plaintiffs' request for costs, punitive damages, or sanctions is also DENIED. *See* Pls.' Mem. Opp'n Mot. Recons. 18, Doc. 158.